

FILED

**JUL 22** ...

SONYA...SKI
COUNTY CLERK
SNOHOMISH CO. WASH

CL17065910

# IN THE SUPERIOR COURT FOR THE COUNTY OF SNOHOMISH
## STATE OF WASHINGTON

| | |
|---|---|
| DOUG WALKER, an individual, <br>            Plaintiff <br> v. <br><br> QUALITY LOAN SERVICE CORP. OF WASHINGTON, a Washington Corporation, SELECT PORTFOLIO SERVICING, INC., a Utah Corporation, CREDIT SUISSE FINANCIAL CORPORATION, a Delaware Corporation; TICOR TITLE COMPANY, a Washington Corporation; REGIONAL TRUSTEE SERVICES CORPORATION, a Washington Corporation; AMERICAN BROKERS CONDUIT; THE BANK OF NEW YORK MELLON TRUST COMPANY, NA, as Grantor Trustee of PROTIUM MASTER GRANTOR TRUST; BARCLAYS BANK PLC, a foreign corporation; OCWEN LOAN SERVICING, LLC , a Delaware Limited Liability Company, successor in interest to HOMEQ SERVICING CORPORATION, a New Jersey Corporation; and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Delaware Corporation, <br><br>            Defendants. | NO. 09-2-09456-8 <br><br> **SECOND AMENDED COMPLAINT** <br><br><br> *Clerks Action Required)* |

SECOND AMENDED COMPLAINT
Page 1

KOVAC & JONES, PLLC
ATTORNEYS AT LAW
1750 – 112th Avenue N.E.
Suite D151
Bellevue, Washington 98004
(425) 462-7322

1    **COMES NOW** the Plaintiff, DOUG WALKER, by and through his attorneys, KOVAC

2    & JONES, PLLC, and by this Second Amended Complaint against the Defendants hereby

3    alleging as follows:

4    <u>**I. PARTIES**</u>

5    1.1    *Plaintiff.*    Plaintiff, DOUG WALKER, is now and was at all times herein

6    mentioned a resident in Snohomish County, Washington. Said Plaintiff is the owner of certain

7    real properties, situated in Snohomish County, state of Washington, to wit:

8            Tract 17, Mountlake Terrace Division No. 30, according to the plat
thereof recorded in Volume 13 of Plats, page(s) 86 in Snohomish
County, Washington.

9

10            Commonly known as: 22306 56th Ave West, Mountlake Terrace,
WA 98043 (hereinafter "56th Ave property"); and

11            ----- 000 ------

12            Lot(s) 16, Block 4, Mountlake Terrace Division Number 10,
according to the plat thereof recorded in Volume 13 of Plats,

13            page(s) 52, in Snohomish County, Washington, Except the
Northeasterly 70 feet thereof.

14

15            Commonly known as: 23207 La Pierre Drive, Mountlake Terrace,
WA 98043 (hereinafter "La Pierre property").

16    1.2    *Defendant Quality Loan Service Corporation of Washington.*    Defendant,

17    QUALITY LOAN SERVICE CORPORATION OF WASHINGTON, is a corporation organized

18    under the laws of the state of Washington and has a registered agent now in Seattle, King

19    County, Washington. This Defendant is hereinafter referred to as "QUALITY LOAN."

20    1.3    *Defendant Select Portfolio Servicing, Inc..*    Defendant, SELECT PORTFOLIO

21    SERVICING, INC., is a Utah Corporation operating in the state of Washington, with a

22

**KOVAC & JONES, PLLC**
ATTORNEYS AT LAW
1750 – 112th Avenue N.E.
Suite D151
Bellevue, Washington 98004
(425) 482-7322

1 registered agent located in Tumwater, Thurston County, Washington. This Defendant is
2 hereinafter referred to as "SELECT PORTFOLIO."

3    1.4    *Defendant Credit Suisse Financial Corporation.* Defendant, CREDIT SUISSE
4 FINANCIAL CORPORATION, is a Delaware Corporation operating in the state of Washington,
5 with a registered agent located in Tumwater, Thurston County, Washington. This Defendant is
6 hereinafter referred to as "CREDIT SUISSE."

7    1.5    *Defendant Ticor Title Company.* Defendant, TICOR TITLE COMPANY, is a
8 corporation organized under the laws of the State of Washington and has a registered agent in
9 Olympia, Thurston, Washington. This Defendant is hereinafter referred to as "TICOR TITLE."

10    1.6    *Defendant Regional Trustee Services Corporation.* Defendant,    REGIONAL
TRUSTEE SERVICES CORPORATION, is a corporation organized under the laws of the state
11 of Washington and has a registered agent in Seattle, King County, Washington. This Defendant
12 is hereinafter referred to as "REGIONAL TRUSTEE."

13    1.7    *Defendant American Brokers Conduit.*    Defendant,    AMERICAN
14 BROKERS CONDUIT, is allegedly a corporation organized under the laws of the state of New
15 York and maintains no known office or registered agent within the State of Washington. This
16 Defendant is hereinafter referred to as "ABC."

17    1.8    *Defendant Bank of New York Mellon Trust Co., NA.* Defendant, THE BANK OF
18 NEW YORK MELLON TRUST COMPANY, N.A. is believed to be and alleged to be a
19 national association domiciled in the state of New York. This Bank is hereinafter referred to as
20 "MELLON TRUST". Said Defendant is purportedly acting as trustee for PROTIUM MASTER
21 GRANTOR TRUST, which is believed to be and alleged to be also domiciled in the state of
22 New York.

KOVAC & JONES, PLLC
ATTORNEYS AT LAW
1750 – 112th Avenue N.E.
Suite D151
Bellevue, Washington 88004
(425) 482-7322

1        1.9    *Defendant Barclays Bank PLC.*    Defendant, BARCLAYS BANK PLC, is a

2   foreign corporation doing business within the state of Washington. Said Defendant is

3   hereinafter referred to as "BARCLAYS".

4        1.10   *Defendant Ocwen Loan Servicing, LLC, a Delaware Limited Liability Company,*

5   *successor in interest to HomEq Servicing Corporation, a New Jersey Corporation.* Defendant,

6   OCWEN LOAN SERVICING, LLC, is a Delaware limited liability company and successor in

7   interest to HomeEq Servicing Corporation, a New Jersey Corporation doing business within the

8   state of Washington. Said Defendants are hereinafter collectively referred to as "HOMEQ".

9        1.11   *Defendant Mortgage Electronic Registration Systems, Inc.* Defendant,

10  MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., is a Delaware Corporation

11  operating in the state of Washington and purports to obtain security interests in real property

12  located in the state of Washington, and it purports to have acquired an interest in Plaintiff's real

13  properties first as a "nominee" but also as a "beneficiary" under the deeds of trust referenced

14  herein below. This Defendant is hereinafter referred to as "MERS." MERS is the wholly owned

subsidiary of MERSCORP HOLDINGS, INC., a foreign corporation.

15       1.12   *Doe Defendants 1-20* Doe Defendants 1-20 were at all times mentioned herein,

16  the Defendants, and each of them, were the principals, successors or assigns, agents, servants,

17  representatives and/or employees of each of the remaining Defendants and were acting within

18  the course and scope of such agency or employment. The exact terms and conditions of any

19  succession, assignment, agency, representation or employment relationships are presently

20  unknown to Plaintiff, but when the information is ascertained, leave of court will be sought to

21  insert the appropriate allegations.

22

SECOND AMENDED COMPLAINT
Page 4

KOVAC & JONES, PLLC
ATTORNEYS AT LAW
1750 – 112th Avenue N.E.
Suite D151
Bellevue, Washington 98004
(425) 462-7322

1.13    No party named herein is a minor, in the military service of the United States, as defined by the Soldier's and Sailor's Relief Act of 1942, as subsequently amended and re-codified under the Service Members Civil Relief Act, or is otherwise incompetent.

1.14    At all times relevant to this cause of action, the above-named Defendants acted for and on behalf of themselves, each other, their principals, agents, successors, assigns and, where appropriate, their respective martial communities.  Plaintiffs specifically assert claims for civil conspiracy and joint venture liability based upon the facts of this action.

## II. JURISDICTION AND VENUE

2.1    Plaintiff repeats and re-alleges each and every item and allegation above as if fully and completely set forth herein.

2.2    This Court has jurisdiction over the parties to this Complaint because at all times relevant the parties were either residents of the State of Washington, were incorporated under the laws of the State of Washington, or were subject to *RCW 23B.18, et seq.*, committed or directed improper, tortious, or fraudulent acts against Plaintiff's interest in his Properties, or claimed some interest (whether valid or not) in the Properties which are located in Snohomish County, Washington, pursuant to *RCW 4.28.185* and *RCW 23B.18.060.*

2.3    The above-entitled Court has jurisdiction over the subject matter of this action.

2.4    Venue is properly placed in this Court by the fact the real property that is the subject matter of this action is located in Snohomish County, Washington.  *RCW 4.12.010(1).*

KOVAC & JONES, PLLC
ATTORNEYS AT LAW
1750 – 112th Avenue N.E.
Suite D151
Bellevue, Washington 98004
(425) 482-7322

## III. STATEMENT OF FACTS

### *56th Avenue Property*

3.1     Plaintiff repeats and re-alleges each and every item and allegation above as if fully and completely set forth herein.

3.2     On or about February 28, 2007, Plaintiff executed a Promissory Note in favor of CREDIT SUISSE, as Lender.  Despite requests in discovery for a true and correct copy of Plaintiff's Note of February 28, 2007, no copy has been produced to date and is presumed lost or destroyed.[1]  To secure repayment of the Note, Plaintiff, as Grantor, executed a Deed of Trust in which TICOR TITLE is named as trustee.  MERS is named as the purported beneficiary and CREDIT SUISSE is identified as the Lender.  This instrument was recorded in Snohomish County under Auditor's Recording No. 200703060946 on March 6, 2007.  A true and correct copy of said Deed of Trust is attached here and incorporated herein by this reference as *Exhibit "B"*.

3.3     At no time relevant to this cause of action was MERS an eligible beneficiary under *RCW 61.24.005(2)*.  At no time relevant to this cause of action did Plaintiff owe MERS any obligation, either monetary or otherwise, under the terms of the subject Note and Deed of Trust referenced herein, Paragraph 3.2, or any other instrument.

3.4     On May 21, 2009, QUALITY LOAN, as purported "agent" for SELECT PORTFOLIO, executed, served and posted a Notice of Default, pursuant to *RCW 61.24.030*.  A

---

[1]  A copy of the Note of February 28, 2007 was requested in a Qualified Written Request submitted to Select Portfolio, the purported "beneficiary of your Note and owner of the obligation secured thereby" on or about June 16, 2010.  However, in response, counsel for SELECT PORTFOLIO provided only a copy of the Deed of Trust, not a copy of the Note.  See correspondence attached hereto and incorporated herein collectively as *Exhibit "A"*.  One would think that if SELECT PORTFOLIO was the owner and actual holder of the obligation it would be able to provide Plaintiff a copy of the Note it purportedly owned.

SECOND AMENDED COMPLAINT
Page 6

KOVAC & JONES, PLLC
ATTORNEYS AT LAW
1750 – 112th Avenue N.E.
Suite D151
Bellevue, Washington 98004
(425) 482-7322

true and correct copy of said Notice of Default is attached hereto and incorporated herein by this reference as *Exhibit "C"*. This Notice of Default wrongfully and falsely represents SELECT PORTFOLIO to be the beneficiary of the obligation. At the time this document was executed, SELECT PORTFOLIO was not the true and lawful owner or actual holder of the subject obligation and not the beneficiary under the subject Deed of Trust referred to in Paragraph 3.2, or at any time thereafter. This document was executed by QUALITY LOAN without actual knowledge or proof of and without the express authorization from the true and lawful owner and actual holder of the subject obligation. At no time relevant to this cause of action has the true and lawful owner and actual holder of the subject obligation ever declared Plaintiff to be in default.

3.5 On May 22, 2009, SELECT PORTFOLIO executed, claiming entitlement as the beneficiary of the Deed of Trust referenced in Paragraph 3.2, an Appointment of Successor Trustee, nominating Defendant QUALITY LOAN as successor trustee. At the time the subject Appointment of Successor Trustee was executed, SELECT PORTFOLIO was not a true and lawful owner or holder of the subject obligation, a beneficiary of the subject Deed of Trust or otherwise authorized to execute the Appointment of Successor Trustee and the information contained in this recorded instrument was false and misleading. As of this date, Defendant MERS was the named the beneficiary of the Deed of Trust. This Appointment of Successor Trustee was recorded in Snohomish County under Auditor's Recording No. 200905280731. A true and correct copy of said Appointment of Successor Trustee is attached here and incorporated herein by this reference as *Exhibit "D"*. It is significant to note that this Appointment of Successor Trustee was executed on May 22, 2009, but was not notarized until

KOVAC & JONES, PLLC
ATTORNEYS AT LAW
1750 – 112th Avenue N.E.
Suite D151
Bellevue, Washington 98004
(425) 462-7322

1  May 26, 2009, four (4) days after the document was signed. Clearly, the document was not

2  signed before the notary, in violation of *RCW 42.44*.

3      3.6  On July 6, 2009, MERS executed a Corporate Assignment of Deed of Trust as

4  nominee for CREDIT SUISSE, purporting to assign all beneficial interest in the Deed of Trust

5  referenced in Paragraph 3.2, to SELECT PORTFOLIO, for the sum of "TEN and NO/100's

6  DOLLARS and other good and valuable consideration." In addition, this Corporate Assignment

7  of Deed of Trust purports to assign the subject Note, which MERS never owned or actually held.

8  This instrument was recorded in Snohomish County under Auditor's Recording No.

9  200907160350. A true and correct copy of said assignment is attached here and incorporated

  herein by this reference as *Exhibit "E"*. At no time relevant to this cause of action did MERS

10  obtain authority to execute this Corporate Assignment of Deed of Trust from the true and lawful

11  owner and holder of the subject obligation and the information contained in this recorded

12  instrument was false and misleading.

13      3.7  Upon information and belief, MERS has never owned or obtained legal or actual

14  possession of the Note secured by the Deed of Trust referred to in Paragraph 3.2.

15      3.8  On July 17, 2009, Defendant QUALITY LOAN executed, filed, served and

16  posted a Notice of Trustee's Sale in connection with the 56th Avenue property, pursuant to *RCW*

17  *61.24.040*. This instrument was recorded in Snohomish County under Auditor's Recording No.

18  200907210605. A true and correct copy of said Notice of Trustee's Sale is attached hereto and

19  incorporated herein by this reference as *Exhibit "F"*. Said Notice of Trustee's Sale wrongfully

20  identifies SELECT PORTFOLIO as the "beneficiary" of the Deed of Trust referred to above in

21  Paragraph 3.2. At the time this document was executed, SELECT PORTFOLIO was not the true

22  and lawful owner or actual holder of the subject obligation and not the beneficiary under the

SECOND AMENDED COMPLAINT
Page 8

KOVAC & JONES, PLLC
ATTORNEYS AT LAW
1750 – 112th Avenue N.E.
Suite D151
Bellevue, Washington 98004
(425) 482-7322

1    subject Deed of Trust referred to in Paragraph 3.2, or at any time thereafter. This document was

2    executed by QUALITY LOAN without actual knowledge or proof of and without the express

3    authorization from the true and lawful owner and actual holder of the subject obligation, in

4    violation of *RCW 61.24.030(7).* At no time relevant to this cause of action has the true and

5    lawful owner and actual holder of the subject obligation ever declared Plaintiff to be in default.

6    At the time this Notice of Trustee's Sale was executed by QUALITY LOAN, or at any time

7    thereafter, did it maintain a street address in the state of Washington where personal service of

8    process could be made or maintain a physical presence and have phone service at that address, in

     violation of *RCW 61.24.030(6).*

9

10        3.9    In conjunction with the execution of the above noted Notice of Trustee's Sale,

11   QUALITY LOAN executed a Notice of Foreclosure in accordance with *RCW 61.24.040.* A true

     and correct copy of said Notice of Foreclosure is attached hereto and incorporated herein by this

12   reference as *Exhibit "G".*    This document falsely and misleadingly identifies SELECT

13   PORTFOLIO as the "Beneficiary of your Deed of Trust and owner of the obligation secured

14   thereby." At the time this document was executed, SELECT PORTFOLIO was not the true and

15   lawful owner or actual holder of the subject obligation and not the beneficiary under the subject

16   Deed of Trust referred to in Paragraph 3.2, or at any time thereafter. Certainly, no evidence

17   beyond the Corporate Assignment of Deed of Trust, referred to above in Paragraph 3.6 has been

18   adduced to date to support this allegation. This document was executed by QUALITY LOAN

19   without actual knowledge or proof of and without the express authorization from the true and

20   lawful owner and actual holder of the subject obligation, in violation of *RCW 61.24.030(7).*

21        3.10   No sale of the property has been conducted.

22

SECOND AMENDED COMPLAINT
Page 9

KOVAC & JONES, PLLC
ATTORNEYS AT LAW
1750 – 112th Avenue N.E.
Suite D151
Bellevue, Washington 98004
(425) 462-7322

3.11    SELECT PORTFOLIO, or their predecessors in interest, did request Plaintiff's financial information, personal financial documentation, and tax returns on the premise that Plaintiff was eligible for a loan modification or forbearance. See *Exhibit "H"*. However, it is Plaintiff's understanding and belief that Defendants, or their predecessors in interest, had no intention of granting Plaintiff a loan modification or forbearance, did possess or had access to financial information related to the Plaintiff, including but not limited to detailed credit reports that demonstrated that the Plaintiff, in fact, would not receive a loan modification. As a result of this process, the Plaintiff expended several thousand dollars and considerable time applying for a modification that the Defendants, or their predecessors in interest, knew would be denied. Moreover, Plaintiff has expended time and money through the preparation of a Qualified Written Request to determine the identity of the true and lawful owner and actual holder of the subject obligation.

### *La Pierre Property*

3.12    On or about April 10, 2007, Plaintiff executed a Promissory Note in favor of ABC. A true and correct copy of said Promissory Note, with blank endorsement and allonge, is attached hereto and incorporated herein by this reference as *Exhibit "I"*. Said Promissory Note specifically provides that "[t]he Lender (ABC) or anyone who takes this Note by transfer <u>and</u> who is entitled to receive payments under this Note" is defined as the "Note Holder". To secure repayment of said Promissory Note, Plaintiff, as Grantor, executed a Deed of Trust in which TICOR TITLE was named Trustee.  Said Deed of Trust named MERS as the purported Beneficiary and ABC as Lender, which was identified as a New York Corporation.  This instrument was recorded in Snohomish County under Auditor's Recording No. 200704120622

KOVAC & JONES, PLLC
ATTORNEYS AT LAW
1750 – 112th Avenue N.E.
Suite D151
Bellevue, Washington 98004
(425) 462-7322

1    on April 12, 2007.   A true and correct copy of said Deed of Trust is attached here and

2    incorporated herein by this reference as *Exhibit "J"*.

3          3.13   At no time relevant to this cause of action was MERS an eligible beneficiary under

4    *RCW 61.24.005(2)*.   At no time relevant to this cause of action did Plaintiff owe MERS any

5    obligation, either monetary or otherwise, under the terms of the subject Note and Deed of Trust

6    referenced herein, Paragraph 3.12, or any other instrument.

7          3.14   On or about March 18, 2009, Plaintiff received correspondence from HOMEQ

8    falsely and misleadingly representing that it was acting as servicer of the subject obligation

9    referred to in Paragraph 3.12 on behalf of the "current creditor/owner": BARCLAYS.   A true

10   and correct copy of said correspondence is attached hereto and incorporated herein by this

11   reference as *Exhibit "K"*.

12         3.15   On June 8, 2009, REGIONAL TRUSTEE, as agent for "the Beneficiary",

13   executed, served and posted a Notice of Default, pursuant to *RCW 61.24.030*.   A true and correct

14   copy of said Notice of Default is attached hereto and incorporated herein by this reference as

15   *Exhibit "L"*.   This Notice of Default wrongfully and falsely represents MERS to be the "original

16   creditor to whom the debt is/was owed" and that MERS is the "current creditor".   This

17   information contradicts the information provided by HOMEQ just three months earlier.   At the

18   time this document was executed, MERS was not the true and lawful owner or actual holder of

19   the subject obligation and not the beneficiary under the subject Deed of Trust referred to in

20   Paragraph 3.12, or at any time thereafter.   This document was executed by REGIONAL

21   TRUSTEE without actual knowledge or proof of and without the express authorization from the

22   true and lawful owner and actual holder of the subject obligation.   At no time relevant to this

SECOND AMENDED COMPLAINT
Page 11

KOVAC & JONES, PLLC
ATTORNEYS AT LAW
1750 – 112th Avenue N.E.
Suite D151
Bellevue, Washington 98004
(425) 462-7322

1  cause of action has the true and lawful owner and actual holder of the subject obligation ever

2  declared Plaintiff to be in default.

3  3.16 On July 4, 2009, a legal holiday, MERS purportedly executed an Appointment of

4  Successor Trustee, nominating Regional Trustee as trustee. In an apparent reference to itself and

5  as a material misrepresentation of the deed of trust, MERS executed this Appointment of

6  Successor Trustee "as nominee for its successors and assigns". MERS claimed entitlement to

7  execute the document as beneficiary of the security instrument referenced in Paragraph 3.12.

8  The document was recorded on July 9, 2009 recorded in Snohomish County under Auditor's

9  Recording No. 200907090703. A true and correct copy of said appointment of successor trustee

10  is attached here and incorporated herein by this reference as *Exhibit "M"*. At the time this

   Appointment of Successor Trustee was executed, MERS was not a true and lawful owner or

11  holder of the subject obligation, a beneficiary of the subject Deed of Trust or otherwise

12  authorized to execute this Appointment of Successor Trustee and the information contained in

13  this recorded instrument was false and misleading. It should be noted that while this second

14  Appointment of Successor Trustee was executed by Noriko Colston on July 4, 2009, she

15  signature was purportedly notarized by Jane Quick in Sacramento, California on June 9, 2009,

16  twenty-five (25) days prior to the Date Noriko Colston signed the document. Clearly, the

17  document was not signed before the notary, in violation of *RCW 42.44*.

18  3.17 On July 8, 2009, REGIONAL TRUSTEE executed, served, filed and posted a

19  Notice of Trustee's Sale in connection with the La Pierre Avenue property, pursuant to *RCW*

20  *61.24.040*. This instrument was recorded in Snohomish County under Auditor's Recording No.

21  200907090704. This Notice contained identical language as described in paragraph 3.12

22  describing MERS "as nominee for its successors and assigns," in an apparent reference to itself,

SECOND AMENDED COMPLAINT
Page 12

KOVAC & JONES, PLLC
ATTORNEYS AT LAW
1750 - 112th Avenue N.E.
Suite D151
Bellevue, Washington 98004
(425) 462-7322

and as a material misrepresentation in that the Plaintiff owed to MERS no obligation. A true and correct copy of said notice is attached here and incorporated herein by this reference as *Exhibit "N"*. This information contradicts the information provided by HOMEQ just four months earlier. At the time this document was executed, MERS was not the true and lawful owner and actual holder of the subject obligation and not the beneficiary under the subject Deed of Trust referred to in Paragraph 3.12, or at any time thereafter. This document was executed by REGIONAL TRUSTEE without actual knowledge or proof of and without the express authorization from the true and lawful owner and actual holder of the subject obligation in violation of *RCW 61.24.030(7)*.

    3.18    No sale of the subject property has ever conducted.

    3.19    In conjunction with the execution of the above noted Notice of Trustee's Sale, REGIONAL TRUSTEE executed a Notice of Foreclosure in accordance with *RCW 61.24.040*. A true and correct copy of said Notice of Foreclosure is attached hereto and incorporated herein by this reference as *Exhibit "O"*. This document falsely and misleadingly identifies MERS as the "Beneficiary of your Deed of Trust and <u>owner</u> of the obligation secured thereby." At the time this document was executed, MERS was not the true and lawful owner of the subject obligation and not the beneficiary under the subject Deed of Trust referred to in Paragraph 3.12, or at any time thereafter. Indeed, this information contradicts the information provided by HOMEQ just four months earlier. This document was executed by REGIONAL TRUSTEE without actual knowledge or proof of and without the express authorization from the true and lawful owner and actual holder of the subject obligation, in violation of *RCW 61.24.030(7)*.

    3.20    On March 1, 2011, REGIONAL TRUSTEE, as agent for "the Beneficiary," executed, served and posted a second Notice of Default, pursuant to *RCW 61.24.030*. A true and

KOVAC & JONES, PLLC
ATTORNEYS AT LAW
1750 – 112th Avenue N.E.
Suite D151
Bellevue, Washington 98004
(425) 462-7322

1  correct copy of this second Notice of Default is attached hereto and incorporated herein by this

2  reference as *Exhibit "P"*. This Notice of Default wrongfully and falsely represents that "the

3  owner of the promissory note(s) or other obligation(s) secured by said Deed of Trust The Bank

4  of New York Mellon Trust Company, National Association, as Grantor Trustee of Protium

5  Master Grantor Trust" and "current creditor". At the time this document was executed, neither

6  MELLON TRUST nor PROTIUM MASTER GRANTOR TRUST were the true and lawful

7  owner or actual holder of the subject obligation and not the beneficiary under the subject Deed

8  of Trust referred to in Paragraph 3.12, or at any time thereafter. The document also falsely

9  alleges that "the original creditor to whom the debt is/was owed is MORTGAGE

   ELECTRONIC REGISTRATION SYSTEM, INC." This information contradicts the

10 information provided by HOMEQ in 2009. This document was executed by REGIONAL

11 TRUSTEE without actual knowledge or proof of and without the express authorization from the

12 true and lawful owner and actual holder of the subject obligation. At no time relevant to this

13 cause of action has the true and lawful owner and actual holder of the subject obligation ever

14 declared Plaintiff to be in default.

15     3.21    On April 8, 2011, REGIONAL TRUSTEE executed, served, filed and posted a

16 second Notice of Trustee's Sale in connection with the La Pierre Avenue property, pursuant to

17 *RCW 61.24.040*. This instrument was recorded in Snohomish County under Auditor's

18 Recording No. 201104080386. A true and correct copy of this second Notice of Trustee's Sale

19 is attached hereto and incorporated herein by this reference as *Exhibit "Q"*. This Notice falsely

20 and misleadingly identifies MELLON TRUST as presently holding the beneficial interest in the

21 subject Deed of Trust, without reference to the subject Note. At the time this document was

22 executed, MELLON TRUST was not the true and lawful owner or actual holder of the subject

SECOND AMENDED COMPLAINT
Page 14

KOVAC & JONES, PLLC
ATTORNEYS AT LAW
1750 – 112th Avenue N.E.
Suite D151
Bellevue, Washington 98004
(425) 462-7322

1  obligation and not the beneficiary under the subject Deed of Trust referred to in Paragraph 3.12,

2  or at any time thereafter. Indeed, this information contradicts the information provided in prior

3  documents cited above. This document was executed by REGIONAL TRUSTEE without actual

4  knowledge or proof of and without the express authorization from the true and lawful owner and

5  actual holder of the subject obligation, in violation of *RCW 61.24.030(7)*.

6       3.22    No sale of the subject property has ever been conducted.

7                *Initiation of Legal Proceedings*

8       3.23    On October 2, 2009, Plaintiff filed the above captioned matter.

9       3.24    On August 6, 2010, the Court dismissed Plaintiff's claims, pursuant to *CR 12*.

10  Plaintiff appealed to the Washington State Court of Appeals, Division I.

11       3.25    The Court of Appeals overturned this Court's Order of August 6, 2010, in part,

12  and remanded this matter back for trial. A copy of the Court of Appeals' Amended Published

13  Opinion of August 26, 2013 is attached hereto and incorporated herein by this reference as

   *Exhibit "R".*[2] above referenced notice by Defendant Regional Trustee materially misrepresented

14  that the obligation secured under any note was in favor of Defendant MERS.

15  ## IV.   DECLARATORY RELIEF

16       4.1    Plaintiff repeats and re-alleges each and every item and allegation above as fully

17  and completely set forth herein.

18       4.2    *RCW 61.24.005* defines "beneficiary" as the "the holder of the instrument" that is

19  secured by any deed of trust under *RCW 61.24*.

20

21

22       [2] The citation for this decision is 176 Wn.App. 294, 308 P.3d 716 (2013).

SECOND AMENDED COMPLAINT
Page 15

KOVAC & JONES, PLLC
ATTORNEYS AT LAW
1750 – 112th Avenue N.E.
Suite D151
Bellevue, Washington 98004
(425) 462-7322

4.3     The deeds of trust at issue in this case identified MERS as beneficiary, while the Lender was identified as CREDIT SUISSE, with respect to the *56th Ave Property,* and ABC with respect to the *La Pierre Property.*

4.4     Only the actual holder of or the payee under the note secured by a deed of trust may be a "beneficiary" within the terms of *RCW 61.24.005*, with the power to declare a default on the obligation (*RCW 61.24.030*) or to appoint a trustee to proceed with non-judicial foreclosure of the deed of trust (*RCW 61.24.010*), and this Court should so declare.

4.5     At no time relevant to this cause of action did Plaintiff owe MERS any obligation, either monetary or otherwise, under the terms of the subject Notes and Deeds of Trust referenced herein, Paragraphs 3.2 and 3.11, or any other instrument. Accordingly, at no time relevant to this cause of action was MERS the actual holder of or the payee of the subject Notes and Deeds of Trust referenced herein, Paragraphs 3.2 and 3.11, or any other instrument under Washington law, and this Court should so declare.

4.6     At no time relevant to this cause of action was MERS an eligible beneficiary within the terms of *RCW 61.25.005(2)* and the Court should so declare.

4.7     As an ineligible beneficiary, at no time relevant to this cause of action did MERS have authority to act in any capacity, including, without limitation, assigning the beneficial interest in the Deeds of Trust referenced herein, Paragraphs 3.2 and 3.11, declaring Plaintiff to be in default of any obligation, appointing a successor trustee or otherwise initiating or prosecuting a non-judicial foreclosure of the Deeds of Trust referenced herein, Paragraphs 3.2 and 3.11, and the Court should so declare.

4.8     Plaintiff will suffer immediate damage and harm if the non-judicial process described herein is not declared unlawful and permanently enjoined.

SECOND AMENDED COMPLAINT
Page 16

KOVAC & JONES, PLLC
ATTORNEYS AT LAW
1750 – 112th Avenue N.E.
Suite D151
Bellevue, Washington 98004
(425) 462-7322

## V.    CAUSE OF ACTION FOR WRONGFUL FORECLOSURE, VIOLATION OF RCW 61.24, et seq., AND INJUNCTIVE RELIEF[3]

5.1     Plaintiff repeats and re-alleges each and every item and allegation above as if fully and completely set forth herein.

5.2     Under Washington law, the provisions of *RCW 61.24, et seq.* must be strictly construed in favor of Plaintiff. The Defendants, and each of them, have failed to strictly comply with the provisions of *RCW 61.24, et seq.,* in their actions against Plaintiff and his properties.

5.3     At no time relevant to this cause of action did Plaintiff owe any obligation to any named Defendant, including, without limitation, QUALITY LOAN, SELECT PROTFOLIO, TICOR TITLE, ABC, MELLON TRUST, BARCLAYS, HOMEQ or MERS, either monetary or otherwise, under the terms of the subject Promissory Note and Deed of Trust.  Defendants' misconduct, as alleged herein, raised considerable and legitimate questions as to the identity of the true and lawful owners and holders of the subject Notes and Deeds of Trust referenced herein, Paragraphs 3.2 and 3.11, with right to initiate and prosecute non-judicial foreclosures against Plaintiff and his real properties.

5.4     Upon information and belief, none of the above-named Defendants, including, without limitation, QUALITY LOAN, SELECT PROTFOLIO, TICOR TITLE, ABC, MELLON TRUST, BARCLAYS, HOMEQ or MERS, obtained the express authority from the true and lawful holder and owner of the subject Notes and Deeds of Trust referenced herein, Paragraphs

---

[3] These claims for wrongful foreclosure or claims for violation of the Deed of Trust Act (*RCW 61.24, et seq.*) are based on the following cases: *Cox v. Helenius*, 103 Wn.2d 383 (1985); *Udall v. T.D. Escrow Services, Inc.*, 159 Wn.2d 903 (2007); *Albice v. Preimer Mortgage Services of Washington, Inc.*, 174 Wn.2d 560, 568, 276 P.3d 1277 (2012); *Bain v. Metropolitan Mortgage Group*, 175 Wn.2d 83, 111, 285 P.3d 34 (2012); *Klem v. Washington Mutual Bank*, 176 Wn.2d 771, 295 P.3d 1179 (2012); *Schroeder v. Excelsior Management Group, LLC.*, 177 Wn.2d 94, 297 P.3d 677 (2013); *Walker v. Quality Loan Service Corp, et al.*, 176 Wn.App.294, 308 P.3d 716 (2013); *Bavand v. OneWest Bank, FSB, et al.*, 176 Wn.App 475, 309 P.3d 636 (2013); and *In re Meyer*, 506 B.R. 533 (W.D. Wash. 2014).

SECOND AMENDED COMPLAINT
Page 17

KOVAC & JONES, PLLC
ATTORNEYS AT LAW
1750 – 112th Avenue N.E.
Suite D151
Bellevue, Washington 98004
(425) 462-7322

1   3.2 and 3.11, to take any action against Plaintiff. As none of the above-named Defendants,

2   including QUALITY LOAN, SELECT PROTFOLIO, TICOR TITLE, ABC, MELLON TRUST,

3   BARCLAYS, HOMEQ or MERS, met the definition of "beneficiary" under *RCW 61.24.005(2)*,

4   Plaintiffs owed no duty under the subject Promissory Note to any named Defendant.

5       5.5     Without the express authority from the true and lawful holder and owner of the

6   subject obligation, none of the above-named Defendants, including, without limitation,

7   QUALITY LOAN, SELECT PROTFOLIO, TICOR TITLE, ABC, MELLON TRUST,

8   BARCLAYS, HOMEQ or MERS, had any lawful right to initiate the non-judicial foreclosure

9   procedures set out in *RCW 61.24, et seq.* Accordingly, any and all actions taken against

10  Plaintiffs, and in particular, the issuance of the Notices of Default and Notices of Trustee's Sale

11  referred to above, were unlawful, a violation of *RCW 61.24, et seq.,* and constituted a wrongful

12  foreclosure, irregular proceedings, and a material failure to comply with the provisions of *RCW*

13  *61.24, et seq.,* and this Court should so declare.

        5.6     Specifically, and without limitation, Plaintiff notes the following material

14  violations of *RCW 61.24 et seq.* in connection with Defendants' initiation and prosecution of

15  non-judicial foreclosure actions against Plaintiff and his properties.

16          A.      At no time relevant to this cause of action was SELECT PORTFOLIO a

17      true and lawful owner and actual holder of the Note of February 28, 2007 referred to in

18      Paragraph 3.2. This fact was known or should have been known by QUALITY LOAN at

19      the time Plaintiff's obligation was referred to QUALITY LOAN for foreclosure

20      processing.    Accordingly, the Notice of Default executed, served and posted by

21      QUALITY LOAN, a purported "agent" for SELECT PORTFOLIO, falsely and

22      misleadingly represented SELECT PORTFOLIO to be the beneficiary of the obligation.

SECOND AMENDED COMPLAINT
Page 18

KOVAC & JONES, PLLC
ATTORNEYS AT LAW
1750 – 112th Avenue N.E.
Suite D151
Bellevue, Washington 98004
(425) 462-7322

1    Moreover, this document was executed by QUALITY LOAN without actual knowledge

2    or proof of and without the express authorization from the true and lawful owner and

3    actual holder of the subject obligation, in apparent violation of *RCW 61.24.030(7)* and in

4    negligent disregard for the truth. At no time relevant to this cause of action has the true

5    and lawful owner and actual holder of the subject obligation ever declared Plaintiff to be

6    in default in violation of *RCW 61.24.030.*

7        B.    At no time relevant to this cause of action was SELECT PORTFOLIO a

8    true and lawful owner and actual holder of the Note of February 28, 2007 referred to in

9    Paragraph 3.2. Accordingly, at no time relevant to this cause of action did SELECT

10   PORTFOLIO have the statutory authority under *RCW 61.24.010* to execute the

11   Appointment of Successor Trustee on May 22, 2009. Moreover, the information

12   contained in said Appointment of Successor Trustee was false and misleading to the

13   extent that it refers to SELECT PORTFOLIO as a beneficiary of the obligation. This

14   fact was known or should have been known by QUALITY LOAN at the time Plaintiff's

15   obligation was referred to QUALITY LOAN for foreclosure processing. To the extent

16   QUALTITY LOAN was responsible for the contents and recording of the Appointment

17   of Successor Trustee, which was utilized to initiate and prosecute a wrongful foreclosure

18   of Plaintiff's property, it has engaged in wrongful foreclosure in violation of *RCW 61.24,
     et seq*.

19       C.    Absent eligibility as a beneficiary under *RCW 61.24.005(2)* or the express

20   authority from the true and lawful holder and owner of the subject Promissory Note,

21   MERS' Corporate Assignment of Deed of Trust of July 6, 2009 concerning the *56th Ave*

22   *Property*, was a nullity, and this Court should so declare. To the extent any named

SECOND AMENDED COMPLAINT
Page 19

KOVAC & JONES, PLLC
ATTORNEYS AT LAW
1750 – 112th Avenue N.E.
Suite D151
Bellevue, Washington 98004
(425) 462-7322

1    Defendant herein relied upon said Corporate Assignment of Deed of Trust of July 6,

2    2009, it acted without authority and in violation of *RCW 61.24 et seq.*

3        D.    The Notice of Trustee's Sale executed, filed, served and posted by

4    QUALITY LOAN on or about July 17. 2009, wrongfully identifies SELECT

5    PORTFOLIO as the "beneficiary" of the Deed of Trust referred to above in Paragraph

6    3.2. At the time this document was executed, SELECT PORTFOLIO was not the true

7    and lawful owner or actual holder of the subject obligation and not the beneficiary under

8    the subject Deed of Trust referred to in Paragraph 3.2, or at any time thereafter. This fact

9    was known or should have been known by QUALITY LOAN at the time Plaintiff's

10   obligation was referred to QUALITY LOAN for foreclosure processing. This document

11   was executed by QUALITY LOAN without actual knowledge or proof of and without

12   the express authorization from the true and lawful owner and actual holder of the subject

13   obligation, in violation of *RCW 61.24.030(7)*. At no time relevant to this cause of action

14   has the true and lawful owner and actual holder of the subject obligation ever declared

15   Plaintiff to be in default. At the time this Notice of Trustee's Sale was executed by

16   QUALITY LOAN, or at any time thereafter, did it maintain a street address in the state

17   of Washington where personal service of process could be made or maintain a physical

     presence and have phone service at that address, in violation of *RCW 61.24.030(6)*.

18       E.    The Notice of Foreclosure executed by QUALITY LOAN on or about

19   July 17, 2009 falsely and misleadingly identifies SELECT PORTFOLIO as the

20   "Beneficiary of your Deed of Trust and <u>owner</u> of the obligation secured thereby." At the

21   time this document was executed, SELECT PORTFOLIO was not the true and lawful

22   owner and actual holder of the subject obligation and not the beneficiary under the

SECOND AMENDED COMPLAINT
Page 20

KOVAC & JONES, PLLC
ATTORNEYS AT LAW
1750 – 112th Avenue N.E.
Suite D151
Bellevue, Washington 98004
(425) 462-7322

1 | subject Deed of Trust referred to in Paragraph 3.2, or at any time thereafter. Certainly,
2 | no evidence beyond the Corporate Assignment of Deed of Trust, referred to above in
3 | Paragraph 3.6 has been adduced to date to support this allegation. This document was
4 | executed by QUALITY LOAN without actual knowledge or proof of and without the
5 | express authorization from the true and lawful owner and actual holder of the subject
6 | obligation, in violation of *RCW 61.24.030(7)*.

7 |      F.     On or about March 18, 2009, HOMEQ prepared and mailed to Plaintiff
8 | correspondence that falsely and misleadingly representing that it was acting as servicer
9 | of the subject obligation referred to in Paragraph 3.11 on behalf of the "current
10 | creditor/owner": BARCLAYS.

11 |      G.     The Notice of Default executed, served and posted by REGIONAL
12 | TRUSTEE on June 8, 2009, as agent for "the Beneficiary", wrongfully and falsely
13 | represented MERS to be the "original creditor to whom the debt is/was owed" and that
14 | MERS is the "current creditor". At the time this document was executed, MERS was not
15 | the true and lawful owner or actual holder of the subject obligation and not the
16 | beneficiary under the subject Deed of Trust referred to in Paragraph 3.11, or at any time
17 | thereafter. This fact was known or should have been known to REGIONAL TRUSTEE
18 | at the time Plaintiff's obligation was referred to REGIONAL TRUSTEE for foreclosure
19 | processing. This document was executed by REGIONAL TRUSTEE without actual
20 | knowledge or proof of and without the express authorization from the true and lawful
21 | owner and actual holder of the subject obligation, in apparent violation of *RCW*
22 | *61.24.030(7)*. At no time relevant to this cause of action has the true and lawful owner

KOVAC & JONES, PLLC
ATTORNEYS AT LAW
1750 – 112th Avenue N.E.
Suite D151
Bellevue, Washington 98004
(425) 462-7322

1    and actual holder of the subject obligation ever declared Plaintiff to be in default, in

2    violation of *RCW 61.24.030.*

3        H.      The Appointment of Successor Trustee executed by MERS on July 4,

4    2009, a legal holiday, wrongfully identified itself "as nominee for its successors and

5    assigns". MERS wrongfully claimed entitlement to execute the document as beneficiary

6    of the security instrument referenced in Paragraph 3.11. At the time this Appointment of

7    Successor Trustee was executed, MERS was not a true and lawful owner or actual holder

8    of the subject obligation, a beneficiary of the subject Deed of Trust or otherwise

9    authorized to execute this Appointment of Successor Trustee and the information

10   contained in this recorded instrument was false and misleading.  Moreover, while this

11   second Appointment of Successor Trustee was executed by Noriko Colston on July 4,

12   2009, her signature was purportedly notarized by Jane Quick in Sacramento, California

13   on June 9, 2009, twenty-five (25) days prior to the Date Noriko Colston signed the

14   document. Clearly, the document was not signed before the notary, in violation of *RCW*

     *42.44.*

15       I.      The Notice of Trustee's Sale executed, served, filed and posted by

16   REGIONAL TRUSTEE on July 8, 2009 wrongfully and misleadingly contained

17   language identifying MERS "as nominee for its successors and assigns," in an apparent

18   reference to itself, and is a material misrepresentation in that the Plaintiff owed to MERS

19   no obligation, whatsoever. At the time this document was executed, MERS was not the

20   true and lawful owner or actual holder of the subject obligation and not the beneficiary

21   under the subject Deed of Trust referred to in Paragraph 3.11, or at any time thereafter.

22   This fact was known or should have been known to REGIONAL TRUSTEE at the time

SECOND AMENDED COMPLAINT
Page 22

KOVAC & JONES, PLLC
ATTORNEYS AT LAW
1750 – 112th Avenue N.E.
Suite D151
Bellevue, Washington 98004
(425) 462-7322

the subject Notice of Trustee's Sale was prepared. This document was executed by REGIONAL TRUSTEE without actual knowledge or proof of and without the express authorization from the true and lawful owner and actual holder of the subject obligation in violation of *RCW 61.24.030(7)*.

J.    In conjunction with the execution of the above noted Notice of Trustee's Sale, REGIONAL TRUSTEE executed a Notice of Foreclosure in accordance with *RCW 61.24.040*. This document falsely and misleadingly identifies MERS as the "Beneficiary of your Deed of Trust and <u>owner</u> of the obligation secured thereby." This fact was known or should have been known by REGIONAL TRUSTEE at the time Plaintiff's obligation was referred to REGIONAL TRUSTEE for foreclosure processing. At the time this document was executed, MERS was not the true and lawful owner or actual holder of the subject obligation and not the beneficiary under the subject Deed of Trust referred to in Paragraph 3.11, or at any time thereafter. Indeed, this information contradicts the information provided by HOMEQ just three months earlier. This document was executed by REGIONAL TRUSTEE without actual knowledge or proof of and without the express authorization from the true and lawful owner and actual holder of the subject obligation, in violation of *RCW 61.24.030(7)*.

K.    The second Notice of Default executed, served and posted by REGIONAL TRUSTEE on March 1, 2011, wrongfully and falsely represents that "the <u>owner</u> of the promissory note(s) or other obligation(s) secured by said Deed of Trust The Bank of New York Mellon Trust Company, National Association, as Grantor Trustee of Protium Master Grantor Trust" and "current creditor". At the time this document was executed, neither MELLON TRUST nor PROTIUM MASTER GRANTOR TRUST

KOVAC & JONES, PLLC
ATTORNEYS AT LAW
1750 – 112th Avenue N.E.
Suite 0151
Bellevue, Washington 98004
(425) 462-7322

were the true and lawful owner or actual holder of the subject obligation and not the beneficiary under the subject Deed of Trust referred to in Paragraph 3.11, or at any time thereafter. This fact was known or should have been known by REGIONAL TRUSTEE at the time the Notice of Default was prepared. The document also falsely alleges that "the original creditor to whom the debt is/was owed is MORTGAGE ELECTRONIC REGISTRATION SYSTEM, INC." This information contradicts the information provided by HOMEQ in 2009. This document was executed by REGIONAL TRUSTEE without actual knowledge or proof of and without the express authorization from the true and lawful owner and actual holder of the subject obligation, in apparent violation of *RCW 61.24.030(7)*. At no time relevant to this cause of action has the true and lawful owner and actual holder of the subject obligation ever declared Plaintiff to be in default.

L.      The second Notice of Trustee's Sale executed, served, filed and posted by REGIONAL TRUSTEE on April 8, 2011, falsely and misleadingly identifies MELLON TRUST as presently holding the beneficial interest in the subject Deed of Trust, without reference to the subject Note. At the time this document was executed, MELLON TRUST was not the true and lawful owner or actual holder of the subject obligation and not the beneficiary under the subject Deed of Trust referred to in Paragraph 3.11, or at any time thereafter. This fact was known or should have been known to REGIONAL TRUSTEE at the time REGIONAL TRUSTEE prepared the subject second Notice of Trustee's Sale. Indeed, this information contradicts the information provided in prior documents cited above. This document was executed by REGIONAL TRUSTEE without actual knowledge or proof of and without the express authorization from the true

KOVAC & JONES, PLLC
ATTORNEYS AT LAW
1750 – 112th Avenue N.E.
Suite D151
Bellevue, Washington 98004
(425) 462-7322

1    and lawful owner and actual holder of the subject obligation, in violation of *RCW*

2    *61.24.030(7)*.

3    5.7    Without lawful assignments of the subject Notes and Deeds of Trust referenced

4    herein, Paragraphs 3.2 and 3.11, neither QUALITY LOAN, SELECT PROTFOLIO, TICOR

5    TITLE, ABC, MELLON TRUST, BARCLAYS, HOMEQ nor MERS had the right to declare

6    Plaintiff to be in default on the subject obligations or to appoint a successor trustee, pursuant to

7    *RCW 61.24.010* and *RCW 61.24.030*. To the extent said Defendants declared Plaintiff to be in

8    default on the subject obligation and appointed successor trustee's to effect a non-judicial

9    foreclosure of Plaintiff's properties, they acted unlawfully. To the extent the Defendants

10   assisted each other in these actions, said Defendants are jointly and severally liable for any

     damages and injuries that flow from said misconduct.

11   5.8    Based upon the facts alleged herein the Defendants, including, without limitation,

12   QUALITY LOAN, SELECT PROTFOLIO, TICOR TITLE, ABC, MELLON TRUST,

13   BARCLAYS, HOMEQ and/or MERS, have engaged in a wrongful foreclosure against Plaintiff

14   for which the non-judicial foreclosures referred to above should be permanently enjoined and

15   Plaintiffs awarded compensation and relief for the injuries and damages that were proximately

16   caused by Defendants' misconduct.

17   ## VI. CAUSE OF ACTION VIOLATION OF CONSUMER PROTECTION ACT

18   6.1    Plaintiff repeats and realleges each and every item and allegation above as if fully

19   and completely set forth herein.

20   6.2    QUALITY LOAN, SELECT PROTFOLIO, TICOR TITLE, ABC, MELLON

21   TRUST, BARCLAYS, HOMEQ and/or MERS, without limitation, have violated the Consumer

22   Protection Act, *RCW 19.86, et seq.*, through misrepresentation, fraud and/or irregularities in the

KOVAC & JONES, PLLC
ATTORNEYS AT LAW
1750 – 112th Avenue N.E.
Suite D151
Bellevue, Washington 98004
(425) 462-7322

1    non-judicial foreclosure proceedings, restricting and inhibiting Plaintiff's ability to locate the

2    party accountable and with authority to correct the foreclosure irregularities, and pursuing a

3    course of conduct that involves the preparation of false and misleading documents, recording

4    and relying upon such documents that they knew or should have known to be false, misleading

5    and that had the capacity to deceive a substantial portion of the public.

6        6.3    In promulgating false and improperly executed documents QUALITY LOAN,

7    SELECT PROTFOLIO, TICOR TITLE, ABC, MELLON TRUST, BARCLAYS, HOMEQ

8    and/or MERS have and are engaged in a deceptive acts, including, without limitation, the false

9    dating by a notary of the documents referred to in Paragraphs 3.5 and 3.15, above.

10       6.4    Defendants, QUALITY LOAN, SELECT PROTFOLIO, TICOR TITLE, ABC,

     MELLON TRUST, BARCLAYS, HOMEQ and/or MERS have violated provisions of *RCW*

11   *61.24* and *15 U.S.C. §1692*, which constitute *per se* violations of *RCW 19.86*.

12
         6.5    Defendants, QUALITY LOAN, SELECT PROTFOLIO, TICOR TITLE, ABC,

13   MELLON TRUST, BARCLAYS, HOMEQ and/or MERS have engaged in these deceptive and

14   unfair activities as part of a normal course of business and commerce. Such activities are likely

15   to be repeated, and have been repeated, affecting the people of the State of Washington.

16       6.6    The public interest is negatively impacted by the pattern of conduct engaged in

17   by Defendants, QUALITY LOAN, SELECT PROTFOLIO, TICOR TITLE, ABC, MELLON

18   TRUST, BARCLAYS, HOMEQ and/or MERS as evidenced by the repeated acts and obvious

19   potential for repetition.

20       6.7    Several named Defendants are jointly and severally liable as said Defendants

21   knowingly executed and directed documents to Plaintiff or Defendants, QUALITY LOAN,

22   SELECT PROTFOLIO, TICOR TITLE, ABC, MELLON TRUST, BARCLAYS, HOMEQ

SECOND AMENDED COMPLAINT
Page 26

KOVAC & JONES, PLLC
ATTORNEYS AT LAW
1750 – 112th Avenue N.E.
Suite D151
Bellevue, Washington 98004
(425) 462-7322

1   and/or MERS at such time they knew or should have known contained false and/or misleading

2   statements.

3         6.8     Plaintiff has suffered injury and damages to his business and property as a direct

4   and proximate result of the misconduct outlined above and below, including, but not limited to,

5   filing fees, travel expenses, costs associated with the submission of at least two separate

6   Qualified Written Requests, professional fees, and other damages, damage and injury to financial

7   reputation, loss of professional goodwill, inability to obtain credit, and *per se* an emotional harm,

8   including a claim damages for outrage based on Defendants' irregularities in these foreclosure

9   proceedings. Moreover, Plaintiff has also incurred incidental investigative expenses, pursuant to

10   *12 USC 2605*, to determine the identity of the true and lawful owner and actual holder and those

11   in legal possession of his obligations and information concerning his account. in addition to the

12   distraction and loss of time to pursue business and personal activities due to the necessity of

13   addressing the wrongful conduct of QUALITY LOAN, SELECT PROTFOLIO, TICOR TITLE,

14   ABC, MELLON TRUST, BARCLAYS, HOMEQ and/or MERS through this and other actions.

    These injuries are solely the proximate result of the conduct of the Defendants in this action.

15
16
### VII. CAUSE OF ACTION VIOLATION OF FAIR DEBT COLLECTION PRACTICES ACT (FDCPA)

17         7.1     Plaintiff repeats and realleges each and every item and allegation above as if fully

18   and completely set forth herein.

19         7.2     Defendants, QUALITY LOAN, SELECT PROTFOLIO, TICOR TITLE, ABC,

20   MELLON TRUST, BARCLAYS, HOMEQ and/or MERS have violated the FDCPA through the

21   use of false and misleading representations as outlined above, in violation of *15 U.S.C. §1692*.

22

KOVAC & JONES, PLLC
ATTORNEYS AT LAW
1750 – 112th Avenue N.E.
Suite D151
Bellevue, Washington 98004
(425) 462-7322

7.3     A threat to take non-judicial action to dispossess the Plaintiff of his properties without a present right to possession by QUALITY LOAN, SELECT PROTFOLIO, TICOR TITLE, ABC, MELLON TRUST, BARCLAYS, HOMEQ and/or MERS, or any of them, is a violation of *15 U.S.C. §1692*. See *§808(6)* of the FDCPA.

7.4     Several named Defendants, including, without limitation, QUALITY LOAN, SELECT PROTFOLIO, TICOR TITLE, ABC, MELLON TRUST, BARCLAYS, HOMEQ and/or MERS, are jointly and severally liable as said Defendants knowingly executed documents they knew or should have known contained false statements or seeking to take nonjudicial action to which they were not legally entitled.

7.5     As a direct and proximate result of the above-named Defendants' misconduct, QUALITY LOAN, SELECT PROTFOLIO, TICOR TITLE, ABC, MELLON TRUST, BARCLAYS, HOMEQ and/or MERS are liable for Plaintiff's injuries and damages and entitled to all other relief as may be provided by statute.

### VIII. CAUSE OF ACTION FOR LIBEL/DEFAMTION OF TITLE

8.1     Plaintiff repeats and realleges each and every item and allegation above as if fully and completely set forth herein.

8.2     Defendants QUALITY LOAN, SELECT PROTFOLIO, TICOR TITLE, ABC, MELLON TRUST, BARCLAYS, HOMEQ and/or MERS have made false and defamatory statements against Plaintiff and the title to Plaintiff's property by recording and publishing Notices of Trustee's Sale when there was no legal right to do so.  Such actions were not protected by any privilege, were the result of said Defendants malicious, reckless, or negligent misconduct, had the potential effect of defeating Plaintiff's titles, and had a prejudicial effect

KOVAC & JONES, PLLC
ATTORNEYS AT LAW
1750 – 112th Avenue N.E.
Suite D151
Bellevue, Washington 98004
(425) 462-7322

1   upon Plaintiff's reputation and damaged his ability to negotiate with third parties to refinance the

2   properties, in addition to other damages.

3       8.3     Several named Defendants, including, without limitation, QUALITY LOAN,

4   SELECT PROTFOLIO, TICOR TITLE, ABC, MELLON TRUST, BARCLAYS, HOMEQ

5   and/or MERS, are jointly and severally liable for Plaintiff's injury and damages as they

6   knowingly executed and directed documents to Plaintiff, the public record or third parties that

7   they knew or should have known contained false and misleading statements, in reckless and/or

8   negligent disregard for the truth.

9       8.4     Plaintiff is entitled to quite title as to the wrongfully recorded Notices of

10  Trustee's Sale.

11          **IX.    CAUSE OF ACTION FOR VIOLATION OF _RCW 9A.82, et seq._**

12      9.1     Plaintiff repeats and re-alleges each and every item and allegation above as if

    fully and completely set forth herein.

13      9.2     The above-named Defendants, including without limitation, QUALITY LOAN,

14  SELECT PROTFOLIO, TICOR TITLE, ABC, MELLON TRUST, BARCLAYS, HOMEQ

15  and/or MERS, and each of them, jointly and severally, have engaged in a pattern and practice of

16  willful conspiratorial, deceptive, unconscionable acts, in violation of _RCW 9A.82, et seq.,_

17  including, without limitation, the following:

18      A.      Use of deception with the intent of misleading debtors and property owners at

19              their most vulnerable time (the definition of "profiteering"), as well as potential

20              buyers of foreclosed properties, Washington State regulators and the public at

21              large, upon which these persons justifiably relied;

22

SECOND AMENDED COMPLAINT
Page 29

KOVAC & JONES, PLLC
ATTORNEYS AT LAW
1750 – 112th Avenue N.E.
Suite D151
Bellevue, Washington 98004
(425) 462-7322

B.      Recorded fraudulent and false instruments affecting real property titles, thereby impairing the stability of Washington land titles;

C.      Circumvented the procedures set forth in *RCW 61.24, et seq.,* to exert possession and control over real property without valid authority and thereby attempting to accomplish theft of said real property through a non-judicial sale of Plaintiff's home;

D.      Unlawfully charging Plaintiff unjust fees and interest to amount allegedly due which are purportedly secured by the subject Deed of Trust;

E.      Utilizing the provisions of *RCW 61.24, et seq.,* to extort payments from Plaintiff to which they had no lawful right or authority to collect; and

F.      Establishing a means by which they could resell unlawfully obtained (stolen) home of Plaintiff.

9.3      Plaintiff and a substantial portion of the residents of Washington have suffered damages proximately caused by Defendants, QUALITY LOAN, SELECT PROTFOLIO, TICOR TITLE, ABC, MELLON TRUST, BARCLAYS, HOMEQ and/or MERS, acts and omissions stated herein, including, without limitation, the following:

A.      Diminishment of property values both directly and indirectly;

B.      Degradation of surrounding neighborhoods aesthetics, and creating nuisances.

C.      Damage to the public perception and reputation of those victimized by Defendants, including, without limitation, humiliation; and

D.      Damages, both actual and perceived, to the integrity of the non-judicial foreclosure process in Washington, *RCW 61.24, et seq.;*

KOVAC & JONES, PLLC
ATTORNEYS AT LAW
1750 – 112th Avenue N.E.
Suite D151
Bellevue, Washington 98004
(425) 452-7322

9.4     Plaintiff has directly incurred costs of attempting to resolve the issues alleged herein, including substantial out-of-pocket expenses, loss of time, attorney fees, research and the prosecution of this action in defense of her home, in an amount to be proven at time of trial.

9.5     In addition to Plaintiff's out-of-pocket expenses, Plaintiff is entitled to treble damages and reasonable attorney's fees, as may be deemed appropriate, pursuant to *RCW 9A.82.100(4)(d)*.

## X.     PRAYER FOR RELIEF

10.1     That judgment be entered against all of the Defendants, QUALITY LOAN, SELECT PROTFOLIO, TICOR TITLE, ABC, MELLON TRUST, BARCLAYS, HOMEQ and/or MERS, jointly and severally, for all injuries and damages associated with said Defendants' wrongful foreclosure actions in an amount to be proven at the time of trial;

10.2     That MERS be declared an ineligible beneficiary within the terms of *RCW 61.24.005(2)*.

10.3     That the foreclosure efforts of Defendants, QUALITY LOAN, SELECT PROTFOLIO, TICOR TITLE, ABC, MELLON TRUST, BARCLAYS, HOMEQ and/or MERS, be enjoined until said Defendants and the true and lawful owners and actual holders in legal possession of the obligations fully, completely and strictly comply with the provisions of *RCW 61.24, et seq.*

10.4     That the actions of some or all of the Defendants, including, without limitation, QUALITY LOAN, SELECT PROTFOLIO, TICOR TITLE, ABC, MELLON TRUST, BARCLAYS, HOMEQ and/or MERS, be determined to be unfair and deceptive business practices in violation of *RCW 19.86, et seq.* and that this Court award all such relief to Plaintiff

KOVAC & JONES, PLLC
ATTORNEYS AT LAW
1750 – 112th Avenue N.E.
Suite D151
Bellevue, Washington 98004
(425) 462-7322

1   as they may be entitled, including, injunctive relief, treble damages and an award for costs and

2   attorneys fees;

3       10.5    That the Plaintiff be awarded consequential damages, including attorney's fees

4   incurred to bring this action and all other attorney's fees incurred in defending against the

5   actions of the Defendants described more particularly above, in an amount to be proved at trial;

6       10.6    That the Plaintiff be awarded statutory damages available under any applicable

7   statutes; including without limitation *15 U.S.C. §1692, RCW 9A.82. et seq. RCW 19.86, et seq.,*

8   *RCW 61.24, et seq.,* or any other statutory basis that may emerge at trial.

9       10.7    That Plaintiffs' title to his properties be established and quieted in them in fee

10  simple, against the Notices of Trustee Sale that Defendants have wrongfully recorded against

11  Plaintiff's properties.

12      10.8    That Plaintiff be awarded his taxable costs and reasonable attorney's fees

13  incurred herein.

14      10.9    That the Court grant Plaintiff such other and further relief as may be just and

15  equitable under the circumstances.

    **DATED** this _20th_ day of July, 2014.

                        KOVAC & JONES, PLLC


                        _____
                        Richard Llewelyn Jones, WSBA # 12904
                        Attorney for Plaintiff

16

17

18

19

20

21

22

KOVAC & JONES, PLLC
ATTORNEYS AT LAW
1750 – 112th Avenue N.E.
Suite D151
Bellevue, Washington 98004
(425) 462-7322

# EXHIBIT "A"



**SPS** | SELECT
*Portfolio*
SERVICING, inc.

**0010804698**
July 6, 2010

DOUG WALKER
22306 56TH AVE WY
MOUNTLAKE TER WA 98043

RE:    Loan Number: 0010804698
       Property Address:  22306 56TH AVE WY

Dear DOUG WALKER:

Select Portfolio Servicing, Inc. (SPS) has received correspondence from you or your authorized agent regarding the mortgage loan referenced above.  This correspondence was sent to our general mailbox address and has been forwarded to the appropriate department for handling.  As a reminder, all written disputes/inquires must be sent to the address listed below as this is our exclusive address for processing these matters.

If you would like to speak directly with one of our Customer Service Representatives, please call us toll free at (800) 258-8602.  Our hours of operation are Monday through Friday from 7:00 a.m. to 8:00 p.m. and Saturday from 8:00 a.m. to 12:00 p.m., Eastern Time.  Our web address is www.spservicing.com.

SPS offers many assistance options designed for customers who are experiencing temporary or permanent financial hardship.  These options are offered at no cost to our customer and may include special payment arrangements, structured repayment plans or loan modifications.  If you are experiencing a financial hardship, please call us as soon as possible to discuss your situation and options that may be available to you.

We strive to provide excellent service to our customers and their representatives and we look forward to the opportunity to speak with you.

Sincerely,

Select Portfolio Servicing, Inc.

> **Please send all Disputes/Inquires to:**
> Select Portfolio Servicing, Inc.
>     P.O. Box 65567
>     Salt Lake City, UT  84165-0567

Esta carta contiene información importante concerniente a sus derechos. Por favor, hágala traducir. Nuestros representantes bilingues están a su disposición  para contestar cualquier pregunta llamando al teléfono 1-800-831-0118 y marque la opción 2.

This communication is for informational purposes only and is not an attempt to collect a debt.

AD920

**000320**

RICHARD LLEWELYN JONES, P.S.

ATTORNEY AT LAW
2050 - 112TH AVENUE NORTHEAST
SUITE 230
BELLEVUE, WASHINGTON 98004-2992

TELEPHONE
(425) 462-7322

FAX
(425) 450-0249

June 16, 2010

Select Portfolio Servicing, Inc.
C/o Matthew Cleverly
Attorney at Law
19735 – 10th Ave., N.E., Suite N200
Poulsbo, WA 98370

Re: Doug Walker
Loan Nos. 0010804698 and/or 700516663
*Walker v. Quality Loan Service Corp of Washington, et al*;
Snohomish County Superior Court Cause No. 09-2-09456-8
Property addresses: 22306 – 56th Ave., N.W. Mountlake Terrace, WA 98043
23207 Lapierre Dr., Mountlake Terrace, WA 98043

## QUALIFIED WRITTEN REQUEST, COMPLAINT, DISPUTE OF DEBT AND VALIDATION OF DEBT LETTER, TILA REQUEST

Dear Sir or Madam:

As attorney for Mr. Doug Walker, and pursuant to the terms of *12 USC 2605(e)*, I am writing to you to complain about the accounting and servicing of this mortgage and my need for understanding and clarification of various sale, transfer, funding source, legal and beneficial ownership, charges, credits, debits, transactions, reversals, actions, payments, analyses and records related to the servicing of this account from its origination to the present date.

To date, the documents and information I have, that you have sent me, and the conversations with your service representatives have been unproductive and have not answered my questions.

Needless to say, I am very concerned. With all the news lately regarding the stories of predatory lending, you have left me feeling that there is something you are trying to hide. I worry that potential fraudulent and deceptive practices by unscrupulous mortgage brokers; sales and transfers of mortgage servicing rights; deceptive and fraudulent servicing practices to enhance balance sheets; deceptive, abusive and fraudulent accounting tricks and practices may have also negatively affected any credit rating, mortgage account and/or the debt or payments that I am currently, or may be legally obligated to.

000321

Select Portfolio Servicing, Inc.
June 16, 2010
Page 2

I hereby demand absolute first hand evidence from you of the original uncertificated or certificated security regarding Loan Nos. 0010804698 and/or 700516663. In the event you do not supply me with the very security it will be a positive confirmation on your part that you never really created and owned one.

I also hereby demand that a chain of transfer from you to wherever the security is now be promptly sent to me as well. Absent the actual evidence of the security my client will have no choice but to dispute the validity of your lawful ownership, funding, entitlement right, and the current debt you say my client owes. By debt I am referring to the principal balance you claim my client owes; the calculated monthly payment, calculated escrow payment and any fees claimed to be owed by you or any trust or entity you may service or sub-service for under that certain Notes secured by Deeds of Trust recorded under Snohomish County Auditor's Nos. 20070306094 and 200704120622.

To independently validate this debt, I need to conduct a complete exam, audit, review and accounting of this mortgage account from its inception through the present date. Upon receipt of this letter, please refrain from reporting any negative credit information (if any) to any credit-reporting agency until you respond to each of the requests.

I also request that you conduct your own investigation and audit of this account since its inception to validate the debt you currently claim my client owes. I would like you to validate the debt so that it is accurate to the penny!

Please do not rely on previous servicing companies or originators records, assurances or indemnity agreements and refuse to conduct a full audit and investigation of this account.

I understand that potential abuses by you or previous servicing companies could have deceptively, wrongfully, unlawfully, and/or illegally:

Increased the amounts of monthly payments;

Increased the principal balance my client owes;

Increased the escrow payments;

Increased the amounts applied and attributed toward interest on this account;

Decreased the proper amounts applied and attributed toward the principal on this account; and/or Assessed, charged and/or collected fees, expenses and miscellaneous charges my client is not legally obligated to pay under this mortgage, note and/or deed of trust.

Select Portfolio Servicing, Inc.
June 16, 2010
Page 3

      I request you insure that my client has not been the victim of such predatory servicing and lending practices.

      To insure this, I authorize a thorough review, examination, accounting and audit of Select Portfolio Servicing, Inc Loan Nos. 0010804698 and/or 700516663 by mortgage auditing and predatory servicing or lending experts. This exam and audit will review this mortgage account file from the date of initial contact, application and the origination of this account to the present date written above.

      Again, this is a Qualified Written Request under the Real Estate Settlement Procedures Act, codified as Title 12 section 2605(e) of the United States Code as well as a request under the Truth in Lending Act 15 U.S.C. section 1601. RESPA provides substantial penalties and fines for non-compliance or failure to answer my questions provided in this letter **within sixty (60) days of its receipt.**

      In order to conduct the examination and audit of this loan, I need to have full and immediate disclosure including copies of all pertinent information regarding this loan. The documents requested and answers to my questions are needed by me and others to ensure that this loan:

      1.     Was originated in lawful compliance with all federal and state laws, regulations including, but not limited to Title 62 of the Revised Statutes, RESPA, TILA, Fair Debt Collection Practices Act, HOEPA and other laws;

      2.     That the origination and/or any sale or transfer of this account or monetary instrument, was conducted in accordance with proper laws and was a lawful sale with complete disclosure to all parties with an interest;

      3.     That you disclose the claimed holder in due course of the monetary instrument/deed of trust/ asset is holding such note in compliance with statutes, State and Federal laws and is entitled to the benefits of payments;

      4.     That all good faith and reasonable disclosures of transfers, sales, Power Of Attorney, monetary instrument ownership, entitlements, full disclosure of actual funding source, terms, costs, commissions, rebates, kickbacks, fees etc. were and still are properly disclosed to me, including but not limited to the period commencing with the original loan solicitation through and including any parties, instruments, assignments, letters of transmittal, certificates of asset backed securities and any subsequent transfer thereof

      5.     That each servicers and/or sub-servicers of this mortgage has serviced this mortgage in accordance with statute, laws and the terms of mortgage, monetary instrument/deed of trust, including but not limited to all accounting or bookkeeping entries commencing with the

000323

Select Portfolio Servicing, Inc.
June 16, 2010
Page 4

original loan solicitation through and including any parties, instruments, assignments, letters of transmittal, certificates of asset backed securities and any subsequent transfer thereof~

6.    That each servicer and/or sub-servicers of this mortgage has serviced this mortgage in compliance with local, state and federal statutes, laws and regulations commencing with the original loan solicitation through and including any parties, instruments, assignments, letters of transmittal, certificates of asset backed securities and any subsequent transfer thereof;

7.    That this mortgage account has been credited, debited, adjusted, amortized and charged correctly and disclosed fully commencing with the original loan solicitation through and including any parties, instruments, assignments, letters of transmittal, certificates of asset backed securities and any subsequent transfer thereof;

8.    That interest and principal have been properly calculated and applied to this loan;

9.    That any principal balance has been properly calculated, amortized and accounted for; and

10.    That no charges, fees or expenses, not obligated by me in any agreement, have been charged, assessed or collected from this account or any other related account arising out of the subject loan transaction.

In order to validate this debt and audit this account, I need copies of pertinent documents to be provided to me. I also need answers, certified, in writing, to various servicing questions. For each record kept on computer or in any other electronic file or format, please provide a paper copy of all information in each field or record in each computer system, program or database used by you that contains any information on this account or my name.

As such, please send to me, at the address above, copies of the documents requested below as soon as possible. Please also provide copies, front and back, of the following documents regarding account .＿

1.    Any certificated or uncertificated security used for the funding of this account;

2.    Any and all "Pool Agreement(s)" or "servicing agreements" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any government sponsored entity, hereinafter GSE or other party;

3.    Any and all "Deposit Agreement(s)" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

000324

Select Portfolio Servicing, Inc.
June 16, 2010
Page 5

4. Any and all "Servicing Agreement(s)" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

5. Any and all "Custodial Agreement(s)" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

6. Any and all "Master Purchasing Agreement(s)" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

7. Any and all "Issuer Agreement(s)" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

8. Any and all "Commitment to Guarantee" agreement(s) between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

9. Any and all "Release of Document" agreement(s) between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

10. Any and all "Master Agreement for Servicer's Principal and Interest Custodial Account" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

11. Any and all "Servicer's Escrow Custodial Account" between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

12. Any and all "Release of Interest" agreement(s) between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any GSE or other party;

13. Any Trustee agreement(s) between the nominal lender at the loan closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and trustee(s) regarding this account or pool accounts with any GSE or other party;

Please also send me copies, front and back, of:

Select Portfolio Servicing, Inc.
June 16, 2010
Page 6

    A.    Any documentation evidencing any trust relationship regarding the Mortgage/Deed of Trust ~ Note in this matter;

    B.    Any and all document(s) establishing any Trustee of record for the Mortgage/Deed of Trust **and** any Note;

    C.    Any and all document(s) establishing the date of any appointment of Trustee Mortgage/Deed of Trust **and** any Note, including any and all assignments or transfers or nominees of any substitute trustees(s);

    D.    Any and all document(s) establishing any Grantor for this Mortgage/Deed of Trust **and** any Note;

    E.    Any and all document(s) establishing any Grantee for this Mortgage/Deed of Trust **and** any Note;

    F.    Any and all document(s) establishing any Beneficiary for this Mortgage/Deed of Trust **and** any Note;

    G.    Any documentation evidencing the Mortgage/Deed of Trust is a constructive trust or any other form of trust;

    H.    All data, information, notations, text, figures and information contained in your mortgage servicing and accounting computer systems including, but not limited to Ailtel or Fidelity CPI system, or any other similar mortgage servicing software used by you, any servicers, or sub-servicers of this mortgage account from the inception of this account to the date written above.

    I.    All descriptions and legends of all Codes used in your mortgage servicing and accounting system so the examiners and auditors and experts retained to audit and review this mortgage account may properly conduct their work.

    J.    All assignments, transfers, allonge, or other documents evidencing a transfer, sale or assignment of this mortgage, deed of trust, monetary instrument or other document that secures payment by my client to this obligation in this account from the inception of this account to the present date including any such assignment on MERS.

    K.    All records, electronic or otherwise, of assignments of this mortgage, monetary instrument or servicing rights to this mortgage including any such assignments on MERS.

    L.    All deeds in lieu, modifications to this mortgage, monetary instrument or

Select Portfolio Servicing, Inc.
June 16, 2010
Page 7

deed of trust from the inception of this account to the present date.

M.    The front and back of each and every canceled check, money order, draft, debit or credit notice issued to any servicers of this account for payment of any monthly payment, other payment, escrow charge, fee or expense on this account.

N.    All escrow analyses conducted on this account from the inception of this account until the date of this letter.

O.    The front and back of each and every canceled check, draft or debit notice issued for payment of closing costs, fees and expenses listed on any and all disclosure statements including, but not limited to, appraisal fees, inspection fees, title searches, title insurance fees, credit life insurance premiums, hazard insurance premiums, commissions, attorney fees, points, etc.

P.    Front and back copies of all payment receipts, checks, money orders, drafts, automatic debits and written evidence of payments made by others or my client on this account.

Q.    All letters, statements and documents sent to me by your company.

R.    All letters, statements and documents sent to me by agents, attorneys or representatives of your company.

S.    All letters, statements and documents sent to my client by previous servicers, sub-servicers or others in your account file or in your control or possession or in the control or possession of any affiliate, parent company, agent, sub-servicers, servicers, attorney or other representative of your company.

T.    All letters, statements and documents contained in this account file or imaged by you, any servicers or sub-servicers of this mortgage from the inception of this account to the present date.

U.    All electronic transfers, assignments and sales of the note/asset, mortgage, deed of trust or other security instrument.

V.    All copies of property inspection reports, appraisals, BPOs and reports done on my property.

W.    All invoices for each charge such as inspection fees, BPOs, appraisal fees, attorney fees, insurance, taxes, assessments or any expense which has been charged to this mortgage account from the inception of this account to the present date.

Select Portfolio Servicing, Inc.
June 16, 2010
Page 8

X.    All checks used to pay invoices for each charge such as inspection fees, BPOs, appraisal fees, attorney fees, insurance, taxes, assessments or any expense which has been charged to this account from the inception of this account to the present date.

Y.    All agreements, contracts and understandings with vendors that have been paid for any charge on this account from the inception of this account to the present date.

Z.    All account servicing records, payment payoffs, payoff calculations, ARM audits, interest rate adjustments, payment records, transaction histories, account histories, accounting records, ledgers, and documents that relate to the accounting of this account from the inception of this account to the present date.

AA.    All account servicing transaction records, ledgers, registers and similar items detailing how this account has been serviced from the inception of this account to the present date.

Further, in order to conduct the audit and review of this account, and to determine all proper amounts due, I need the following answers to questions concerning the servicing and accounting of this mortgage account from its inception to the present date. Accordingly, please provide me, in writing, the answers to the following questions:

## In regards to Account Accounting and Servicing Systems:

1.    Please identify for me each account accounting and servicing system used by you and any sub-servicers or previous servicers from the inception of this account to the present date so that experts can decipher the data provided.

2.    For each account accounting and servicing system identified by you and any sub-servicers or previous servicers from the inception of this: account to the present date, please provide the name and address of the company that designed and sold the system.

3.    For each account accounting and servicing system used by you and any sub-servicers or previous servicers from the inception of this account to the present date, please provide the complete transaction code list for each system so that I, and others can adequately audit this account.

## In regards to Debits and Credits:

1.    In a spreadsheet form or in letter form in a columnar format, please detail for me each and every credit on this account from the date such credit was posted to this account as well as the date any credit was received.

Select Portfolio Servicing, Inc.
June 16, 2010
Page 9

2.    In a spreadsheet form or in letter form in a columnar format, please detail for me each and every debit on this account from the date such debit was posted to this account as well as the date any debit was received.

3.    For each debit and credit listed, please provide me with the definition for each corresponding transaction code you utilize.

4.    For each transaction code, please provide the master transaction code list used by you or previous servicers.

### In regards to Mortgage and Assignments:

1.    Has each sale, transfer or assignment of this mortgage, monetary instrument, deed of trust or any other instrument my client executed to secure this debt been recorded in the county property records in the county and state in which my property is located from the inception of this account to the present date? Yes or No?

2.    If not, why?

3.    Is your company the servicer of this mortgage account or the holder in due course and beneficial owner of this mortgage, monetary instrument and/or deed of trust?

4.    Have any sales, transfers or assignments of this mortgage, monetary instrument, deed of trust or any other instrument my client executed to secure this debt been recorded in any electronic fashion such as MERS or other internal or external recording system from the inception of this account to the present date? Yes or No?

5.    If yes, please detail for me the names of the seller, purchaser, assignor, assignee or any holder in due course to any right or obligation of any note, mortgage, deed of trust or security instrument I executed securing the obligation on this account that was not recorded in the county records where my property is located whether they be mortgage servicing rights or the beneficial interest in the principal and interest payments.

### In regards to Attorney Fees:

For purposes of the questions below dealing with attorney fees, please consider attorney fees and legal fees to be one in the same.

1.    Have attorney fees ever been assessed to this account from the inception of this account to the present date? Yes or No?

Select Portfolio Servicing, Inc.
June 16, 2010
Page 10

2. If yes, please detail each separate assessment, charge and collection of attorney fees to this account from the inception of this account to the present date and the date of such assessments to this account.

3. Have attorney fees ever been charged to this account from the inception of this account to the present date? Yes or No?

4. If yes, please detail each separate charge of attorney fees to this account from the inception of this account to the present date and the date of such assessments to this account.

5. Have attorney fees ever been collected from this account from the inception of this account to the present date? Yes or No?

6. If yes, please detail each separate collection of attorney fees to this account from the inception of this account to the present date and the date of such assessments to this account.

7. Please provide me with the name and address of each attorney or law firm that has been paid any fees or expenses related to this account from the inception of this account to the present date.

8. Please identify for me in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement my client signed that authorized the assessment, charge or collection of attorney fees.

9. Please detail and list for me in writing each separate attorney fee assessed from this account and for which each corresponding payment period or month such fee was assessed from the inception of this account to the present date.

10. Please detail and list for me in writing each separate attorney fee collected from this account and for which each corresponding payment period or month such fee was collected from the inception of this account to the present date.

11. Please detail and list for me in writing any adjustments in attorney fees assessed and on what date such adjustment was made and the reason for such adjustment.

12. Please detail and list for me in writing any adjustments in attorney fees collected and on what date such adjustment was made and the reason for such adjustment.

13. Has interest been charged on any attorney fees assessed or charged to this account? Yes or No?

14. Is interest allowed to be assessed or charged on attorney fees charged or assessed

Select Portfolio Servicing, Inc.
June 16, 2010
Page 11

to this account? Yes or No?

15. How much total in attorney fees have been assessed to this account from the inception to the present date?

16. How much total in attorney fees have been collected from this account from the inception to the present date?

17. How much total in attorney fees have been charged to this account from the inception to the present date?

18. Please send me copies of all invoices and detailed billing statements from any law firm or attorney that has billed such fees that have been assessed or collected from this account from the inception to the present date.

### In regards to Suspense/Unapplied Accounts:

For purposes of this section, please treat the term suspense account and unapplied account as one in the same.

1. Has there been any suspense or unapplied account transactions on this account from the inception of this account until the present date? Yes or No?

2. If yes, please explain the reason for each and every suspense transaction that occurred on this account. If no, please skip the questions in this section dealing with suspense and unapplied accounts.

3. In a spreadsheet or in letter form in a columnar format, please detail for me each and every suspense or unapplied transaction, both debits and credits that has occurred on this account from the inception of this account to the present date.

### In regards to late fees:

For purposes of my questions below dealing with late fees, please consider the terms late fees and late charges to be one in the same.

1. Have you reported the collection of late fees on this account as interest in any statement to me or to the IRS? Yes or No?

2. Have any previous servicers or sub-servicers of this mortgage reported the collection of late fees on this account as interest in any statement to me or to the IRS? Yes or No?

Select Portfolio Servicing, Inc.
June 16, 2010
Page 12

3.   Do you consider the payment of late fees as liquidated damages to you for not receiving payment on time? Yes or No?

4.   Are late fees considered interest? Yes or No?

5.   Please detail for me in writing what expenses and damages you incurred for any payment I made that was late.

6.   Were any of these expenses or damages charged or assessed to this account in any other way? Yes or No?

7.   If yes, please describe what expenses or damages were charged or assessed to this account.

8.   Please describe for me in writing what expenses you or others undertook due to any payment my client made which was late.

9.   Please describe for me in writing what damages you or others undertook due to any payment my client made, which was late.

10.  Please identify for me in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement my client signed that authorized the assessment or collection of late fees.

11.  Please detail and list for me in writing each separate late fee assessed to this account and for which corresponding payment period or month such late fee was assessed from the inception of this account to the present date.

12.  Please detail and list for me in writing each separate late fee collected from this account and for which corresponding payment period or month such late fee was collected from the inception of this account to the present date.

13.  Please detail and list for me in writing any adjustments in late fees assessed and on what date such adjustment was made and the reason for such adjustment.

14.  Has interest been charged on any late fee assessed or charged to this account? Yes or No?

15.  Is interest allowed to be assessed or charged on late fees to this account? Yes or No?

00033:

Select Portfolio Servicing, Inc.
June 16, 2010
Page 13

16. Have any late charges been assessed to this account? Yes or No7

17. If yes, how much in total late charges have been assessed to this account from the inception of this account to the present date?

18. Please provide me with the exact months or payment dates you or other previous servicers or sub-servicers of this account claim my client has been late with a payment from the inception of this account to the present date

19. Have late charges been collected on this account from the inception of this account to the present date? Yes or No'?

20. If yes, how much in total late charges have been collected on this account from the inception of this account to the present date?

### In regards to Property Inspections:

For the purpose of this section property inspection and inspection fee refer to any inspection of property by any source and any related fee or expense charged, assessed or collected for such inspection.

1. Have any property inspections been conducted on my property from the inception of this account to the present date? Yes or No?

2. If your answer is no, you can skip the rest of the questions in this section concerning property inspections.

3. If yes, please tell me the date of each property inspection conducted on my property that is the secured interest for this mortgage, deed of trust or note.

4. Please tell me the price charged for each property inspection.

5. Please tell me the date of each property inspection.

6. Please tell me the name and address of each company and person who conducted each property inspection on my property.

7. Please tell me why property inspections were conducted on my property.

8. Please tell me how property inspections are beneficial to me.

9. Please tell me how property inspections are protective of my property.

Select Portfolio Servicing, Inc.
June 16, 2010
Page 14

10.    Please explain to me your policy on property inspections.

11.    Do you consider the payment of inspection fees as a cost of collection?  Yes or No?

12.    If yes, why?

13.    Do you use property inspections to collect debts?  Yes or No?

14.    Have you used any portion of the property inspection process on my client's property to collect a debt or inform me of a debt, payment or obligation I owe?  Yes or No?

15.    If yes, please answer when and why?

16.    Please identify for me in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement my client signed that authorized the assessment or collection of property inspection fees.

17.    Have you labeled in any record or document sent to my client a property inspection as a miscellaneous advance?  Yes or No?

18.    If yes, why?

19.    Have you labeled in any record or document sent to my client a property inspection as a legal fee or attorney fee? Yes or No?

20.    If yes, why?

21.    Please detail and list for me in writing each separate inspection fee assessed to this account and for which corresponding payment period or month such fee was assessed from the inception of this account to the present date.

22.    Please detail and list for me in writing each separate inspection fee collected from this account and for which corresponding payment period or month such fee was collected from the inception of this account to the present date.

23.    Please detail and list for me in writing any adjustments in inspection fees assessed and on what date such adjustment was made and the reasons for such adjustment'?

24.    Please detail and list for me in writing any adjustments in inspection fees collected and on what date such adjustment was made and the reasons for such adjustment?

Select Portfolio Servicing, Inc.
June 16, 2010
Page 15

25.     Has interest been charged on any inspection fees assessed or charged to this account? Yes or No?

26.     If yes, when and how much was charged?

27.     Is interest allowed to be charged on inspection fees charged or assessed to this account? Yes or No?

28.     How much total in inspection fees has been assessed to this account from the inception of this account to the present date?

29.     How much total in inspection fees has been collected on this account from the inception of this account to the present date?

30.     Please forward to me copies of all property inspections made on my property in this mortgage account file.

31.     Has any fee charged or assessed for property inspections been placed into an escrow account? Yes or No?

**In regards to BPO Fees:**

1.      Have any BPOs (Broker Price Opinions) been conducted on my client's property? Yes or No?

2.      If your answer is no, you can skip the rest of the questions in this section concerning BPOs.

3.      If yes, please tell me the date of each BPO conducted on my property that is the secured interest for this mortgage, deed of trust or note.

4.      Please tell me the price of each BPO.

5.      Please tell me who conducted the BPO.

6.      Please tell me why BPO's were conducted on my property.

7.      Please tell me how BPO's are beneficial to my client.

8.      Please tell me how BPO's are protective of my client's property.

000335

Select Portfolio Servicing, Inc.
June 16, 2010
Page 16

9.    Please explain your policy on BPO's.

10.   Have any BPO fees been assessed to this account? Yes or No?

11.   If yes, how much in total BPO fees have been charged to this account?

12.   Please identify for me in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement my client signed that authorized the assessment, charge or collection of a BPO fee from me.

13.   Please send to me copies of all BPO reports that have been done on my client's property.

14.   Has any fee charged or assessed for a BPO been placed into an escrow account? Yes or No?

### In regards to Force-Placed Insurance

1.    Have you placed or ordered any force-placed insurance policies on my client's property?

2.    If yes, please tell me the date of each policy ordered or placed on my property that is the secured interest for this mortgage, deed of trust or note.

3.    Please tell me the price of each policy.

4.    Please tell me the agent for each policy.

5.    Please tell me why each policy was placed on my client's property.

6.    Please tell me how the policies are beneficial to my client.

7.    Please tell me how the policies are protective of my client's property.

8.    Please explain to me your policy on force-placed insurance.

9.    Have any force-placed insurance fees been assessed to this account? Yes or No?

10.   If yes, how much in total force-placed insurance fees have been assessed to this account?

11.   Have any force-placed insurance fees been charged to this account? Yes or No?

**000336**

Select Portfolio Servicing, Inc.
June 16, 2010
Page 17

12.     If yes, how much in total force-placed insurance fees have been charged to this account?

13.     Please identify for me in writing the provision, paragraph, section or sentence of any note, mortgage, deed of trust or any agreement my client signed that authorized the assessment, charge or collection of force-placed insurance fees from me.

14.     Do you have any relationship with the agent or agency that placed any policies on my property? If yes, please describe.

15.     Do you have any relationship with the carrier that issued any policies on my property'? If yes, please describe.

16.     Has the agency or carrier you used to place a forced-placed insurance on my client's property provided you any service, computer system, discount on policies, commissions, rebates or any form of consideration? If yes, please describe.

17.     Do you maintain a blanket insurance policy to protect your properties when customer policies have expired? Yes or No?

18.     Please send to me copies of all forced-placed insurance policies that have been ordered on my client's property from the inception of this account to the present date.

**In regards to Servicing:**

For each of the following questions listed below, please provide me with a detailed explanation in writing that answers each question. In addition, I need the following answers to questions concerning the servicing of this account from its inception to the present date.

1.      Did the originator or previous servicers of this account have any financing agreements or contracts with your company or an affiliate of your company?

2.      Did the originator or previous servicers of this account have any financing agreements or contracts with your company or an affiliate of your company?

3.      Did the originator or previous servicers of this account receive any compensation, fee, commission, payment, rebate or other financial consideration from your company or affiliate of your company for handling, processing, originating or administering this loan? If yes, please describe and itemize each and every form of compensation, fee, commission, payment, rebate or other financial consideration paid to the originator of this account by your company or any affiliate.

**000337**

Select Portfolio Servicing, Inc.
June 16, 2010
Page 18

4.      Please identify for me where the originals of this entire account file are currently located and how they are being stored, kept and protected.

5.      Where is the original monetary (Note) instrument or mortgage my client signed located? Please describe its physical location and anyone holding this note as a custodian or trustee if applicable.

6.      Where is the original deed of trust or mortgage and note my client signed located? Please describe its physical location and anyone holding this note as a custodian or trustee if applicable.

7.      Since the inception of this account, has there been any assignment of my client's monetary instrument/asset to any other party? If the answer is yes, identify the names and addresses of each and every individual, party, bank, trust or entity that has received such assignments.

8.      Since the inception of this account, has there been any assignment of the deed of trust or mortgage and note to any other party? If the answer is yes, identify the names and addresses of each and every individual, party, bank, trust or entity that has received such assignments.

9.      Since the inception of this account, has there been any sale or assignment of the servicing rights to this mortgage account to any other party? If the answer is yes, identify the names and addresses of each and every individual, party, bank, trust or entity that has received such assignments or sale.

10.     Since the inception of this account, have any sub-servicers serviced any portion of this mortgage account? If the answer is yes, identify the names and addresses of each and every individual, party, bank, trust or entity that has sub-serviced this mortgage account.

11.     Has this mortgage account been made a part of any mortgage pool since the inception of this loan? If yes, please identify for me each and every account mortgage pool that this mortgage has been a part of from the inception of this account to the present date.

12.     Has each and every assignment of my asset/monetary instrument been recorded in the county land records where the property associated with this mortgage account is located?

13.     Has there been any electronic assignment of this mortgage with MERS (Mortgage Electronic Registration System) or any other computer mortgage registry service or computer program? If yes, identify the name and address of each and every individual, entity, party, bank, trust or organization or servicers that have been assigned to mortgage servicing rights to this

Select Portfolio Servicing, Inc.
June 16, 2010
Page 19

account as well as the beneficial interest to the payments of principal and interest on this loan.

14.     Have there been any investors (as defined by your industry) who have participated in any mortgage-backed security, collateral mortgage obligation or other mortgage security instrument that this mortgage account has ever been a part of from the inception of this account to the present date? If yes, identify the name and address of each and every individual, entity, organization and/or trust.

15.     Please identify for me the parties and their addresses to all sales contracts, servicing agreements, assignments, alonges, transfers, indemnification agreements, recourse agreements and any agreement related to this account from the inception of this account to the present date.

16.     Please provide me with copies of all sales contracts, servicing agreements, assignments, alonges, transfers, indemnification agreements, recourse agreements and any agreement related to this account from the inception of this account to the present date.

17.     How much was paid for this individual mortgage account by you?

18.     If part of a mortgage pool, what was the principal balance used by you to determine payment for this individual mortgage loan?

19.     If part of a mortgage pool, what was the percentage paid by you of the principal balance above used to determine purchase of this individual mortgage loan?

20.     Who did you issue a check or payment to for this mortgage loan?

21.     Please provide me with copies of the front and back of the canceled check.

22.     Did any investor approve of the foreclosure of my property? Yes or No?

23.     Has HUD assigned or transferred foreclosure rights to you as required by *12 USC 3754*?

24.     Please identify all persons who approved the foreclosure of my client's property.

Please provide me with the documents I have requested and a detailed answer to each of my questions within the lawful time frame. Upon receipt of the documents and answers, an exam and audit will be conducted that may lead to a further document request and answers to questions under an additional RESPA Qualified Written Request letter. Copies of this Qualified Written Request, Validation of Debt, TILA and request for accounting and legal records, Dispute of Debt letter are being sent to FTC, HUD, Thrift Supervision, and all relevant state and federal

Select Portfolio Servicing, Inc.
June 16, 2010
Page 20

regulators; and other consumer advocates, and my client's congressman.

It is my hope that you answer this RESPA request in accordance with law and the questions, documents and validation of debt to the penny and correct abuses or schemes uncovered and documented.

## Default Provisions under this QUALIFIED WRITTEN REQUEST

Select Portfolio Servicing, Inc or any agents, transfers, or assigns omissions of or agreement by silence of this RESPA REQUEST via certified rebuttal of any and all points herein this RESPA REQUEST, agrees and consents to including but not limited by any violations of law and/or immediate terminate/remove any and all right, title and interest (liens) in Doug Walker or any property or collateral connected to Doug Walker or Loan Nos. 0010804698 and/or 700516663 and waives any and all immunities or defenses in claims and or violations agreed to in this RESPA REQUEST including but not limited by any and all:

1.     Doug Walker's right, by breach of fiduciary responsibility and fraud and misrepresentation revocation and rescinding any and all power of attorney or appointment Select Portfolio Servicing, Inc may have or may have had in connection with Loan Nos. 0010804698 and/or 700516663 and any property and/or real estate connected with account #

2.     Doug Walker's right to have any certificated or uncertificated security re-registered in Doug Walker's, and only Doug Walker's name.

3.     Doug Walker's right of collection via Select Portfolio Servicing, Inc's liability insurance and/or bond.

4.     Doug Walker's entitlement in filing and executing any instruments, as power of attorney for and by Select Portfolio Servicing, Inc, including but not limited by a new certificated security or any security agreement perfected by filing a UCC Financing Statement with the Secretary of State in the State where Select Portfolio Servicing, Inc is located.

5.     Doug Walker's right to damages because of Select Portfolio Servicing, Inc's wrongful registration, breach of intermediary responsibility with regard to Doug Walker's asset by Select Portfolio Servicing, Inc issuing to Doug Walker a certified check for the original value of Doug Walker's monetary instrument.

6.     Doug Walker's right to have Loan Nos. 0010804698 and/or 700516663 completely set off because Select Portfolio Servicing, Inc's wrongful registration, breach of intermediary responsibility with regard to Doug Walker's monetary instrument/asset by Select Portfolio Servicing, Inc sending confirmation of set off of wrongful liability of Doug Walker and issuing a certified check for the difference between the original value of Doug Walker's

**000340**

Select Portfolio Servicing, Inc.
June 16, 2010
Page 21

monetary instrument/asset and what Doug Walker mistakenly sent to Select Portfolio Servicing, Inc as a payment for such wrongful liability.

Select Portfolio Servicing, Inc or any transfers, agents or assigns offering a rebuttal of this RESPA REQUEST must do so in the manner of this RESPA REQUEST in accordance of and in compliance with current statutes and/or laws by signing in the capacity of a fully liable man or woman being responsible and liable under the penalty of perjury while offering direct testimony with the official capacity as appointed agent for Select Portfolio Servicing, Inc in accordance with Select Portfolio Servicing, Inc's Articles of Incorporation, By Laws: duly signed by a current and duly sworn under oath director(s) of such corporation! Holding Corporation! National Association. Any direct rebuttal with certified true and complete accompanying proof must be posted with the Notary address herein within sixty days. When no verified rebuttal of this RESPA REQUEST is made in a timely manner, a "Certificate of Non-Response" serves as Select Portfolio Servicing, Inc's judgment and consent/ agreement by means of silence with any and all claims and/or violations herein-stated in the default provisions or any other law.

Power of Attorney: When Select Portfolio Servicing, Inc fails by not rebutting to any part of this RESPA REQUEST, Select Portfolio Servicing, Inc agrees with the granting unto Doug Walker's Unlimited Power of Attorney and any and all full authorization in signing and endorsing Select Portfolio Servicing, Inc's name upon any instruments in satisfaction of the obligations of this RESPA REQUEST/Agreement or any agreement arising from this agreement. Pre-emption of or to any Bankruptcy proceeding shall not discharge any obligations of this agreement. Consent and agreement with this Power of Attorney by Select Portfolio Servicing, Inc waives any and all claims of Doug Walker, and/or defenses and remains in effect until the satisfaction of all obligations by Select Portfolio Servicing, Inc have been satisfied.

Sincerely yours,

RICHARD LLEWELYN JONES, P.S.



us for 2nd Mortgage

20121029078 Page 1 of 1

29121029078

Electronically Recorded

Pierce County, WA
10/29/2012          4 03 FM

Pages: 1          Fee $14.00

WHEN RECORDED MAIL TO
DOUGLAS L WALKER
22106 56th Ave W
Mountlake Terrace, WA 98013

**SUBSTITUTION OF TRUSTEE**

RECORDING REQUESTED BY
ReconTrust Company, N.A.
2375 W. Chandler Blvd
Mail Stop: AZ1-804-02-11
Chandler, AZ 85224

DOCID_00014728RV0037005

WHEREAS, DOUGLAS L. WALKER is the trustor, ReconTrust Company, N.A. is the current trustee and Bank of America, N.A. is the current beneficiary ("Beneficiary") under that certain Deed of Trust dated 12/16/2006 and recorded on 12/18/2006 in Book , Page . Document # 200612181258 of Official Records of Pierce County, State of Washington.

WHEREAS, the undersigned Beneficiary desires to substitute a new trustee under the Deed of Trust in the place and stead of the current trustee.

NOW, THEREFORE, the undersigned hereby substitutes ReconTrust Company, N.A. as Trustee under the Deed of Trust.

Dated: 10/29/2011

Bank of America, N.A.

Jennifer Baker
Assistant Vice President

State of AZ , County of Maricopa
On 10/29/2012 , before me, Corey Kowalsky , Notary Public, personally appeared Jennifer Baker , Assistant Vice President of Bank of America, N.A., whose identity was proven to me on the basis of satisfactory evidence to be the person who he or she claims to be and whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person, or entity upon behalf of which the person acted, executed the instrument.
IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year last written.

Corey Kowalsky
Phone # (805) 510-2081
Notary Public for said State and County

COREY KOWALSKY
Notary Public - Arizona
My Commission Expires
December 8, 2018

ELECTRONICALLY RECORDED
200905280731                         2
05/28/2009 01:24 PM              15.00
SNOHOMISH COUNTY, WASHINGTON

When recorded return to:

Quality Loan Service Corp. of Washington
2141 5th Avenue
San Diego, CA 92101

_Space above this line for recorders use only_

TS # WA-09-284564-SH         Order # 090365132-WA-GSI          Loan # 0010804698
APN: 005236-000-017-00
MERS MIN No.:                                                                      Investor No. 1703778085
100251207005166637

## Appointment of Successor Trustee

NOTICE IS HEREBY GIVEN that QUALITY LOAN SERVICE CORPORATION OF WASHINGTON, a corporation formed under RCW 61.24, whose address is 2141 5th Avenue  San Diego, CA 92101 is hereby appointed Successor Trustee under that certain Deed of Trust dated 2/28/2007, executed by DOUG L WALKER , A SINGLE MAN as Grantor, in which TICOR TITLE COMPANY was named as Trustee, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR CREDIT SUISSE FINANCIAL CORPORATION as Beneficiary, and recorded on 3/6/2007, under Auditor's File No. 200703060946 as book xxx and page xxx , Official Records.  Said real property is situated in SNOHOMISH County, Washington and is more particularly described in said Deed Of Trust.

IN WITNESS WHEREOF, the Beneficiary, Select Portfolio Servicing, Inc., has hereunto set his hand; if the undersigned is a corporation, it has caused its corporate name to be signed and affixed hereunto by its duly authorized officers.

000343

Appointment of Successor Trustee
TS # WA-09-284564-SH
Page 2

Dated: 5/22/2009

Select Portfolio Servicing, Inc.

By: _____

**Becky North**          Duly Appointed Officer

State of    Minnesota
County of    Dakota

5/26/09

On _____, personally appeared **Becky North** _____ of Select Portfolio Servicing, Inc., the corporation that executed this document. He/She acknowledged that executing this document was his/her free and voluntary act and that he/she is authorized to execute this document.

Witness my hand and official seal hereto affixed this day and year.

_____
Christina Anne Saxerer    , Notary Public
Notary Public in and for the State of    Minnesota
My Commission expires:    1-31-14

Christina Anne Saxerer
NOTARY PUBLIC - MINNESOTA
MY COMMISSION
EXPIRES JAN. 31, 2014

000344

When Recorded Return To.

BILL KOCH
SELECT PORTFOLIO SERVICING, INC
3815 SW TEMPLE
SALT LAKE CITY, UT 84115



200907160358
07/16/2009 11:51am $14.00
SNOHOMISH COUNTY, WASHINGTON

## CORPORATE ASSIGNMENT OF DEED OF TRUST

Snohomish, Washington,  SELLER'S SERVICING #: 0010804598   "WALKER"
INVESTOR #: F22
MERS #: 100251270031886XX

Date of Assignment. July 2nd, 2009
Assignor. MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR
CREDIT SUISSE FINANCIAL CORPORATION at 3815 SW TEMPLE, SALT LAKE CITY, UT
84115
Assignee. SELECT PORTFOLIO SERVICING, INC. at 3815 SW TEMPLE, SALT LAKE CITY, UT
84115

Executed By DOUG L WALKER, A SINGLE MAN  To  MERS AS NOMINEE FOR CREDIT
SUISSE FINANCIAL CORPORATION
Date of Deed of Trust  02/28/2007 Recorded  03/08/2007  in Book/Reel/Liber N/A Page/Folio.
N/A as Instrument No. 200708060048 to Snohomish County , State of Washington

Property Address. 22396 55TH AVE W, MOUNTLAKE TERRACE, WA 98043

KNOW ALL MEN BY THESE PRESENTS that in consideration of the sum of TEN and
NO/100ths DOLLARS and other good and valuable consideration, paid to the above named
Assignor, the receipt and sufficiency of which is hereby acknowledged, said Assignor hereby
assigns unto the above-named Assignee, the said Deed of Trust together with the Note or other
evidence of indebtedness (the "Note"), said Note having an original principal sum of $280,800.00
with interest, secured thereby, together with all moneys now owing or that may hereafter become
due or owing in respect thereof, and the full benefit of all the powers and of all the covenants and
provisos therein contained, and the said Assignor hereby grants and conveys unto the said
Assignee, the Assignor's beneficial interest under the Deed of Trust

TO HAVE AND TO HOLD the said Deed of Trust and Note, and also the said property unto the
said Assignee forever, subject to the terms contained in said Deed of Trust and Note. IN
WITNESS WHEREOF, the assignor has executed these presents the day and year first above
written

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR CREDIT
SUISSE FINANCIAL CORPORATION
On  JUL  0 6  2009

By:
Bill Koch, Assistant Secretary

STATE OF Utah
COUNTY OF Salt Lake
On  JUL  0 6  2009          , before me, SHIRLEY TUITUPOU, a Notary Public in and for Salt Lake in
the State of Utah, personally appeared Bill Koch, Assistant Secretary, signing on behalf of
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR CREDIT
SUISSE FINANCIAL CORPORATION, personally known to me (or proved to me on the basis of
satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon
behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

SHIRLEY TUITUPOU
Notary Expires: 11/12/2012 #576792

SHIRLEY TUITUPOU
Notary Public State of Utah
My Commission Expires on:
November 12, 2012
Comm. Number: 576792

(This area for notarial seal)

*318*318AMRC*07/02/2009 01 33 34 PM* AMRCSJUAMRC000000000000000361232* WASPOHO/ 0340804598
WASTATE_TRUST_ASSIGN_AESN *MEMMDAMRC*

000345



200907890703
07/09/2009 3:06pm $15.00     2     PGS
SNOHOMISH COUNTY, WASHINGTON

When recorded, mail to:

**REGIONAL TRUSTEE SERVICES CORPORATION**
616 1st Avenue, Suite 500
Seattle, WA 98104

Trustee's Sale No: 01-FMS-76720

                                                **FIDELITY NATIONAL TITLE**
\*FMS7672Q0010000000\* CA0404135     2/16

**APPOINTMENT OF SUCCESSOR TRUSTEE**

**KNOW ALL MEN BY THESE PRESENTS** that DOUGLAS WALKER, AN UNMARRIED MAN is the
Grantor, and TICOR TITLE COMPANY is the Trustee, and MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC. AS NOMINEE FOR ITS SUCCESSORS AND ASSIGNS is the
Beneficiary under that certain trust deed dated 4/10/2007, under Auditor s/Recorder s No.
200704120622, records of SNOHOMISH County, WASHINGTON.
                                       the undersigned
**NOW, THEREFORE**, in view of the premises, MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC. AS NOMINEE FOR ITS SUCCESSORS AND ASSIGNS, who is the present
beneficiary, hereby appoints REGIONAL TRUSTEE SERVICES CORPORATION, whose address is
616 1st Avenue, Suite 500, Seattle, WA 98104, as Successor Trustee under said trust deed, to have
all the powers of said original trustee, effective as of the date of execution of this document.

**IN WITNESS WHEREOF**, the undersigned beneficiary has hereunto set his hand; if the undersigned
is a corporation, it has caused its corporate name to be signed and affixed hereunto by its duly
authorized officers.

1

WA-Sub

000348

Trustee's Sale No: 01-FMS-76720

DATED: 7-4-09

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC. AS NOMINEE FOR ITS SUCCESSORS
AND ASSIGNS

By_____

**Noriko Colston   Vice President**

(Name   Title)

STATE OF ____**California**____ )
                                              ) ss.
COUNTY OF ____**Sacramento**____ )

On ___**JUN 0 9 2009**___ before me, **Jane Quick**
personally appeared ____**Noriko Colston**____, ~~personally known to me (or proved~~
to me on the basis of satisfactory evidence) to be the person(s) whose name is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s), or the
entity upon behalf of which the person(s) acted executed the instrument.

WITNESS my hand and official seal.

_____ **Jane Quick**
NOTARY PUBLIC in and for the State of
**California**, residing at: **Sacramento**
My commission expires:_____

JANE QUICK
COMM. #1793292
NOTARY PUBLIC-CALIFORNIA
SACRAMENTO CO.
EXP. MAR 8, 2012

2

WA-Sub

000347

ELECTRONICALLY RECORDED
200907210605                3
07/21/2009 01:31 PM        44.00
SNOHOMISH COUNTY, WASHINGTON

AND WHEN RECORDED MAIL TO:
Quality Loan Service Corp. of Washington
2141 5th Avenue
San Diego, CA 92101

SPACE ABOVE THIS LINE FOR RECORDER'S USE

Loan No: 0010804698          APN: 005236-000-017-00          TS No: WA-09-284564-SH

## NOTICE OF TRUSTEE'S SALE
## PURSUANT TO THE REVISED CODE OF WASHINGTON
## CHAPTER 61.24 ET. SEQ.

I.       NOTICE IS HEREBY GIVEN that Quality Loan Service Corp. of Washington, the undersigned Trustee, will on 10/23/2009, at 10:00:00 AM At the main entrance to the Superior Courthouse 3000 Rockefeller Avenue, Everett, WA  sell at public auction to the highest and best bidder, payable, in the form of cash, or cashier's check or certified checks from federally or State chartered banks, at the time of sale the following described real property, situated in the County of SNOHOMISH, State of Washington, to-wit:

THE LAND REFERRED TO HEREIN IS DESCRIBED AS FOLLOWS TRACT 17, MOUNTLAKE TERRACE DIVISION NO 30, ACCORDING TO THE PLAT THEREOF RECORDED IN VOLUME 13 OF PLATS, PAGE (S) 86, IN SNOHOMISH COUNTY, WASHINGTON

Commonly known as:
22306 56TH AVE W
MOUNTLAKE TERRACE, WA 98043-3852

which is subject to that certain Deed of Trust dated 2/28/2007, recorded 3/6/2007, under Auditor's File No. 200703060946, in Book xxx, Page xxxrecords of SNOHOMISH County, Washington, from DOUG L WALKER , A SINGLE MAN, as Grantor(s), to TICOR TITLE COMPANY, as Trustee, to secure an obligation in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR CREDIT SUISSE FINANCIAL CORPORATION, as Beneficiary, the beneficial interest in which was assigned by MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR CREDIT SUISSE FINANCIAL CORPORATION to Select Portfolio Servicing, Inc..

II.      No action commenced by the Beneficiary of the Deed of Trust is now pending to seek satisfaction of the obligation in any Court by reason of the Borrower's or Grantor's default on the obligation secured by the Deed of Trust/Mortgage.

III.     The default(s) for which this foreclosure is made is/are as follows:

Failure to pay when due the following amounts which are now in arrears: $14,699.45



IV.     The sum owing on the obligation secured by the Deed of Trust is:  The principal sum of $280,800.00,together with interest as provided in the Note from the 2/1/2009,and such other costs and fees as are provided by statute.

V.      The above-described real property will be sold to satisfy the expense of sale and the obligation secured by the Deed of Trust as provided by statute.  Said sale will be made without warranty, expressed or implied, regarding title, possession or encumbrances on 10/23/2009. The defaults referred to in Paragraph III must be cured by 10/12/2009 (11 days before the sale date) to cause a discontinuance of the sale.  The sale will be discontinued and terminated if at any time before 10/12/2009 (11 days before the sale) the default as set forth in Paragraph III is cured and the Trustee's fees and costs are paid. Payment must be in cash or with cashier's or certified checks from a State or federally chartered bank.  The sale may be terminated any time after the 10/12/2009 (11 days before the sale date) and before the sale, by the Borrower or Grantor or the holder of any recorded junior lien or encumbrance by paying the principal and interest, plus costs, fees and advances, if any, made pursuant to the terms of the obligation and/or Deed of Trust.

VI.     A written Notice of Default was transmitted by the Beneficiary or Trustee to the Borrower and Grantor at the following address(es):

**NAME**                                      **ADDRESS**
**DOUG L WALKER , A SINGLE MAN**               22306  56TH AVE W
                                               MOUNTLAKE TERRACE, WA 98043-3852

by both first class and certified mail on 5/22/2009, proof of which is in the possession of the Trustee; and the Borrower and Grantor were personally served, if applicable, with said written Notice of Default or the written Notice of Default was posted in a conspicuous place on the real property described in Paragraph I above, and the Trustee has possession of proof of such service or posting.

VII.    The Trustee whose name and address are set forth below will provide in writing to anyone requesting it, a statement of all costs and fees due at any time prior to the sale.

VIII.   The effect of the sale will be to deprive the Grantor and all those who hold by, through or under the Grantor of all their interest in the above-described property.

IX.     Anyone having any objections to this sale on any grounds whatsoever will be afforded an opportunity to be heard as to those objections if they bring a lawsuit to restrain the sale pursuant to RCW 61.24.130.  Failure to bring such a lawsuit may result in a waiver of any proper grounds for invalidating the Trustee's sale.

000349

Loan No: 0010804698                    T.S. No.: WA-09-284564-SH

NOTICE TO OCCUPANTS OR TENANTS – The purchaser at the Trustee's Sale is entitled to possession of the property on the 20th day following the sale, as against the Grantor under the deed of trust (the owner) and anyone having an interest junior to the deed of trust, including occupants and tenants. After the 20th day following the sale the purchaser has the right to evict occupants and tenants by summary proceedings under the Unlawful Detainer Act, Chapter 59.12 RCW.

**If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee, and the successful bidder shall have no further recourse.**

**If the sale is set aside for any reason, the Purchaser at the sale shall be entitled only to a return of the deposit paid. The Purchaser shall have no further recourse against the Mortgagor, the Mortgagee, or the Mortgagee's Attorney.**

THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

DATED: 7/17/2009

Quality Loan Service Corp. of Washington, as Trustee
By: Brooke Frank, Assistant Secretary

For Non-Sale, Payoff and Reinstatement Info          For Service of Process on Trustee:
Quality Loan Service Corp of Washington              Quality Loan Service Corp., of Washington
2141 Fifth Avenue                                    600 Winslow Way East, Suite 234
San Diego, CA 92101                                  Bainbridge Island, WA 98110
(619) 645-7711                                        (866) 645-7711
Sale Line: 714-573-1965 or Login to:
www.prioritypasting.com

State of California)
County of San Diego)

On 7/17/2009 before me, A. Adams, a notary public, personally appeared Brooke Frank, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)
         A. Adams

A. ADAMS
Commission # 1820529
Notary Public - California
San Diego County
My Comm. Expires Oct 28, 2012

0.00350



200907098704        4    PGS
07/09/2009  3:06pm  $45.00
SNOHOMISH COUNTY, WASHINGTON

When recorded, mail to:

REGIONAL TRUSTEE SERVICES CORPORATION
616 1st Avenue, Suite 500
Seattle, WA 98104

Trustee's Sale No: 01-FMS-78720

**FIDELITY NATIONAL TITLE**
090404135      4146

### NOTICE OF TRUSTEE'S SALE
*Pursuant to R.C.W. Chapter 61.24, et seq. and 62A.9A-604(a)(2) et seq.*

I

NOTICE IS HEREBY GIVEN, that the undersigned, Trustee, REGIONAL TRUSTEE SERVICES CORPORATION, will on October 9, 2009, at the hour of 10:00 AM, at ON THE STEPS IN FRONT OF THE NORTH ENTRANCE TO THE SNOHOMISH COUNTY COURTHOUSE, 3000 ROCKEFELLER AVENUE, EVERETT, WA, sell at public auction to the highest and best bidder, payable at the time of sale, the following described real and personal property (hereafter referred to collectively as the "Property"), situated in the County of SNOHOMISH, State of Washington:

LOT(S) 16, BLOCK 4, MOUNTLAKE TERRACE DIVISION NUMBER 10, ACCORDING TO THE PLAT THEREOF RECORDED IN VOLUME 13 OF PLATS, PAGE(S) 52, IN SNOHOMISH COUNTY, WASHINGTON, EXCEPT THE NORTHEASTERLY 70 FEET THEREOF.

Tax Parcel No: 005214-004-016-01, commonly known as 23207 LAPIERRE DRIVE , MOUNTLAKE TERRACE, WA.

The Property is subject to that certain Deed of Trust dated 4/10/2007, recorded 4/12/2007 , under Auditor's/Recorder's No. 200704120622, records of SNOHOMISH County, Washington, from DOUGLAS WALKER, AN UNMARRIED MAN, as Grantor, to TICOR TITLE COMPANY, as Trustee, in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR ITS SUCCESSORS AND ASSIGNS, as Beneficiary, the beneficial interest in which is presently held by MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR ITS SUCCESSORS AND ASSIGNS.

II

No action commenced by the Beneficiary of the Deed of Trust is now pending to seek satisfaction of the obligation in any court by reason of the Borrower's or Grantor's default on the obligation secured by the Deed of Trust.

III

The default(s) for which this foreclosure is/are made are as follows:

1

NOTS

000351

FAILURE TO PAY THE MONTHLY PAYMENT WHICH BECAME DUE ON 2/1/2009, AND ALL SUBSEQUENT MONTHLY PAYMENTS, PLUS LATE CHARGES AND OTHER COSTS AND FEES AS SET FORTH.

Failure to pay when due the following amounts which are now in arrears:

|  | Amount due as of July 10, 2009 |
|---|---|
| Delinquent Payments from February 01, 2009 6 payments at $ 1,049.96 each (02-01-09 through 07-10-09) | $    6,299.76 |
| Late Charges: | $      222.68 |
| Beneficiary Advances: | $      112.98 |
| Suspense Credit: | $        0.00 |
| TOTAL: | $    6,635.42 |

## IV

The sum owing on the obligation secured by the Deed of Trust is: Principal $262,694.63, together with interest as provided in the note or other instrument secured, and such other costs and fees as are due under the note or other instrument secured, and as are provided by statute.

## V

The above described real property will be sold to satisfy the expenses of sale and the obligation secured by the Deed of Trust as provided by statute. The sale will be made without warranty, express or implied regarding title, possession, or encumbrances on October 9, 2009. The default(s) referred to in paragraph III must be cured by September 28, 2009 (11 days before the sale date) to cause a discontinuance of the sale. The sale will be discontinued and terminated if at any time on or before September 28, 2009, (11 days before the sale date) the default(s) as set forth in paragraph III is/are cured and the Trustee's fees and costs are paid. The sale may be terminated at any time after September 28, 2009, (11 days before the sale date) and before the sale, by the Borrower, Grantor, any Guarantor or the holder of any recorded junior lien or encumbrance paying the entire principal and interest secured by the Deed of Trust, plus costs, fees, and advances, if any, made pursuant to the terms of the obligation and/or Deed of Trust, and curing all other defaults.

## VI

A written Notice of Default was transmitted by the Beneficiary or Trustee to the Borrower and Grantor at the following addresses:

DOUGLAS WALKER, 23207 LAPIERRE DRIVE, MOUNTLAKE TERRACE, WA, 98043
DOUGLAS WALKER, 22306 56TH AVENUE WEST, MOUNTLAKE TERRACE, WA, 98043
SPOUSE OF DOUGLAS WALKER, 22306 56TH AVENUE WEST, MOUNTLAKE TERRACE, WA, 98043
SPOUSE OF DOUGLAS WALKER, 23207 LAPIERRE DRIVE, MOUNTLAKE TERRACE, WA, 98043

2

NOTS

000352

by both first class and certified mail on 6/8/2009, proof of which is in the possession of the Trustee; and on 6/8/2009, the Borrower and Grantor were personally served with said written notice of default or the written Notice of Default was posted in a conspicuous place on the real property described in paragraph I above; and the Trustee has possession of proof of such service or posting.

VII

The Trustee's Sale will be held in accordance with Ch. 61.24 RCW and anyone wishing to bid at the sale will be required to have in his/her possession at the time the bidding commences, cash, cashier's check, or certified check in the amount of at least one dollar over the Beneficiary's opening bid. In addition, the successful bidder will be required to pay the full amount of his/her bid in cash, cashier's check, or certified check within one hour of the making of the bid. The Trustee whose name and address are set forth below will provide in writing to anyone requesting it, a statement of all costs and fees due at any time prior to the sale.

VIII

The effect of the sale will be to deprive the Grantor and all those who hold by, through or under the Grantor of all of their interest in the above described property.

IX

Anyone having any objection to the sale on any grounds whatsoever will be afforded an opportunity to be heard as to those objections if they bring a lawsuit to restrain the same pursuant to RCW 61.24.130. Failure to bring such a lawsuit may result in a waiver of any proper grounds for invalidating the Trustee's Sale.

X

## NOTICE TO OCCUPANTS OR TENANTS

The purchaser at the Trustee's Sale is entitled to possession of the property on the 20th day following the sale, as against the Grantor under the Deed of Trust (the owner) and anyone having an interest junior to the Deed of Trust, including occupants and tenants. After the 20th day following the sale the purchaser has the right to evict occupants and tenants by summary proceeding under the Unlawful Detainer Act, Chapter 59.12 RCW.

DATED:          July 8, 2009.
EffectiveDate:  July 9, 2009

REGIONAL TRUSTEE SERVICES CORPORATION
Trustee

By _____
MELISSA HJORTEN, ASSISTANT VICE PRESIDENT.
Address:      616 1st Avenue, Suite 500
              Seattle, WA 98104
Phone:        (206) 340-2550
Sale Information: www.rtrustee.com

3

NOTS

000353

STATE OF WASHINGTON )
                      ) ss.
COUNTY OF KING )

On July 8, 2009, before me, the undersigned, a Notary Public in and for the State of Washington, duly commissioned and sworn, personally MELISSA HJORTEN, to me known to be the ASSISTANT VICE PRESIDENT of REGIONAL TRUSTEE SERVICES CORPORATION, the corporation that executed the foregoing instrument, and acknowledged the said instrument to be the free and voluntary act and deed of said corporation, for the uses and purposes therein mentioned, and on oath stated that he/she is authorized to execute the said instrument and that the seal affixed is the corporate seal of said corporation.

WITNESS my hand and official seal hereto affixed the day and year first above written.

<u>Marilee Hakkinen</u>
NOTARY PUBLIC in and for the State of
Washington, residing at: *King County*
My commission expires: *11-6-11*

MARILEE HAKKINEN
STATE OF WASHINGTON
NOTARY PUBLIC
MY COMMISSION EXPIRES
11-06-11

4

NOTS

000354

**NOTICE OF DEFAULT**
*Pursuant to R.C.W. Chapter 61.24, et seq. and 62A.9A-604(a)(2) et seq.*

Trustee Sale No.: 01-FMS-76720

1. **DEFAULT**

YOU ARE HEREBY NOTIFIED that the Beneficiary has declared you, the borrower or grantor, in default on the obligations secured by a Deed of Trust recorded under Auditor's/Recorder's No. 200704120622, records of SNOHOMISH County, Washington; originally granted for the benefit of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR ITS SUCCESSORS AND ASSIGNS, as beneficiary. The beneficial interest under said Deed of Trust and the obligations secured thereby are presently held by or will be assigned to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR ITS SUCCESSORS AND ASSIGNS. Said Deed of Trust encumbers the following described real property in SNOHOMISH County:

LOT(S) 16, BLOCK 4, MOUNTLAKE TERRACE DIVISION NUMBER 10, ACCORDING TO THE PLAT THEREOF RECORDED IN VOLUME 13 OF PLATS, PAGE(S) 52, IN SNOHOMISH COUNTY, WASHINGTON, EXCEPT THE NORTHEASTERLY 70 FEET THEREOF.

The postal address of the Property is purported to be: 23207 LAPIERRE DRIVE, MOUNTLAKE TERRACE, WA 98043.

2. **STATEMENT OF DEFAULT AND ITEMIZED ACCOUNT OF AMOUNTS IN ARREARS:**

The beneficiary alleges that you are in default for failure to pay the following past due amounts, which are in arrears:

|  | Amount due as of June 8, 2009 |
|---|---|
| Delinquent Payments from February 01, 2009 5 payments at $ 1,049.96 each (02-01-09 through 06-08-09) | $ 5,249.80 |
| Late Charges: | $ 181.62 |
| Beneficiary Advances: | $ 112.98 |
| Suspense Credit: | $ 0.00 |
| TOTAL: | $ 5,544.40 |

If you have failed to pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust, the beneficiary may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums. These requirements for reinstatement should be confirmed by contacting the undersigned Trustee.

3. **OTHER CHARGES, COSTS AND FEES:**

WA NOD

000355

In addition to the amounts in arrears specified above, you, the borrower, grantor, or any guarantor, are or may be obligated to pay the following charges, costs and fees to reinstate the Deed of Trust if reinstatement is made before recording of the Notice of Trustee's Sale.

| | |
|---|---:|
| Trustee Fee | $ 405.00 |
| Airbill | $ 13.25 |
| Certified Mailing Cost | $ 25.00 |
| Posting Cost | $ 55.00 |
| TSG Guarantee Policy | $ 1,094.00 |
| **TOTAL CHARGES, COSTS AND FEES:** | $ 1,592.25 |

4.  **REINSTATEMENT:**      **IMPORTANT! PLEASE READ!**

THE ESTIMATED AMOUNT NECESSARY TO REINSTATE YOUR NOTE AND DEED OF TRUST BEFORE THE RECORDING OF THE NOTICE OF TRUSTEE'S SALE IS THE SUM OF PARAGRAPHS 2 AND 3 ABOVE IN THE AMOUNT OF $7,136.65, PLUS the amount of any monthly payments and late charges which may fall due after the date of this Notice of Default. However, because some of the items can only be estimated at this time and because the amount needed to reinstate your loan may include presently unknown expenditures required to preserve the property or to comply with state or local laws, it will be necessary for you to contact the undersigned prior to the time you tender funds so that you may be advised of the exact amount you will be required to pay.

Reinstatement monies may be tendered to (CERTIFIED OR CASHIER'S CHECK REQUIRED)

> REGIONAL TRUSTEE SERVICES CORPORATION
> 616 1st Avenue, Suite 500
> Seattle, WA 98104

If your default includes a default other than failure to pay monthly payments and/or late charges when due, then in order to reinstate the Note and Deed of Trust before the Notice of Trustee's Sale is recorded, you must cure such other default(s).

5.  **CONSEQUENCES OF DEFAULT:**

a.  Failure to cure the alleged default within thirty days of the mailing of this notice, or if personally served, within thirty days of the date of personal service thereof, may lead to recordation, transmittal and publication of a Notice of Trustee's Sale, and the Property described in paragraph 1 above may be sold at public auction at a date no less than 120 days in the future.

b.  The effect of the recordation, transmittal and publication of a Notice of Trustee's Sale will be to (i) increase the costs and fees and (ii) publicize the default and advertise the Property described herein for sale.

c.  If the default(s) described above is (are) not cured within thirty days of the mailing of this notice, the lender hereby gives notice that the entire principal balance owing on the note secured by the Deed of Trust described in paragraph 1 above, and all accrued and unpaid interest, as well as costs of foreclosure, shall immediately become due and payable. Notwithstanding acceleration, the grantor or the holder of any junior lien or encumbrance shall have the right after acceleration to reinstate by curing all defaults and paying all costs, fees and advances, if any, made pursuant to the terms of the obligation and/or deed of trust on or before 11 days prior to a Trustee's sale.

-2-

WA NOD

000356

d. The effect of a Trustee's Sale of the grantor's Property by the trustee will be to deprive the grantor of all of their interest in the Property described in paragraph 1 above.

6. RECOURSE TO COURTS:

The borrower, grantor and any guarantor has recourse to the courts pursuant to RCW 61.24.130 to contest the alleged default on any proper ground.

DATED: 6/8/2009

REGIONAL TRUSTEE SERVICES CORPORATION
Trustee and/or Agent for the Beneficiary

By_____
ANNA EGDORF, AUTHORIZED AGENT
616 1st Avenue, Suite 500, Seattle, WA 98104
Telephone: (206) 340-2550

WA NOD

000357

## SERVICEMEMBERS CIVIL RELIEF ACT NOTIFICATION

If you are on active duty in the armed services, or the dependent of a such a person, and you believe that you are entitled to protections afforded under the Soldiers' and Sailors' Relief Act, please contact the undersigned immediately. Failure to do so may result in loss of your rights, if any, under the Act. To facilitate follow-up to any response to this notice, please make any response in writing and describe the circumstances which you believe cause you to be entitled to protection under the Act.

If you have any questions about the applicability of the Soldiers' and Sailors' Relief Act, you should contact a lawyer immediately. The undersigned is not a lawyer and cannot provide you legal advice.

REGIONAL TRUSTEE SERVICES CORPORATION
616 1st Avenue, Suite 500
Seattle, WA 98104
(206) 340-2550

000358

**NOTICE REQUIRED BY THE
FAIR DEBT COLLECTION PRACTICE ACT
15 U.S.C. Section 1692**

TS#   01-FMS-76720

6/8/2009

ATTENTION TRUSTORS:

1.  You are hereby notified that REGIONAL TRUSTEE SERVICES CORPORATION is attempting to collect a debt.

2.  As of the date of this letter, you owe $272,309.41. Because of interest, late charges, and other charges that may vary from day to day, or may apply only upon payoff, the amount due on the day you pay may be greater. Hence if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection.

3.  The original creditor to whom the debt is/was owed is MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR ITS SUCCESSORS AND ASSIGNS. The current creditor is MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR ITS SUCCESSORS AND ASSIGNS.

4.  The debt will be assumed to be valid by REGIONAL TRUSTEE SERVICES CORPORATION unless WITHIN THIRTY DAYS AFTER THE RECEIPT OF THIS NOTICE, you dispute the validity of the debt or some portion thereof.

5.  If you notify REGIONAL TRUSTEE SERVICES CORPORATION within thirty days after the receipt of this Notice that the debt or any portion thereof is disputed, REGIONAL TRUSTEE SERVICES CORPORATION will provide a verification of the debt, and a copy of the verification will be mailed to you by REGIONAL TRUSTEE SERVICES CORPORATION. In attempting to collect the debt, any information obtained will be used for that purpose.

6.  If the current creditor is not the original creditor, and if you make a request to REGIONAL TRUSTEE SERVICES CORPORATION within thirty days after the receipt of this Notice, the name and address of the original creditor will be mailed to you by REGIONAL TRUSTEE SERVICES CORPORATION.

7.  Written and/or verbal requests may be made to and further information can be obtained from:

REGIONAL TRUSTEE SERVICES CORPORATION
616 1st Avenue, Suite 500
Seattle, WA 98104
(206) 340-2550

FDCA Notice

000353

## WA NOTICE TO PROPERTY OWNER
### RCW 61.24.030(7)(b)

You should take care to protect your interest in your home. This Notice of Default (your failure to pay) is the first step in a process that could result in you losing your home. You should carefully review your options. For example:

Can you pay and stop the foreclosure process?

Do you dispute the failure to pay?

Can you sell your property to preserve your equity?

Are you able to refinance this loan with a new loan from another lender with payments, terms, and fees that are more affordable?

Do you qualify for any government or private homeowner assistance programs?

Do you know if filing for bankruptcy is an option? What are the pros and cons of doing so?

Do not ignore this notice; because if you do nothing, you could lose your home at a foreclosure sale. (No foreclosure sale can be held any sooner than ninety days after a notice of sale is issued and a notice of sale cannot be issued until thirty days after this notice.) Also, if you do nothing to pay what you owe, be careful of people who claim they can help you. There are many individuals and businesses that watch for the notices of sale in order to unfairly profit as a result of the borrowers' distress.

You may feel you need help understanding what to do. There are a number of professional resources available, including home loan counselors and attorneys, who may assist you. Many legal services are lower cost or even free, depending on your ability to pay. If you desire legal help in understanding your options or handling this default, you may obtain a referral (at no charge) by contacting the county bar association in the county where your home is located. These legal referral services also provide information about lower cost or free legal services for those who qualify.

# EXHIBIT "B"

Return to.
SMI-Credit Suisse
Attn: MS-TD 127
9700 Biossonnet,
Houston, TX 77036



Tract 17, Mountlake Terrace Div#30, Vol 13/86.
in Snohomish County Legal Description attached on Page 13
Property Tax Parcel Number  00-5236-000-017-00

[Space Above This Line For Recording Data]

Loan No  700516663
Borrower  Doug L Walker

Data ID  123

## DEED OF TRUST

MIN  100251207005166637

**DEFINITIONS**

Ticor Title
6386373-E  (13)

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21  Certain rules regarding the usage of words used in this document are also provided in Section 16

(A) "Security Instrument" means this document, which is dated February 28, 2007, together with all Riders to this document

(B) "Borrower" is Doug L Walker , A SINGLE MAN    Borrower is the trustor under this Security Instrument

(C) "Lender" is CREDIT SUISSE FINANCIAL CORPORATION  Lender is A CORPORATION organized and existing under the laws of the State of DELAWARE   Lender's address is 302 CARNEGIE CENTER, PRINCETON, NEW JERSEY  08540

(D) "Trustee" is Ticor Title Company

(E) "MERS" is Mortgage Electronic Registration Systems, Inc  MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns  MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of PO Box 2026, Flint, MI 48501-2026, tel  (888) 679-MERS

**WASHINGTON** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3048    1/01    (Page 1 of 13 Pages)

P+0700516663+2231+01+13+WACNVADT

000085

this page intentionally left blank

000086

Loan No   700516663

Data ID   123

(F) "Note" means the promissory note signed by Borrower and dated February 28, 2007  The Note states that Borrower owes Lender TWO HUNDRED EIGHTY THOUSAND EIGHT HUNDRED and NO/100-----Dollars (U.S. $ 280,800.00) plus interest  Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than April 1, 2037.

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property "

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower  The following Riders are to be executed by Borrower [check box as applicable]

☐ Adjustable Rate Rider       ☐ Condominium Rider              ☐ Second Home Rider
☐ Balloon Rider               ☐ Planned Unit Development Rider
☐ 1-4 Family Rider            ☐ Biweekly Payment Rider
☐ Other(s) [specify]

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account  Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers

(M) "Escrow Items" means those items that are described in Section 3

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for (i) damage to, or destruction of, the Property, (ii) condemnation or other taking of all or any part of the Property, (iii) conveyance in lieu of condemnation, or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U S C  §2601 et seq ) and its implementing regulation, Regulation X (24 C F R  Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter  As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument

**WASHINGTON** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3048   1/01   (Page 2 of 13 Pages)

P+0700516663+2231+02+13+WACNVADT

Loan No   700516663

Data ID   123

### TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS  This Security Instrument secures to Lender  (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note, and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note.  For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County of SNOHOMISH

, more fully described  on Legal Description  attached on Page 13

which currently has the address of 22306 56th Ave W,

Mountlake Terrace, WASHINGTON          [Street]

[City]

98043-3852   ("Property Address")
[Zip Code]

**WASHINGTON** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3048    1/01    *(Page 3 of 13 Pages)*

P+0700516663+2231+03+13+WACNVADT

000083

Loan No   700516663

Data ID   123

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property, and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1.  Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash, (b) money order, (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity, or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.
2.  Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note, (b) principal due under the Note, (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**WASHINGTON** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3048    1/01    (Page 4 of 13 Pages)

P+0700516663+2231+04+13+WACNVADT

000089

Loan No  700516663

Data ID  123

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property, if any, (c) premiums for any and all insurance required by Lender under Section 5, and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10  These items are called "Escrow Items"  At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item  Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section  Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items  Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time  Any such waiver may only be in writing  In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require  Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9  If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount  Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA  Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank  Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA  Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge  Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds  Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds  Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA  If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments  If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any  To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement, (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded, or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument  If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien  Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan

**WASHINGTON** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3048    1/01    (Page 5 of 13 Pages)

P+0700516663+2231+05+13+WACNVADT

Loan No  700516663                                                    Data ID  123

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance  This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires  What Lender requires pursuant to the preceding sentences can change during the term of the Loan  The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably  Lender may require Borrower to pay, in connection with this Loan, either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense  Lender is under no obligation to purchase any particular type or amount of coverage  Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained  Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee  Lender shall have the right to hold the policies and renewal certificates  If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices  If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower  Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened  During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly  Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed  Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds  Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower.  If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower  Such insurance proceeds shall be applied in the order provided for in Section 2

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters  If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim  The 30-day period will begin when the notice is given  In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property  Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control

**WASHINGTON** - Single Family - Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**

Form 3048   1/01   (Page 6 of 13 Pages)

P+0700516663+2231+08+13+WACNVADT

000091

Loan No  700516663

Data ID  123

7.  Preservation, Maintenance and Protection of the Property; Inspections.  Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property  Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition  Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage  If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes  Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed  If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration

Lender or its agent may make reasonable entries upon and inspections of the Property  If it has reasonable cause, Lender may inspect the interior of the improvements on the Property  Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause

8.  Borrower's Loan Application.  Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan  Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence

9.  Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property  Lender's actions can include, but are not limited to (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding.  Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off  Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so  It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease  If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing

10.  Mortgage Insurance.  If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect  If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender  If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect  Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance  Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve  Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance  If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law  Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note

**WASHINGTON** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3048    1/01    (Page 7 of 13 Pages)

P+0700516663+2231+07+13+WACNVADT

Loan No  700516663

Data ID  123

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed  Borrower is not a party to the Mortgage Insurance

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses  These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements  These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums)

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses  If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance "  Further

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan.  Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law.  These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11.  Assignment of Miscellaneous Proceeds; Forfeiture.  All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened  During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly  Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed  Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds  If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower  Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction  (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value.  Any balance shall be paid to Borrower

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due  "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument  Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument  The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2

**WASHINGTON** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3048   1/01   (Page 8 of 13 Pages)

P+0700516663+2231+08+13+WACNVADT

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower  Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower  Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several  However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer")  (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument, (b) is not personally obligated to pay the sums secured by this Security Instrument, and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument  Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing  The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees  In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee  Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit, and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower  Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower  If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note)  Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing  Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means  Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise  The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender  Borrower shall promptly notify Lender of Borrower's change of address  If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure  There may be only one designated notice address under this Security Instrument at any one time  Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower  Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender  If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located  All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law  Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract  In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision

As used in this Security Instrument  (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender, (b) words in the singular shall mean and include the plural and vice versa, and (c) the word "may" gives sole discretion without any obligation to take any action

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument

**WASHINGTON** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3048   1/01   *(Page 9 of 13 Pages)*



P+0700516663+2231+09+13+WACNVADT

Loan No   700516663

Data ID   123

18.  Transfer of the Property or a Beneficial Interest in Borrower.  As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser

If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration  The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower

19.  Borrower's Right to Reinstate After Acceleration.  If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument, (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate, or (c) entry of a judgment enforcing this Security Instrument  Those conditions are that Borrower (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred, (b) cures any default of any other covenants or agreements, (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged  Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender  (a) cash, (b) money order, (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity, or (d) Electronic Funds Transfer  Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred  However, this right to reinstate shall not apply in the case of acceleration under Section 18

20.  Sale of Note; Change of Loan Servicer; Notice of Grievance.  The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower  A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law  There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note  If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing  If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action  If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph  The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20

21.  Hazardous Substances.  As used in this Section 21 (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials, (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection, (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law, and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup

**WASHINGTON** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3048   1/01   (Page 10 of 13 Pages)

P+0700516663+2231+10+13+WACNVADT

000095

Loan No 700516663

Data ID 123

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products)

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup

NON-UNIFORM COVENANTS Borrower and Lender further covenant and agree as follows
22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property at public auction at a date not less than 120 days in the future. The notice shall further inform Borrower of the right to reinstate after acceleration, the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale, and any other matters required to be included in the notice by Applicable Law. If the default is not cured on or before the date specified in the notice, Lender at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and/or any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee and Lender shall take such action regarding notice of sale and shall give such notices to Borrower and to other persons as Applicable Law may require. After the time required by Applicable Law and after publication of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of the Property for a period or periods permitted by Applicable Law by public announcement at the time and place fixed in the notice of sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it or to the clerk of the superior court of the county in which the sale took place.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it Such person or persons shall pay any recordation costs and the Trustee's fee for preparing the reconveyance

24. Substitute Trustee. In accordance with Applicable Law, Lender may from time to time appoint a successor trustee to any Trustee appointed hereunder who has ceased to act Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law

25. Use of Property. The Property is not used principally for agricultural purposes.

26. Attorneys' Fees. Lender shall be entitled to recover its reasonable attorneys' fees and costs in any action or proceeding to construe or enforce any term of this Security Instrument The term "attorneys' fees," whenever used in this Security Instrument, shall include without limitation attorneys' fees incurred by Lender in any bankruptcy proceeding or on appeal

**WASHINGTON** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3048 1/01 (Page 11 of 13 Pages)

P+0700516663+2231+11+13+WACNVADT

Loan No  700516663                                    Date ID   123

## ORAL AGREEMENTS OR ORAL COMMITMENTS TO LOAN MONEY, EXTEND CREDIT, OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT ARE NOT ENFORCEABLE UNDER WASHINGTON LAW.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it

                                                                          (Seal)
Doug L Walker —Borrower

——————————————— [Space Below This Line For Acknowledgment] ———————————————

State of WASHINGTON                        §
County of SNOHOMISH                        §

On this day personally appeared before me Doug L Walker
to me known to be the person described in and who executed the within and foregoing instrument, and acknowledged that he executed the same as his free and voluntary act and deed, for the uses and purposes therein mentioned

Given under my hand and official seal this  1st  day of  March  , 2007

[Seal]

SHANA J GINTER
NOTARY PUBLIC
STATE OF WASHINGTON
COMMISSION EXPIRES
DECEMBER 19, 2010

Notary Public in and for the State of WA
residing at  Bothell WA

Shana J Ginter
(Printed Name)

My commission expires  12/19/2010

WASHINGTON - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
                                      Form 3048   1/01   (Page 12 of 13 Pages)

P+0700516663+2231+12+13+WACNVADT

000097

File No 6386373-E

**Legal Description**
**Exhibit "A"**

The land referred to herein is described as follows

Tract 17, Mountlake Terrace Division No 30, according to the plat thereof recorded in Volume 13 of Plats, page(s) 88, in Snohomish County, Washington

# EXHIBIT "C"

# NOTICE OF DEFAULT

Pursuant to the Revised Code of Washington 61.24, et seq.

To:       DOUG L WALKER , A SINGLE MAN

T.S. No.   WA-09-284564-SH                          Loan #: 0010804698
MERS MIN No.: 100251207005166637                    Investor No. 1703778085

You should take care to protect your interest in your home. This notice of default (your failure to pay) is the first step in a process that could result in you losing your home. You should carefully review your options. For example:

Can you pay and stop the foreclosure process?
Do you dispute the failure to pay?
Can you sell your property to preserve your equity?
Are you able to refinance this loan with a new loan from another lender with payments, terms, and fees that are more affordable?
Do you qualify for any government or private homeowner assistance programs?
Do you know if filing for bankruptcy is an option? What are the pros and cons of doing so?

Do not ignore this notice; because if you do nothing, you could lose your home at a foreclosure sale. (No foreclosure sale can be held any sooner than ninety days after a notice of sale is issued and a notice of sale cannot be issued until thirty days after this notice.) Also, if you do nothing to pay what you owe, be careful of people who claim they can help you. There are many individuals and businesses that watch for the notices of sale in order to unfairly profit as a result of borrowers' distress.

You may feel you need help understanding what to do. There are a number of professional resources available, including home loan counselors and attorneys, who may assist you. Many legal services are lower-cost or even free, depending on your ability to pay. If you desire legal help in understanding your options or handling this default, you may obtain a referral (at no charge) by contacting the county bar association in the county where your home is located. These legal referral services also provide information about lower-cost or free legal services for those who qualify.

## 1.       DEFAULT:

You are hereby notified that the Beneficiary has declared you in default on the obligation secured by a Deed of Trust recorded on 3/6/2007 in Auditor's File No. 200703060946, book xxx and page xxx Records of SNOHOMISH County, WASHINGTON, which Deed of Trust encumbers the following described real property:

THE LAND REFERRED TO HEREIN IS DESCRIBED AS FOLLOWS  TRACT 17, MOUNTLAKE TERRACE DIVISION NO 30, ACCORDING TO THE PLAT THEREOF RECORDED IN VOLUME 13 OF PLATS, PAGE (S) 86, IN SNOHOMISH COUNTY, WASHINGTON

Tax Parcel No. 005236-000-017-00

Commonly known as:    22306 56TH AVE W, MOUNTLAKE TERRACE, WA 98043-3852

## 2.       STATEMENT OF DEFAULT AND ITEMIZED ACCOUNT OF AMOUNT IN ARREARS:

The present beneficiary under said Deed of Trust alleges that you or your successors in interest are in default for the following reasons:

Failure to make the 2/1/2009 payment of principal and/or interest and all subsequent payments, together with late charges, impounds, advances, taxes, delinquent payments on senior liens, or assessments, if any.  To wit:

000044

Payments:

| From | Through | # Payments | Monthly Payment | Total Payments |
|------|---------|-----------|-----------------|----------------|
| 2/1/2009 | 5/21/2009 | 4 | $2,003.59 | $8,014.36 |

Late Charges:

| From | Through | # Late Charges | | Total Late Charges |
|------|---------|----------------|--|--------------------|
| 2/1/2009 | 5/21/2009 | 4 | | $100.18 |

Beneficiary's Advances, Costs, And Expenses:

| | |
|--|--|
| Escrow Deficit | $81.33 |
| Total Advances: | $81.33 |

Promissory Note Information:

| | |
|--|--|
| Note Dated: | 2/28/2007 |
| Note Amount: | $280,800.00 |
| Late Charge Amount: | $100.18 |
| Note Maturity Date: | 4/1/2037 |
| Interest Paid To: | 1/1/2009 |
| Next Due Date: | 2/1/2009 |

3.   OTHER CHARGES, COSTS AND FEES:

In addition to the amounts in arrears specified above, you are or may be obligated to pay the following charges, costs and fees to cure the default under the Deed of Trust if cure is made before recording the Notice of Trustee's Sale:

| No. | Description | Amount |
|-----|-------------|--------|
| a. | Cost of title report for foreclosure: | $1,138.00 |
| b. | Service or posting Notice of Default: | $50.00 |
| c. | Postage: | $50.00 |
| d. | Attorney Fee: | $0.00 |
| e. | Trustee's Fee: | $405.00 |
| f. | Inspection Fee: | $0.00 |
| g. | Recording Fees: | $0.00 |
| | TOTAL CHARGES, COSTS AND FEES: | $1,643.00 |

4.   REINSTATEMENT: IMPORTANT! PLEASE READ!

UNTIL SUCH TIME AS A NOTICE OF TRUSTEE'S SALE IS RECORDED, THE ESTIMATED TOTAL AMOUNT NECESSARY TO REINSTATE YOUR NOTE AND DEED OF TRUST IS THE SUM OF PARAGRAPHS 2 AND 3 IN THE AMOUNT OF **$10,074.41**, PLUS ANY MONTHLY PAYMENTS, LATE CHARGES, OR BENEFICIARY COSTS WHICH HAVE BECOME DUE SINCE THE DATE OF THIS NOTICE OF DEFAULT. Any new defaults not involving payment of money that occur after the date of this notice must also be cured in order to effect reinstatement. **In addition, because some of the charges can only be estimated at this time, and because the amount necessary to reinstate may include presently unknown expenditures required to preserve the property or to comply with state or local law, it will be necessary for you to contact the trustee before the time you tender reinstatement so that you may be advised of the exact amount you will be required to pay.**

Payment must be made in the full amount by certified funds, and delivered or mailed as specified by the Beneficiary.   Personal checks will not be accepted.

Reinstatement monies may be tendered to:

Select Portfolio Servicing, Inc.
c/o Quality Loan Service Corp. of Washington
2141 5th Avenue
San Diego, CA 92101
619-645-7711

If your default included a default other than failure to pay payments when due, then in order to reinstate the Note and Deed of Trust before the Notice of Trustee's Sale is recorded, you must cure such other default(s).

5.   CONSEQUENCES OF DEFAULT:

a.      Failure to cure said alleged default within thirty days of the date of mailing of this notice, or if personally served, within thirty days of the date of personal service hereof, may lead to recordation, transmittal and publication of a Notice of Sale, and that the property described herein may be sold at public auction at a date not less than one hundred twenty days from the date of service of this notice.

b.      The effect of the recordation, transmittal and publication of a notice of sale will be to (i) increase the costs and fees and (ii) publicize the default and advertise the grantor's property for sale.

c.      Notwithstanding a future recordation of a Notice of Trustee's Sale, you may reinstate the deed of trust, and cure the default described above on or before the eleventh (11th) day before the Trustee's Sale of the property at public auction.

d.      The effect of the sale of the grantor's property by the trustee will be to deprive the grantor or his successor in interest and all those who hold by, through or under him of all their interest in the property described herein.

6.   ACCELERATION:

You are hereby notified that the beneficiary has elected to accelerate the loan described herein, and has declared the entire principal balance of $280,800.00, plus accrued costs, immediately due and payable. NOTWITHSTANDING SAID ACCELERATION, YOU HAVE THE RIGHT TO REINSTATE THE LOAN BY PAYING THE DELINQUENT PAYMENTS, LATE CHARGES, COSTS AND FEES ON OR BEFORE THE ELEVENTH (11TH) DAY BEFORE THE DATE OF THE TRUSTEE'S SALE WHICH MAY BE SET BY A NOTICE OF TRUSTEE'S SALE, ALL AS EXPLAINED IN PARAGRAPHS 4 AND 5 ABOVE.

7.   RECOURSE TO COURTS:

The grantor or any successor in interest has recourse to the courts pursuant to RCW 61.24.130 to contest the alleged default on any proper ground; and

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of the debt or any portion thereof, this office will assume this debt is valid. If you notify this office within 30 days from receiving this notice, this office will obtain verification of the debt and mail you a copy of the verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor. This notice is an attempt to collect a debt, and any information obtained will be used for that purpose.

THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

Date: 5/21/2009              Quality Loan Service Corp. Of Washington as Agent for Select Portfolio
                             Servicing, Inc., the Beneficiary

                             /s/ Susan Hurley

000046

**Susan Hurley, Trustee Sale Officer**

# EXHIBIT "D"

ELECTRONICALLY RECORDED
200905280731                        2
05/28/2009 01:24 PM            15.00
SNOHOMISH COUNTY, WASHINGTON

When recorded return to:

Quality Loan Service Corp. of Washington
2141 5th Avenue
San Diego, CA 92101

Space above this line for recorders use only

TS # WA-09-284564-SH        Order # 090365132-WA-GSI        Loan # 0010804698
APN: 005236-000-017-00
MERS MIN No.:                                                Investor No. 1703778085
100251207005166637

## Appointment of Successor Trustee

NOTICE IS HEREBY GIVEN that QUALITY LOAN SERVICE CORPORATION OF WASHINGTON, a corporation formed under RCW 61.24, whose address is 2141 5th Avenue   San Diego, CA 92101 is hereby appointed Successor Trustee under that certain Deed of Trust dated 2/28/2007, executed by DOUG L WALKER , A SINGLE MAN as Grantor, in which TICOR TITLE COMPANY was named as Trustee, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR CREDIT SUISSE FINANCIAL CORPORATION as Beneficiary, and recorded on 3/6/2007, under Auditor's File No. 200703060946 as book xxx and page xxx , Official Records. Said real property is situated in SNOHOMISH County, Washington and is more particularly described in said Deed Of Trust.

IN WITNESS WHEREOF, the Beneficiary, Select Portfolio Servicing, Inc., has hereunto set his hand; if the undersigned is a corporation, it has caused its corporate name to be signed and affixed hereunto by its duly authorized officers.



Appointment of Successor Trustee
TS # WA-09-284564-SH
Page 2

Dated: 5/22/2009

Select Portfolio Servicing, Inc.

By:

**Becky North**                    Duly Appointed Officer

State of   **Minnesota**
County of   **Dakota**

5/26/09

On _____, personally appeared _____ **Becky North** _____ of Select Portfolio Servicing, Inc., the corporation that executed this document. He/She acknowledged that executing this document was his/her free and voluntary act and that he/she is authorized to execute this document.

Witness my hand and official seal hereto affixed this day and year.

Christina Anne Sauerer      , Notary Public
Notary Public in and for the State of      **Minnesota**
My Commission expires:   1-31-14

Christina Anne Sauerer
NOTARY PUBLIC - MINNESOTA
MY COMMISSION
EXPIRES JAN. 31, 2014

# EXHIBIT "E"

When Recorded Return To:

BILL KOCH
SELECT PORTFOLIO SERVICING, INC
3815 SW TEMPLE
SALT LAKE CITY, UT 84115



20090716035X
07/16/2009 11:51am $14.00
SNOHOMISH COUNTY, WASHINGTON

**CORPORATE ASSIGNMENT OF DEED OF TRUST**
Snohomish, Washington   SELLER'S SERVICING #: 0010804638   "WALKER"
INVESTOR #: F22
MERS #: 100262123700818063X

Date of Assignment: July 2nd, 2009
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR CREDIT SUISSE FINANCIAL CORPORATION at 3815 SW TEMPLE, SALT LAKE CITY, UT 84115
Assignee: SELECT PORTFOLIO SERVICING, INC.  at 3815 SW TEMPLE, SALT LAKE CITY, UT 84115

Executed By: DOUG L WALKER, A SINGLE MAN  To  MERS AS NOMINEE FOR CREDIT SUISSE FINANCIAL CORPORATION
Date of Deed of Trust: 02/28/2007 Recorded: 03/06/2007 in Book/Reel/Liber: N/A Page/Folio: N/A as Instrument No.: 200703060948 in Snohomish County, State of Washington

Property Address: 22305 55TH AVE W, MOUNTLAKE TERRACE, WA 98043

KNOW ALL MEN BY THESE PRESENTS that in consideration of the sum of TEN and NO/100ths DOLLARS and other good and valuable consideration, paid to the above named Assignor, the receipt and sufficiency of which is hereby acknowledged, said Assignor hereby assigns unto the above-named Assignee, the said Deed of Trust together with the Note or other evidence of indebtedness (the "Note"), said Note having an original principal sum of $280,600.00 with interest, secured thereby, together with all moneys now owing or that may hereafter become due or owing in respect thereof, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's beneficial interest under the Deed of Trust

TO HAVE AND TO HOLD the said Deed of Trust and Note, and also the said property unto the said Assignee forever, subject to the terms contained in said Deed of Trust and Note.  IN WITNESS WHEREOF, the assignor has executed these presents the day and year first above written

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR CREDIT SUISSE FINANCIAL CORPORATION
On  JUL  0 6  2009

By: _____
Bill Koch, Assistant Secretary

STATE OF Utah
COUNTY OF Salt Lake
On  JUL  0 6  2009 , before me, SHIRLEY TUITUPOU, a Notary Public in and for Salt Lake in the State of Utah, personally appeared Bill Koch, Assistant Secretary, signing on behalf of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR CREDIT SUISSE FINANCIAL CORPORATION, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument

WITNESS my hand and official seal.

_____
SHIRLEY TUITUPOU
Notary Expires: 11/12/2012  #576792

SHIRLEY TUITUPOU
Notary Public State of Utah
My Commission Expires on
November 12, 2012
Comm. Number: 576792

(This area for notarial seal)

*D1D218AUMC*010723003 01 06 34 PM* AMRCA1UUMRC0000000000000034 1333* WASMOHO* 0010804638
WASTATE_TRUST_ASSIGN_ASSN *MOMWDMAMC*

# EXHIBIT "F"

ı

ELECTRONICALLY RECORDED
200907210605                        3
07/21/2009 01:31 PM              44.00
SNOHOMISH COUNTY, WASHINGTON

200907210605

AND WHEN RECORDED MAIL TO:
Quality Loan Service Corp. of Washington
2141 5th Avenue
San Diego, CA 92101

SPACE ABOVE THIS LINE FOR RECORDER'S USE

Loan No: 0010804698          APN: 00S236-000-017-00          TS No: WA-09-284564-SH

## NOTICE OF TRUSTEE'S SALE
## PURSUANT TO THE REVISED CODE OF WASHINGTON
## CHAPTER 61.24 ET. SEQ.

I.      NOTICE IS HEREBY GIVEN that Quality Loan Service Corp. of Washington, the undersigned Trustee, will on 10/23/2009, at 10:00:00 AM At the main entrance to the Superior Courthouse 3000 Rockefeller Avenue, Everett, WA sell at public auction to the highest and best bidder, payable, in the form of cash, or cashier's check or certified checks from federally or State chartered banks, at the time of sale the following described real property, situated in the County of SNOHOMISH, State of Washington, to-wit:

THE LAND REFERRED TO HEREIN IS DESCRIBED AS FOLLOWS  TRACT 17, MOUNTLAKE TERRACE DIVISION NO 30, ACCORDING TO THE PLAT THEREOF RECORDED IN VOLUME 13 OF PLATS, PAGE (S)  86, IN SNOHOMISH COUNTY, WASHINGTON

Commonly known as:
22306  56TH AVE W
MOUNTLAKE TERRACE, WA 98043-3852

which is subject to that certain Deed of Trust dated  2/28/2007, recorded 3/6/2007, under Auditor's File No. 200703060946, in Book xxx, Page xxxrecords of SNOHOMISH County, Washington, from DOUG L  WALKER , A SINGLE MAN, as Grantor(s), to TICOR TITLE COMPANY, as Trustee, to secure an obligation in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR CREDIT SUISSE FINANCIAL CORPORATION, as Beneficiary, the beneficial interest in which was assigned by MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR CREDIT SUISSE FINANCIAL CORPORATION to Select Portfolio Servicing, Inc..

II.      No action commenced by the Beneficiary of the Deed of Trust is now pending to seek satisfaction of the obligation in any Court by reason of the Borrower's or Grantor's default on the obligation secured by the Deed of Trust/Mortgage.

III.      The default(s) for which this foreclosure is made is/are as follows:

Failure to pay when due the following amounts which are now in arrears: $14,699.45





IV.     The sum owing on the obligation secured by the Deed of Trust is:  The principal sum of $280,800.00, together with interest as provided in the Note from the 2/1/2009, and such other costs and fees as are provided by statute.

V.      The above-described real property will be sold to satisfy the expense of sale and the obligation secured by the Deed of Trust as provided by statute.  Said sale will be made without warranty, expressed or implied, regarding title, possession or encumbrances on 10/23/2009.  The defaults referred to in Paragraph III must be cured by 10/12/2009 (11 days before the sale date) to cause a discontinuance of the sale.  The sale will be discontinued and terminated if at any time before  10/12/2009 (11 days before the sale) the default as set forth in Paragraph III is cured and the Trustee's fees and costs are paid.  Payment must be in cash or with cashier's or certified checks from a State or federally chartered bank.  The sale may be terminated any time after the  10/12/2009 (11 days before the sale date) and before the sale, by the Borrower or Grantor or the holder of any recorded junior lien or encumbrance by paying the principal and interest, plus costs, fees and advances, if any, made pursuant to the terms of the obligation and/or Deed of Trust.

VI.     A written Notice of Default was transmitted by the Beneficiary or Trustee to the Borrower and Grantor at the following address(es):

NAME                                              ADDRESS
DOUG L  WALKER , A SINGLE MAN        22306  56TH AVE W
                                                  MOUNTLAKE TERRACE, WA 98043-3852

by both first class and certified mail on 5/22/2009, proof of which is in the possession of the Trustee; and the Borrower and Grantor were personally served, if applicable, with said written Notice of Default or the written Notice of Default was posted in a conspicuous place on the real property described in Paragraph I above, and the Trustee has possession of proof of such service or posting.

VII.    The Trustee whose name and address are set forth below will provide in writing to anyone requesting it, a statement of all costs and fees due at any time prior to the sale.

VIII.   The effect of the sale will be to deprive the Grantor and all those who hold by, through or under the Grantor of all their interest in the above-described property.

IX.     Anyone having any objections to this sale on any grounds whatsoever will be afforded an opportunity to be heard as to those objections if they bring a lawsuit to restrain the sale pursuant to RCW 61.24.130.  Failure to bring such a lawsuit may result in a waiver of any proper grounds for invalidating the Trustee's sale.

Loan No: 0010804698                   T.S. No.: WA-09-284564-SH

NOTICE TO OCCUPANTS OR TENANTS -- The purchaser at the Trustee's Sale is entitled to possession of the property on the 20th day following the sale, as against the Grantor under the deed of trust (the owner) and anyone having an interest junior to the deed of trust, including occupants and tenants. After the 20th day following the sale the purchaser has the right to evict occupants and tenants by summary proceedings under the Unlawful Detainer Act, Chapter 59.12 RCW.

**If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee, and the successful bidder shall have no further recourse.**

**If the sale is set aside for any reason, the Purchaser at the sale shall be entitled only to a return of the deposit paid. The Purchaser shall have no further recourse against the Mortgagee, the Mortgagor, or the Mortgagee's Attorney.**

THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

DATED: 7/17/2009

_signature_

Quality Loan Service Corp. of Washington, as Trustee
By: Brooke Frank, Assistant Secretary

For Non-Sale, Payoff and Reinstatement info
Quality Loan Service Corp of Washington
2141 Fifth Avenue
San Diego, CA 92101
(619) 645-7711
**Sale Line: 714-573-1965 or Login to:**
**www.priorityposting.com**

For Service of Process on Trustee:
Quality Loan Service Corp., of Washington
600 Winslow Way East, Suite 234
Bainbridge Island, WA 98110
(866) 645-7711.

State of California)
County of San Diego)

On 7/17/2009 before me, A. Adams, a notary public, personally appeared Brooke Frank, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _signature_ (Seal)
A. Adams

A. ADAMS
Commission # 1820529
Notary Public - California
San Diego County
My Comm. Expires Oct 28, 2012

# EXHIBIT "G"

# NOTICE OF FORECLOSURE
**Pursuant to the Revised Code of Washington,**
**Chapter 61.24 RCW**

T.S. No. **WA-09-284564-SH**                                                    Loan No. **0010804698**
MERS MIN No.: 100251207005166637                                    Investor No. 1703778085

The attached Notice of Trustee's Sale is a consequence of default(s) in the obligation to **Select Portfolio Servicing, Inc.** the Beneficiary of your Deed of Trust and owner of the obligation secured thereby. Unless the default(s) is/are cured, your property will be sold at auction on **11/19/2010**.

To cure the default(s), you must bring the payments current, cure any other defaults, and pay accrued late charges and other costs, advances, and attorney's fees as set forth below by **11/8/2010**(*11 days before the sale date*). To date, these arrears and costs are as follows:

|  | Currently due to reinstate on: 8/13/2010 | Estimated amount that will be due to reinstate on: 11/8/2010 (11 days before the date set for sale.) |
|---|---|---|
| Total payments from 2/1/2009 | $38,068.21 | $44,078.98 |
| Total late charges | $1,803.23 | $2,103.77 |
| Total advances | $81.33 | $81.33 |
| Trustee's Fee: | $607.50 | $607.50 |
| Trustee's Expenses: (Estimated Itemization) |  |  |
| Title Report | $1,138.00 | $1,138.00 |
| Recording Fees | $100.00 | $100.00 |
| Service/Posting of Notices | $100.00 | $100.00 |
| Postage (actual and estimated) | $50.00 | $50.00 |
| Publication | $0.00 | $1,200.00 |
| **TOTALS** | $41,948.27 | $49,459.58 |

To pay off the entire obligation secured by your Deed of Trust as of the 8/13/2010 you must pay a total of $280,800.00 in principal, $33,984.49 in interest, plus other costs and advances estimated to date in the amount of $81.33. From and after the date of this notice you must submit a written request to the Trustee to obtain the total amount to pay off the entire obligation secured by your Deed of Trust as of the payoff date.

As to the defaults which do not involve payment of money to the beneficiary of your Deed of Trust, you must cure each such default. Listed below are the defaults which do not involve payment of money to the Beneficiary of your Deed of Trust. Opposite each such listed default is a brief description of the action necessary to cure the default and a description of the documentation necessary to show that the default has been cured.

The installments of principal and interest which became due on 2/1/2009, and all subsequent installments of principal and interest through the date of this Notice, plus amounts that are due for late charges, delinquent property taxes, insurance premiums, advances made on senior liens, taxes and/or insurance, trustee's fees, and any attorney fees and court costs arising from or associated with the beneficiaries efforts to protect and preserve its security, all of which must be paid as a condition of reinstatement, including all sums that shall accrue through reinstatement or pay-off. Nothing in this notice shall be construed as a waiver of any fees owing to the Beneficiary under the Deed of Trust pursuant to the terms of the loan documents.

You may reinstate your Deed of Trust and the obligation secured thereby at any time up to and including **11/8/2010** (*11 days before the sale date*), by paying the amount set forth or estimated above and by curing any other defaults described above. Of course, as time passes other payments may become due, and any further payments coming due and any additional late charges must be added to your reinstating payment. Any new defaults not involving payment of money that occur after the date of this notice must also be cured in order to effect reinstatement. In addition, because some of the charges can only be estimated at this time, and because the amount necessary to reinstate or to payoff the entire indebtedness may include presently unknown expenditures required to preserve the property or to comply with state or local law, it will be necessary for you to contact the Trustee before the time you tender reinstatement or the payoff amount so that you may be advised of the exact amount you will be required to pay. Tender of payment or performance must be made to:

000116

1

Select Portfolio Servicing, Inc.
c/o Quality Loan Service Corp. of Washington
2141 5th Avenue
San Diego, CA 92101
Phone: (866) 645-7711      Payoff / Reinstatement figures:  Ext. 400
**Sale Line: 714-573-1965 or Login to: www.priorityposting.com**

AFTER 11/8/2010, YOU MAY NOT REINSTATE YOUR DEED OF TRUST BY PAYING THE BACK
PAYMENTS AND COSTS AND FEES AND CURING THE OTHER DEFAULTS AS OUTLINED ABOVE. The
Trustee will respond to any written request for current payoff or reinstatement amounts within ten days of receipt of
your written request. In such a case, you will only be able to stop the sale by paying, before the sale, the total
principal balance $280,800.00 plus accrued interest, costs and advances, if any, made pursuant to the terms of the
documents and by curing the other defaults as outlined above.

You may contest this default by initiating court action in the Superior Court of the county in which the sale is to be
held. In such action, you may raise any legitimate defenses you have to this default. A copy of your Deed of Trust
and documents evidencing the security thereby are enclosed. You may wish to consult a lawyer. Legal action on
your part may prevent or restrain the sale, but only if you persuade the court of the merits of your defense. You may
contact the Department of Financial Institutions or the statewide civil legal aid hotline for possible assistance or
referrals.

The court may grant a restraining order or injunction to restrain a trustee's sale pursuant to RCW 61.24.130 upon five
days notice to the trustee of the time when, place where, and the judge before whom the application for the
restraining order or injunction is to be made. This notice shall include copies of all pleadings and related documents
to be given to the judge. Notice and other process may be served on the trustee at:

Quality Loan Service Corporation of Washington, Trustee
19735 10th Avenue NE
Suite N-200
Poulsbo, WA 98370
(866) 645-7711

If you do not reinstate the secured obligation and your Deed of Trust in the manner set forth above, or if you do not
succeed in restraining the sale by court action, your property will be sold to satisfy the obligations secured by your
Deed of Trust. The effect of such sale will be to deprive you and all those who hold by, through or under you of all
interest in the property.

Dated: 8/13/2010

QUALITY LOAN SERVICE CORPORATION OF WASHINGTON, Successor Trustee

_____/s/_____
By: Sarina Castaneda,
Its:

000118

# EXHIBIT "H"



**Home Retention Department**
**2141 Fifth Avenue**
**San Diego, CA 92101**
**Telephone (619) 645-7711 Ext. 1706**
**Facsimile (619) 568-3574**
**www.QualityLoan.com**

## THIS OFFICE IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT.

ANY INFORMATION WE OBTAIN WILL BE USED FOR THAT PURPOSE.
THE FOLLOWING LETTER IS A DISCUSSION OF ALTERNATIVES TO FORECLOSURE. IT IS
OUR UNDERSTANDING THAT YOU ARE NOT CURRENTLY IN BANKRUPTCY. IF YOU ARE
IN BANKRUPTCY, THEN PLEASE DISREGARD THIS LETTER IN ITS ENTIRETY AND HAVE
YOUR ATTORNEY CONTACT OUR OFFICE AS SOON AS POSSIBLE.

5/22/2009

22306 56TH AVE W
MOUNTLAKE TERRACE, WA 98043-3852

TS #:   **WA-09-284564-SH**          Loan #:   **0010804698**
Property Address:   22306 56TH AVE W, MOUNTLAKE TERRACE, WA 98043-3852

Dear :

As you are aware a Notice of Default has been recorded and foreclosure proceedings commenced against your property. We want you to be aware that there are options to foreclosure and that your lender wants to discuss a solution to your situation, **but we need you to call as soon as possible as time is running out.**

Below is a brief, general overview of some alternatives to foreclosure that may help you keep your home. While each situation is unique, and no guarantees are made, if you contact us we will explain each in more detail and discuss your circumstances in an attempt to find an alternative to the foreclosure.

Please call us at your first opportunity-we can't do anything until you open the lines of communication with you and we understand your current situation and know what you want to do-**PLEASE CALL US NOW!**

**000034**

this page intentionally left blank

# WE WANT YOU TO BE ABLE TO
# KEEP YOUR HOME!

You may be eligible for certain opportunities that will help you stay in your home. You may have had an unexpected expense or a circumstance beyond your control that has forced you to miss some mortgage payments. Select Portfolio Servicing, Inc. has asked us to discuss your situation with you to determine what can be done to bring your loan current.

These alternatives are voluntary and could include:

?   **Forbearance Plan:** An agreement to temporarily let you pay less than the full amount of your mortgage payment, or pay nothing at all, during the forbearance period. Your lender may consider forbearance when you can show that funds from a bonus, tax refund, or other source of future income will let you bring the mortgage current or qualify you for a repayment plan or loan modification at the end of the forbearance period.

?   **Reinstatement of Your Loan:** You would pay the total amount past due in one lump sum by a specified date.

?   **Repayment Plan:** An agreement that gives you a fixed amount of time to repay the amount you are behind by combining a portion of what is past due with your regular mortgage payment. At the end of the repayment period you will have gradually paid back the amount of your mortgage that was delinquent.

?   **Modification:** This is a written agreement between you and the lender that permanently changes the terms of the loan that in some instances may make your payments more affordable. Common loan modifications include:
    1. **Adding missed payments to your existing loan balance**
    2. **Making an adjustable-rate mortgage into a fixed-rate mortgage** ·
    3. **Extending the number of years you have to pay to a longer term**

## WHAT IF YOU CAN NO LONGER AFFORD TO
## KEEP YOUR HOME?

If you cannot or do not want to keep your home, your lender can work with you to avoid foreclosure. This can help reduce the negative effect on your credit reputation. There are several different ways this might occur depending on your financial circumstances:

000036

? **Deed in Lieu of Foreclosure:**  Under certain circumstances, you would voluntarily transfer ownership of your property to the lender in exchange for cancellation of your mortgage debt.  In most cases, you must attempt to sell your home for its fair market value for at least 90 days.  You would be given a specific period of time to relocate.  This option may not be available to you if there are other liens or judgments on your home.

? **Short Payoff:**  If you can sell your house but the sales proceeds are less than the total amount you owe on your mortgage, your lender may agree to a short payoff and write off the portion of your mortgage that exceeds the net proceeds from the sale.

? **Assumption of Your Loan:**  This option permits a qualified buyer to take over your mortgage debt and pay the payments, even if the mortgage is non-assumable.

### HOW DO YOU TAKE ADVANTAGE OF THESE ALTERNATIVES?

Simply complete the enclosed two-page financial form and return it via fax at *(619) 568-3574*, scan and email to homeretention@qualityloan.com or US Mail to:

**Quality Loan Service Corp.**
**Attn: Home Retention Dept.**
**2141 5th Avenue**
**San Diego, CA 92101**

**Please note that the foreclosure action will continue whether or not the form is completed and returned.  The foreclosure action will continue unless your lender determines that you are eligible for one of these alternatives and an agreement is signed.**

## You also have the right and should seek the advice of an attorney.

***Time is of the essence; this information is necessary for us to determine what option is best suited to avoid the need to foreclose.***

### *PLEASE CONTACT US NOW!!*

We hope that you will complete the enclosed forms so that we can work with you to evaluate alternatives to the pending foreclosure of your property.  If you have any questions please contact our Home Retention Department at (866) 645-7711 ext.1706   in order that we may assist you in keeping your home.

Sincerely,

**Quality Loan Service Corp.**

Hay alternativas para llevar acabo la ejecucion de hipoteca (foreclosure). Su prestador esta altamente interesado en discutir las opciones que le podra ayudar  evitar la ejecucion de su hipoteca (foreclosure), pero necesita llamar a nuestra oficina inmediatamente para poder ayudarle con cualquier pregunta que tenga al respecto. Por favor llame a Quality Loan Service Corporation, el numero de telefono es (866) 645-7711. Tenemos personas que hablan espanol y capacitadas para brindarle ayuda con su prestamo.



## Financial Worksheet

Borrower Name:_____     Loan Number:_____

Co-Borrower Name:_____     T.S. Number: _____

| Borrower Information | | |
|---|---|---|
| Home Telephone Number | | Best time to call: |
| Work Phone Number | | Best time to call: |
| Cellular Telephone Number | | Best time to call: |
| Social Security Number (SSN) | | |
| Co-Borrower Social Security # | | |
| Current Address(if different from Property in Foreclosure): | | |
| City: | | |
| State: | | |
| Zip Code: | | |

| Borrower(s) Hardship |
|---|
| Please provide a brief description of hardship (Reason for delinquency) : |

| Borrower(s) Intention | |
|---|---|
| What is your intention? | I I Keep Property  I I Sell Property  I I Indecisive |

| Borrower(s) Financial Information | | |
|---|---|---|
| Income | Borrower | Co-Borrower |
| Unemployment | | |
| Monthly Wages | | |
| Other Wages | | |
| Average Monthly Overtime | | |
| Commissions | | |
| Bonuses | | |
| Rental Income | | |
| Child Support | | |
| Alimony | | |
| SSI / Disability | | |
| Other-Specify: | | |

000039

| Borrower(s) Financial Information: INCOME | | |
|---|---|---|
| Income | Borrower | Co-Borrower |
| Unemployment | | |
| Borrower(s) Financial Information: INCOME (continued) | | |
| Monthly Wages | | |
| Other Wages | | |
| Average Monthly Overtime | | |
| Commissions | | |
| Bonuses | | |
| Rental Income | | |
| Child Support | | |
| Alimony | | |
| SSI / Disability | | |
| Other-Specify: | | |

| Borrower(s) Financial Information: EXPENSES | | |
|---|---|---|
| Expenses | Borrower | Co-Borrower |
| Mortgage Payment 1 | | |
| Mortgage Payment 2 | | |
| Other Mortgages | | |
| Liens | | |
| Rent | | |
| Property Taxes | | |
| HOA Dues | | |
| Child Care | | |
| Child Support Paid Monthly | | |
| Alimony Paid Monthly | | |
| Automobile Payment #1 | | |
| Automobile Payment #2 | | |
| Auto Maintenance | | |
| Home Repair / Maintenance | | |
| Furniture | | |
| Tuition / School Expenses | | |
| Student Loan | | |
| Personal Loan | | |
| Credit Union | | |
| Phone | | |
| Water | | |
| Sewer | | |
| Gas and Electric | | |
| Car Insurance / Gasoline | | |
| Medical / Life Insurance | | |
| Medical Expenses | | |
| Credit Card #1 | | |
| Credit Card #2 | | |
| Credit Card #3 | | |
| Department Store #1 | | |
| Department Store #2 | | |
| Food | | |

000040

| Clothing / Shoes / Uniform | | |
|---|---|---|
| Dry Cleaning | | |
| Entertainment | | |
| Vacations | | |
| Church / Charity Contributions | | |
| Gifts | | |
| Other (Specify): | | |

| Borrower(s) Financial Information: Assets | | |
|---|---|---|
| Assets | Borrower | Co-Borrower |
| Home | | |
| Savings | | |
| Checking | | |
| Stocks / Bonds | | |
| IRA | | |
| 401K | | |
| Boats or RVs | | |
| Other Mortgages | | |
| Other Real Estate (Non-Property) | | |
| | | |
| | | |
| Other-Specify: | | |

### Authorization and Acknowledgement

I / We certify that the financial information stated above is true, accurate, and correct to the best of my knowledge. I / We understand and acknowledge that any action taken by the lender of my / our mortgage loan on my / our behalf will be made in strict reliance on the financial information provided. I / We understand that submission of this information in no way obligates my Mortgage Servicer, Investor, or Insurer to provide assistance to me / us. My / Our signatures below grant the holder of my / our mortgage the authority to obtain a credit report to verify the financial information provided to be accurate.

Submitted this _____ day of _____ 20___ .


_____          _____
Borrower Name (Print)                              Borrower Signature


_____          _____
Co-Borrower Name (Print)                          Co-Borrower Signature

## Quality Loan Service Corp.

2141 5th Avenue • San Diego, CA 92101 • 619-645-7711

**Priority Posting & Publishing**
**17501 Irvine Blvd., Ste. #1**
**Tustin, CA 92780**

Re:  Notice of Default
     T.S. No.         WA-09-284564-SH
     Borrower(s):     DOUG L WALKER , A SINGLE MAN
     APN:             005236-000-017-00

Dear Sir or Madame:

Following you will find a copy of the Notice of Default to be posted. A legal description is included with the Notice of Default.

We ask that you post the Notice of Default on the property IMMEDIATELY, and provide the date of the actual posting as soon as completed. The property address is shown as:

22306 56TH AVE W
MOUNTLAKE TERRACE, WA 98043-3852

Please fax or email confirmation of this order upon receipt. Contact the undersigned immediately if you have any questions regarding this request, or if you are unable to complete the posting as requested.

Thank you for your prompt attention to this matter.

Sincerely,

Alice Kinyua

Enclosures

000042

this page intentionally left blank

**Quality Loan Service Corp.**
**Washington**
**2141 5th Avenue**
**San Diego, CA 92101**



7103 9628 5941 6773 8145



*T213*

WA-09-284564-SH
DOUG L. WALKER
22306 56TH AVE W
MOUNTLAKE TERRACE, WA 98043-3852

# Important Notice Regarding
## <u>Alternatives to Foreclosure</u>

### <u>THERE ARE ALTERNATIVES TO FORECLOSURE, BUT YOU MUST TAKE</u>
### <u>*IMMEDIATE* ACTION.</u>

Hay alternativas para llevar acabo la ejecucion de hipoteca (foreclosure). Su prestador esta altamente interesado en discutir las opciones que le podra ayudar evitar la ejecucion de su hipoteca (foreclosure), pero necesita llamar a nuestra oficina inmediatamente para poder ayudarle con cualquier pregunta que tenga al respecto. Por favor llame a Quality Loan Service Corporation, el numero de telefono es **877-886-9757**. Tenemos personas que hablan espanol y capacitadas para brindarle ayuda con su prestamo.

Your lender is very interested in discussing options that may help you avoid foreclosure, **BUT YOU MUST TAKE IMMEDIATE ACTION AND CALL TODAY**. Your lender may require certain financial information (attached) and may require access to the property to determine the property's value prior to qualifying you for these programs.

## (continued on reverse)



7389889

000163

# **Important Notice Regarding**
# <u>**Alternatives to Foreclosure**</u>

If you would like information regarding the options available,
Please call, email, or fax us:
### **Home Retention Department**
### **877-88MYQLS (877-886-9757)**
### **Email: Homeretention@qualityloan.com**
### **Fax: (619) 568-3574**

Please fax or email the attached financial form(s) to expedite our ability to help you process your request.

If you would like to obtain an exact figure as to the amounts needed to cure the default or pay the loan in full, forward your request for reinstatement figures and/or payoff quotes to:

Quality Loan Service Corporation of Washington
19735 10th Avenue NE
Suite N-200
Poulsbo, WA 98370
Fax (206) 780-6862
or call:
### Payoff and Reinstatement Department - **877-REINST8 (877-734-6788)**

You may wish to consult a credit-counseling agency to assist you. The Department of Housing and Urban Development (HUD) can provide you with the name and address of the local HUD approved counseling agency by calling their toll-free hotline at (800) 569-4287.

**Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure. <u>Be sure to notify Quality Loan Service or your lender in the event your property is listed or under contract for sale or the foreclosure may take place notwithstanding your expected sale.</u>**

**THIS NOTICE IS SENT FOR THE PURPOSE OF COLLECTING A DEBT. THIS FIRM IS ATTEMPTING TO COLLECT A DEBT ON BEHALF OF THE HOLDER AND OWNER OF THE NOTE. ANY INFORMATION OBTAINED BY OR PROVIDED TO THIS FIRM OR THE CREDITOR WILL BE USED FOR THAT PURPOSE.**

000164

# Notice to Residents of Commencement of Foreclosure

The foreclosure process has begun on this property, which may affect your right to continue to live in this property. Ninety days or more after the date of this notice, this property may be sold at foreclosure. If you are renting this property, the new property owner may either give you a new rental agreement or provide you with a sixty-day notice to vacate the property. You may wish to contact a lawyer or your local legal aid or housing counseling agency to discuss any rights that you may have.

this page intentionally left blank

# Important Notice Regarding
# <u>Washington Payoff and Reinstatement requests</u>

For your convenience, we are providing you with some information on how to get your Payoff/Reinstatement request processed promptly and efficiently. Below are the three forms in which you may place a request.

1. You will receive a prompt response, if you place your request via e-mail to : <u>WAQuotes@qualityloan.com</u>

2. You may place a request via Fax :  (206) 780-6862

3. You can send a request to our office at :

Quality Loan Service Corp. of Washington
19735 10th Avenue NE, Suite N-200
Poulsbo, WA 98370
Phone Number (866) 645-7711 Ext. 3704

Your request must include the trustee sale number, loan number and the subject property address so that we may expedite your request. Please specify whether you are requesting payoff or reinstatement figures and the date you would like the figures good through not exceeding 30 days. If you are a representative for the current homeowner, we must also receive written authorization before releasing any information.

If you do not receive your figures within 5 days, please call back to speak to a representative. If your property is scheduled for a foreclosure sale within the next 14 days, you must contact the trustee sales officer handling your file by calling our Foreclosure Department directly. Please be aware that making a request for figures does not stop or postpone the sale of the property in question. The sale will continue until funds are received and accepted or other arrangements have been made.

THIS NOTICE IS SENT FOR THE PURPOSE OF COLLECTING A DEBT. THIS FIRM IS ATTEMPTING TO COLLECT A DEBT ON BEHALF OF THE HOLDER AND OWNER OF THE NOTE. ANY INFORMATION OBTAINED BY OR PROVIDED TO THIS FIRM OR THE CREDITOR WILL BE USED FOR THAT PURPOSE.

this page intentionally left blank

0010804698

# Forbearance Agreement

## FRESH START- POST-COMMENCEMENT OF FORECLOSURE

FORBEARANCE AGREEMENT (the "Agreement"), dated **June 8, 2009** between DOUG WALKER (the "Borrower"), whose mailing address is 22306 56TH AVE WY           , MOUNTLAKE TER, WA 98043, and SELECT PORTFOLIO SERVICING INC., a Utah corporation, authorized agent of note owner (the "Servicer"), whose notification address is P. O. Box 65250, Salt Lake City, Utah 84165-0250.

### Recitals

A.  The Borrower executed the promissory note, dated 02/28/2007, in the original principal amount of $280,800.00 (the "Note").

B.  The Note is secured by a Deed of Trust/Mortgage (the "Security Instrument") on certain real property, more commonly known as: 22306 56TH AVE WY           , MOUNTLAKE TERRACE, WA 98043 (the "Real Property"). The Note, Security Instrument and other loan documents are referred to as the "Loan Documents", the obligation under the Loan Documents is referred to as the "Loan".

C.  The Servicer is authorized on behalf of the current holder of the Loan, Select Portfolio Servicing, Inc. (the "Note Holder"), to service the Loan, oversee the collection of amounts due under the Note and enforce the terms of the Loan Documents.

D.  As a result of the Borrower's failure to make timely payments required under the Note, the Note is now in default and a foreclosure action has been commenced, which, if completed would extinguish the Borrower's interest in the Real Property, (the "Foreclosure Proceedings").

E.  The Borrower has requested that the Servicer forbear from pursuing the Foreclosure Proceedings and the Servicer's other remedies under the Loan Documents in consideration of Borrower's promise to make payment as set forth in Section 3, which may vary from the Monthly Payment due under the Note. The payments under this Agreement includes amounts necessary to cure the amount in arrears as shown in Section 1. Subject to the terms and conditions set forth in this Agreement, the Servicer is willing to agree to these requests and give the Borrower additional time to cure the default under the Note as set forth herein.

## Agreement

In consideration of the Recitals, which are incorporated by reference, and the mutual covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties, intending to be legally bound, agree as follows:

     1.    Total Amount to Cure Default. As of the date of this Agreement, the total amount due to cure the Borrower's default under the Loan Documents is the total of the following amounts (the "Total Reinstatement Amount") and may include the additional expense of overnight costs incurred in the processing of this Agreement:

| Loan Number: | | 0010804698 |
|---|---|---|
| **Reinstatement Quote** | | |
| *Reinstatement Good To Date:* | | *6/15/2009* |
| Amount of Past Due Payments: | $ | 10,017.95 |
| Returned Check Fees: | $ | - |
| Interest On Advances: | $ | - |
| Delivery Fee: | $ | 5.52 |
| Accrued Late Fees: | $ | 702.00 |
| Corp. Advance: | $ | - |
| DSI Interest Due: | $ | - |
| Escrow Advance: | $ | - |
| Unapplied Funds: | $ | - |
| Legal Fees Incurred to Date: | $ | 1,541.84 |
| Estimated Legal FC Fees & Costs (up to the Good to Date): | $ | - |
| Estimated Legal BK Fees & Costs (up to the Good to Date): | $ | - |
| Property Evaluation: | $ | - |
| Property Inspection: | $ | - |
| Payment to Accrue | $ | - |
| *Total Reinstatement Amount* | $ | 12,267.31 |

     The Borrower acknowledges that the Servicer is under no obligation to cancel, delay, or discontinue the Foreclosure Proceedings until such time as the Servicer has received an executed copy of this Agreement together with the Down payment required as outlined below. The Down Payment is based in part from the legal fees incurred to date. In the event that additional foreclosure fees and costs or other charges are incurred subsequent to the date this Agreement was prepared and forwarded to the Borrower for signature, the Borrower acknowledges their obligation to pay such additional costs to the Servicer.

     If Borrower has an existing Escrow Analysis or Advance Repayment Plan, the Past Due Payment shown above includes a portion to be applied to delinquent taxes and insurance under the Escrow Analysis or Advance Repayment Plan.

2.      Forbearance. Provided that the Borrower makes all of the payments required in Section 3 (other than the last scheduled balloon payment) by the applicable Due Date, and in addition, with respect to the last scheduled balloon payment, takes the actions described on Exhibit A to raise the monies necessary to pay the balloon payment, Servicer agrees that it shall forbear from exercising its rights under the Loan Documents, including, without limitation, the right to collect rents, the appointment of a receiver and the pursuit of the Foreclosure Proceedings, and the Foreclosure Proceedings shall be stayed, during the term of this Agreement. The Borrower acknowledges and agrees that if it shall fail to comply with any of the terms or conditions of this Agreement, the Servicer shall be entitled to proceed immediately with the Foreclosure Proceedings.

3.      Condition to Agreement to Forbear; Repayment Plan Schedule. The Borrower acknowledges and agrees that the Servicer's agreement to forbear as set forth in Section 2 above, is expressly conditioned on the Borrower's payment of the following:

    a.      The Total Reinstatement Amount set forth in Section 1, due under the Note, is to be paid as follows:

| Loan Number | | 0010804698 |
| --- | --- | --- |
| | Due Date | Amount |
| Down Payment | June 15, 2009 | $ 2,003.59 |
| Subsequent Payments | July 15, 2009 | $ 2,003.59 |
| | August 15, 2009 | $ 2,003.59 |
| | September 15, 2009 | $ 12,267.31 |

    b.      Borrower acknowledges and agrees that the final payment under this Agreement may be significantly larger than prior payments under this Agreement. Borrower's regularly scheduled Monthly Payments due under the terms of the Note will resume following the receipt of the last payment under this Agreement.

    c.      If Borrower has established an Escrow Analysis or Advance Repayment Plan, it will be attached as Exhibit B to this Agreement. The Escrow Analysis or Advance Repayment Plan is designed to help you pay past due taxes or monthly insurance that Servicer has paid on your behalf. The amount shown as past due payments above in Section 1 and Subsequent Payments in this Section 3, includes these monthly amounts necessary to repay Servicer for these tax advances and insurance premiums.

    d.      Borrower further acknowledges that to the extent the term of the Escrow Analysis or Advance Repayment Plan goes beyond the term of the Forbearance Plan, the Escrow Analysis or Advance Repayment Plan shall remain in full force and effect, unless Servicer advises Borrower otherwise.

4.      Form of Payment. The Borrower agrees to make payments due to the Servicer under Section 3, on or before the applicable Due Date, by one of the following methods: (a) Western Union Quick Collect; (b) cashier's check; (c) certified funds; or (d) money order.

5.     **Mailing Address for Plan Payment.**  The Borrower agrees to make all payments required under this Agreement to the Servicer, ATTN: UNDERWRITING at 3815 South West Temple, Salt Lake City, Utah 84115.

6.     Delinquent Taxes. In addition to delinquent taxes included in the Total Reinstatement Amount, the Borrower agrees to pay all delinquent property taxes relating to the Real Property and provide proof of such payment to the Servicer prior to the date that the final payment is due under this Agreement.

7.     Insurance Payments. The Borrower agrees to provide proof of hazard insurance coverage for the Real Property (and, where required, proof of flood insurance coverage) in a form and amount satisfactory to the Servicer and deliver such proof of insurance to the Servicer prior to or contemporaneously with the delivery to the Servicer of the executed original of this Agreement and the initial payment under this Agreement. If Borrower fails to provide proof of insurance, and Servicer after following its procedures and reminding Borrower of the requirement for insurance, states its intent to purchase insurance on the Real Property if Borrower fails to obtain, and advances money to buy insurance on the Real Property (Lender Placed Insurance), Borrower agrees to pay Servicer for such Lender Placed Insurance.

8.     Application of Payments. The Borrower understands and acknowledges that the payments set forth in Section 3 shall be applied as follows:

> a. Down Payment. First, to as many of the Past Due Payments shown in Section 1 as possible, with any excess applied to Advances.
>
> b. Subsequent Payments. Each payment after the Down Payment, will be applied as follows; first to Monthly Payment due (oldest payment paid first) and if there is any excess, second to the taxes and insurance portion of Advances (unless there is an Escrow Analysis or Advance Repayment Plan), third to remaining Advances until all of such advances owing are satisfied in full and if there is any excess, fourth to any other delinquent Monthly Payments until they are paid in full, and last to fees until they are paid. Each Subsequent Payment during the Forbearance Plan will be applied in this manner. Borrower understands that funds may be held in suspense until the amount of a full Monthly Payment may be made if the excess funds are not sufficient to make a full Monthly Payment.

9.     Payment Changes. If the regular Monthly Payment changes or increases due to an increase in the escrow portion of the Monthly Payment for taxes and insurance, the Borrower agrees to pay the amount of any such increase in addition to the amounts set forth in Section 3. If the interest rate under the terms of the promissory note is an adjustable rate, any scheduled rate changes will be postponed for the duration of this agreement.

10.     Obligations under Loan Documents.     The Borrower agrees to abide by and comply with all of its obligations and responsibility under the Loan Documents.

11.     Non-Waiver. Borrower understands that if Servicer has accelerated the Loan to maturity, Servicer has not waived its acceleration by accepting payments described in Section 3

or by accepting any partial payment amounts. Lender shall be entitled to retain all payments made by the Borrower to be applied as set forth above without affecting Servicers rights under the Loan Documents or the acceleration of the Loan. Once Borrower has made all of the payments required under <u>Section 3</u>, Servicer will cause the notice of default to be cancelled. If Borrower does not make the payments as agreed in <u>Section 3</u>, Servicer may proceed with its remedies under the Loan Documents, including the Foreclosure Proceedings.   Except as specifically provided herein, nothing contained herein shall be deemed (i) to prejudice any of the rights or remedies of the Servicer or (ii) a waiver of any remedy which the Servicer may have against the Borrower under the laws of the state in which the Real Property is located or by which the Loan Documents are governed. No delay or failure by the Servicer to exercise any of its rights under this Agreement shall constitute a waiver of any of its rights under this Agreement or the Loan Documents.

12.     <u>Binding Agreement</u>.  This Agreement shall be binding upon the parties hereto, their legal representatives, successors, and permitted assigns.

13.     <u>Notices.</u>  All notices or other correspondence required under this Agreement shall be in writing and, unless otherwise provided for herein, mailed by first class U.S. mail, or telecopied, and shall be deemed to have been given when received, if to Borrower, at 22306 56TH AVE WY          , MOUNTLAKE TER, WA 98043, and if to the Servicer, at P.O. Box 65250, Salt Lake City, Utah 84165-0250.

14.     THE BORROWER MUST EXECUTE THIS AGREEMENT AND RETURN IT WITH THE DOWN PAYMENT SHOWN IN <u>SECTION 3</u> AND PROOF OF INSURANCE PRIOR TO June 15, 2009 FAILURE TO RETURN THE EXECUTED AGREEMENT BY THIS DATE WILL ALLOW SERVICER TO TERMINATE THIS AGREEMENT.

IN WITNESS THEREOF, the parties hereto have executed this Forbearance Agreement as of the date first written above.

**BORROWER**

_____          _____
DOUG WALKER                    Date

_____          _____
                    Date

**SERVICER**

    by Select Portfolio Servicing, Inc.
    its attorney in fact and servicer

By_____
    its duly authorized officer

EXECUTION VERSION

# EXHIBIT A

to

### Fresh Start – Post-Commencement of Foreclosure
### Forbearance Agreement (Agreement)

| Borrower's Agreed Action Steps Under the Agreement ("X" indicates Action Step(s) agreed to by Borrower) | Completion Date (N/A indicates Action Step(s) not applicable to Borrower) |
|---|---|
| _____ A. Obtain other financing to payoff the mortgage loan or to make the payments under this Agreement. | _____ |
| B. Repair or improve the damaged property, which will increase Borrowers monthly net income and/or Borrowers ability to sell or rent the property increasing their ability to make payments under this Agreement, as shown in Section 3, through: <br><br> _____ (1) additional rental income. <br> _____ (2) ability to move back into damaged property and avoid extra rent payment. <br> _____ (3) allowing listing and sale of property for a higher price. <br> _____ (4) other. | <br><br> _____ <br> _____ <br><br> _____ <br> _____ |
| X __ C. Improve monthly net income to a level which will allow the Borrower to make payments under this Agreement (such as by obtaining a second job or restructuring debts). | September 15, 2009 |
| _____ D. Obtain monies which may be due to Borrower from third parties, such as insurance carriers or pending legal actions. | _____ |
| _____ E. Liquidate other assets. | _____ |
| _____ F. (1) Obtain and forward to SPS a signed Listing Agreement, with a Licensed real estate agent, for the sale of the mortgaged property or other real estate assets. <br><br> (2) Liquidate the mortgaged property or other real estate assets. | _____ <br><br> _____ |

000286

*** TRANSMISSION REPORT ***

06/12/2009 21:13                    Lexmark 6500 Series                    4257747515

| NO. | DATE | START TIME | SENT TO | SCANNED/SENT | RESULT |
|-----|------|------------|---------|--------------|--------|
| 1   | 06/12/2009 | 21:09 | 12062993954 | 9/9 | OK |

000265

# EXHIBIT "I"

7011 9L

# ADJUSTABLE RATE NOTE

(First · Five  Years - Stated Rate, Reduced Initial Payments; 12MTA)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. DURING THE FIRST  5  YEARS OF THIS NOTE, MY MONTHLY PAYMENT MAY NOT FULLY PAY THE INTEREST THAT ACCRUES.  AS A RESULT, THE PRINCIPAL AMOUNT I REPAY MAY BE LARGER THAN THE AMOUNT I ORIGINALLY BORROWED, BUT NOT MORE THAN 120.000 % OF THE ORIGINAL AMOUNT (OR $ 295,680.00   ). THIS NOTE LIMITS THE MAXIMUM INTEREST RATE I MUST PAY AND MY INTEREST RATE CAN NEVER EXCEED THE LIMIT STATED IN THIS NOTE.**

| April 10, 2007 | Lynnwood | Washington |
|---|---|---|
| [Date] | [City] | [State] |

23207 LaPierre Drive, Mountlake Terrace, WA  98043
[Property Address]

### BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 246,400.00  ·  (this amount is called "Principal"), us interest, to the order of the Lender.  The Lender is American Brokers Conduit
. I will make l payments under this Note in the form of cash, check or money order. ·

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled re. e payments under this Note is called the "Note Holder."

### INTEREST

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. This Note carries an Initial ated Interest Rate of  7.750 % until the last day of the Initial Period. The period from the date of this Note until the date that is 0  months after the last day of the month in which the Note is executed is called the "Initial Period." The First Payment Date is ecified in Section 3(A) of this Note. After the Initial Period, the interest rate I will pay may change in accordance with Section 4 of is Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default scribed in Section 7(B) of this Note.

### PAYMENTS

**(A)    Time and Place of Payments**

I will make payments every month.  In this Note, unless otherwise specified, "payment" refers to Principal and interest iyments only, although other charges such as taxes, insurance and/or late charges may also be payable with monthly payments.

I will make monthly payments on the first day of each month, beginning on the first day of the second month that follows the onth of the date of this Note, or June 1, 2007 , the "First Payment Date."

After the Initial Period, I will make monthly payments on the first day of every month as provided in Sections 4(G) and 4(H) this Note.

Each monthly payment will be applied to interest before Principal. If, on May 1, 2037 , I still owe nounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at PO Box 660029, Dallas, TX  75266-0029
or at a different place if required by the ote Holder.

**(B)    Amount of My Initial Monthly Payments**

Subject to Section 4(F), during the Initial Period, my monthly payment will be in the amount of U.S. 821.13 . This minimum monthly payment is not based on the Initial Stated Interest Rate and will not fully pay the te hat accrues each month during the Initial Period. Effective upon the first Payment Change Date, my monthly payment will be

ιlculated as provided in Section 4(G) or Section 4(H) of this Note, as applicable.

**(C)  Monthly Payment Changes**

After the Initial Period, changes in my monthly payment will reflect changes in the unpaid Principal of my loan and in the inte⁻ ⁻t rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment as pr⌐ ⌐d in Section 4(G) or Section 4(H) of this Note, as applicable.

**4.  INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A)  Change Dates**

The interest rate I will pay may change on __May 1st_____, __2012__, and on that day every month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B)  The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the Twelve-Month Average, determined as set forth below, of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Board Statistical Release entitled "Selected Interest Rates (H. 15)" (the "Monthly Yields"). The Twelve-Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available 15 days before the first Change Date and each Change Date thereafter is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

**(C)  Calculation of and Effective Date of Rate Changes**

After the Initial Period, my new interest rate will be calculated by adding __Two and Three Quarters_____ percentage points ( __2.750__ %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-thousandth of one percentage point (0.001%). Subject to the limits stated in Section 4(D) below, my new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment due date after the first Change Date until the amount of my monthly payment changes again as provided in this Note. After the Initial Period, each date on which my payment changes is called a "Payment Change Date."

**(D)  Limits on Interest Rate Changes**

The interest rate I am required to pay upon the first Change Date and each Change Date thereafter will not be less than the Margin. My interest rate will never be greater than __12.950__ %.

**(E)  Initial Monthly Payment Amounts; Possibility of Negative Amortization**

During the Initial Period, my minimum required monthly payment will be less than the amount of interest that accrues on the Pr⌐ ⌐al balance of the loan at the Initial Stated Rate. During the Initial Period, for each month that my monthly payment is less than the amount of interest that accrues on the Principal balance of the loan at the Initial Stated Rate, the Note Holder will subtract the amount of the monthly payment from the amount of the interest that accrues on the Principal balance of the loan for that month and add the difference to the Principal balance of my loan and interest will accrue on the on the amount of this difference at the Initial Stated Rate.

**(F)  Limit on My Unpaid Principal Balance; Increased Monthly Payment**

During the Initial Period, the unpaid Principal balance of the loan can never exceed a maximum amount equal to __120.000__% of the Principal amount originally borrowed. In the event the unpaid Principal would otherwise exceed that __120.000__ % limitation, the Note Holder will determine the amount of the monthly payments based on the amount sufficient to repay the interest that accrues on the Principal balance of the loan (including previously accrued, unpaid and capitalized interest) at the Initial Stated Interest Rate. This amount will be my new minimum monthly payment until the first Payment Change Date.

**(G)  Calculation of Payment Changes and Payment Amounts after Initial Period until Month 121**

After the Initial Period, changes in my monthly payment will reflect changes in the unpaid Principal of my loan and the interest rate that I must pay. My monthly payment may change on the first Payment Change Date, and on the first day of every month thereafter.

Except as provided in Section 4(H) of this Note, beginning on the first Payment Change Date and the first day of each month hereafter my monthly payment will be based on the amount sufficient to repay the interest that accrues on the Principal balance of the loan at the interest rate that will become effective on the immediately prior Change Date. Except as provided in Section 4(H) of this Note, I will make monthly payments in the amounts as calculated in this Section 4(G) until the next Payment Change Date.

**(H)  Calculation of Payment Changes and Payment Amounts from Month 121 until Maturity Date**

Beginning with the monthly payment due on __June 1st, 2017_____, and for each monthly payment due thereafter until the Maturity Date of the loan, the Note Holder will determine the amount of the monthly payment that would be sufficient to repay the projected Principal balance of the loan in full on the Maturity Date at the interest rate that becomes effective on each Change Date. Until the Maturity Date, I will make monthly payments in the amounts as calculated in this Section 4(H) until the next Payment Change Date.

*J)*   **Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the and telephone number of a person who will answer any question I may have regarding the notice.

**BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

6.    **LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

7.    **BORROWER'S FAILURE TO PAY AS REQUIRED**

(A)    **Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of _____15_____ calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be _____5.000_____% of my overdue payment of Principal and interest, as applicable. I will pay this late charge promptly but only once on each late payment.

(B)    **Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C)    **Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a cc.  ..i date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D)    **No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E)    **Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

8.    **GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

).    **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

0.    **WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor.

Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11.   UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, Lender shall not exercise this option if Applicable Law prohibits such exercise. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
Douglas Walker                      -Borrower

_____ (Seal)
                                    -Borrower

_____ (Seal)
                                    -Borrower

_____ (Seal)
                                    -Borrower

_____ (Seal)
                                    -Borrower

_____ (Seal)
                                    -Borrower

_____ (Seal)
                                    -Borrower

_____ (Seal)
                                    -Borrower

PAY TO THE ORDER OF

WITHOUT RECOURSE
BY: AMERICAN BROKERS CONDUIT

CAROL CINQUEMANI
ASST. SECRETARY

*[Sign Original Only]*

5 Year Stated Rate, Payment Options, ADJUSTABLE RATE NOTE (12 Month MTA)
Doc # 946689/946689.prn   App# 0001716394

AHM-2060N(MULTX(02/07)
*(page 4 of 4 pages)*

**000007**

Loan #: __0001716394__

## ADDENDUM TO NOTE
### (Prepayment)

THIS ADDENDUM is made this ____10th____ day of __April, 2007_____, and is incorporated into and intended to form a part of the Note dated the same date as this Addendum.

1.   The Section in the Note entitled "Borrower's Right to Prepay" is modified to provide that I have the right to make payments of principal at any time before they are due. A prepayment of all of the unpaid principal is known as a "Full Prepayment."   A prepayment of only part of the unpaid principal is known as a "Partial Prepayment."

Except as provided below, I may make a Full Prepayment or a Partial Prepayment at any time without paying any penalty. If within the first __three__ ( _3_____ ) year(s) after the execution of the Note, I make a Full Prepayment or Partial Prepayment(s) of more than twenty percent (20%) of the original principal amount in a twelve month period immediately preceding the date of prepayment, I will pay a prepayment charge in an amount equal to the payment of six (6) months' advance interest on the amount prepaid which is in excess of twenty percent (20%) of the original principal amount of the Note in that twelve month period. Interest will be calculated using the rate in effect at the time of prepayment.

If I make a partial prepayment equal to one or more of my monthly payments, the date of my next scheduled monthly payment may be advanced no more than one month.  If I make a partial prepayment in any other amount, I must still make all subsequent monthly payments as scheduled.

2.   All other provisions *of* the Note are unchanged by this Addendum and remain in full force and effect.

## NOTICE TO THE BORROWER
Do not sign this Note Addendum before you read it. This Note Addendum provides for the payment of a penalty if you wish to repay the loan prior to the date provided for repayment in the Note.

By signing below, Borrower accepts and agrees to the terms and covenants contained in this Note Addendum.

Douglas Walker

Multi-State Prepayment Rider
(Rev4-06)

AHM-2034P(MULTI)

**000008**

Doc # 945224/Image:945224.prn App# 0001716394

*La Riere*

# ALLONGE TO NOTE

AHM#:                    0001716394

---

NOTE DATE:               04/10/2007

NOTE LOAN AMOUNT:        $246,400.00

BORROWER(S) NAME(S):     Douglas Walker

PROPERTY ADDRESS:        23207 LaPierre Drive
                         Mountlake Terrace, WA   98043

---

PAY TO THE ORDER OF:

WITHOUT RECOURSE,

American Brokers Conduit

Stephanie Seibert
Assistant Secretary

DOC #: 945340,    IMAGE 945340.PRN    APPL #:0001716394    LOAN #:1001716394

000003

# EXHIBIT "J"



20070412-0622
04/12/2007  54pm  $56.00  24  PGS
SNOHOMISH COUNTY, WASHINGTON

Return To
American Brokers Conduit
4650 Regent Blvd , Suite 100
Irving, TX 75063-2250

Assessor's Parcel or Account Number    00 5214 004 016 01
Abbreviated Legal Description .  Lot 16, Blk 4, Mountlake Terrace Div No 10, Vol 13/52.

[Include lot, block and plat or section, township and range]          Full legal description located on page    3

Trustee    Ticor Title Company                          Additional Grantees located on page    2

[Space Above This Line For Recording Data]

## DEED OF TRUST

MIN  100024200017163946

Ticor Title
6388458 E

DEFINITIONS
Words used in multiple sections of this document are defined below and other words are defined in Sections
3, 11, 13, 18, 20 and 21  Certain rules regarding the usage of words used in this document are also provided
in Section 16
(A) "Security Instrument" means this document, which is dated  April 10, 2007
together with all Riders to this document
(B) "Borrower" is  Douglas Walker, unmarried man

Borrower is the trustor under this Security Instrument
(C) "Lender" is  American Brokers Conduit

DOC  # 323701
WASHINGTON -Single  Family- Fannie  Mae/Freddie  Mac UNIFORM INSTRUMENT WITH MERS
UM51  0012  04
VMP-6A(WA) (0012)          Form 3048  1/01
Page 1 of 15          Initials _____
VMP MORTGAGE FORMS - (800)521-7291

Lender is a   Corporation
organized and existing under the laws of   State of New York
Lender's address is   538 Broadhollow Road, Melville, NY   11747

(D) "Trustee" is   Ticor Title Company

(E) "MERS" is Mortgage Electronic Registration Systems, Inc MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns   MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P O Box 2026, Flint, MI 48501-2026, tel (888) 679-MERS

(F) "Note" means the promissory note signed by Borrower and dated   April 10, 2007
The Note states that Borrower owes Lender   Two Hundred Forty Six Thousand Four Hundred and No/100                                                                                      Dollars
(U S $246,400 00                 ) plus interest  Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than   May 1, 2037

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property "

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower  The following Riders are to be executed by Borrower [check box as applicable]

| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [X] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [X] Other(s) [specify] |

Prepayment Rider

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account  Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers

(M) "Escrow Items" means those items that are described in Section 3

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for (i) damage to, or destruction of, the Property, (ii) condemnation or other taking of all or any part of the Property, (iii) conveyance in lieu of condemnation, or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument

DOC  # 323702                      APPL # 0001716394

Initials

-6A(WA) (0012)                     Page 2 of 15                              Form 3048  1/01

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U S C Section 2601 et seq ) and its implementing regulation, Regulation X (24 C F R Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS This Security Instrument secures to Lender (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note, and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the     County           of      Snohomish

                   [Type of Recording Jurisdiction]             [Name of Recording Jurisdiction]

Lt 16, Blk 4, Mountlake Terrace Div no 10, Vol 13/52

Lot(s) 16, Block 4, Mountlake Terrace Division Number 10, according to
the plat thereof recorded in Volume 13 of Plats, page(s) 52, in
Snohomish County, Washington,
EXCEPT the northeasterly 90 feet thereof,

Parcel ID Number 00 5214 004 016 01              which currently has the address of
23207 LaPierre Drive                                   [Street]
Mountlake Terrace               [City]   Washington   98043     [Zip Code]
("Property Address")

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property All replacements and additions shall also be covered by this Security Instrument All of the foregoing is referred to in this Security Instrument as the "Property " Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property, and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances
DOC  # 323703

Initials  ꟺ

-6A(WA) (0012)                Page 3 of 15                     Form 3048  1/01

of record Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS Borrower and Lender covenant and agree as follows

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note Borrower shall also pay funds for Escrow Items pursuant to Section 3 Payments due under the Note and this Security Instrument shall be made in U S currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender (a) cash; (b) money order, (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity, or (d) Electronic Funds Transfer

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15 Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument

**2 Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority (a) interest due under the Note, (b) principal due under the Note, (c) amounts due under Section 3 Such payments shall be applied to each Periodic Payment in the order in which it became due Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property, (b) leasehold payments or ground rents on the Property, if any, (c) premiums for any and all insurance required by Lender under Section 5, and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10 These items are called "Escrow Items " At origination or at any

DOC # 323704

Initials [signature]

-6A(WA) (0012)                Page 4 of 15                Form 3048  1/01

time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees, and assessments shall be an Escrow Item Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time Any such waiver may only be in writing In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9 If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3

DOC  #  323705

-6A(WA) (0012)                    Page 5 of 15                    Initials _____    Form 3048  1/01

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement, (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded, or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to

DOC  #  323706

Initials _____

Form 3048  1/01

-6A(WA) (0012)                                    Page 6 of 15

hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

DOC # 323707

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to (a) paying any sums secured by a lien which has priority over this Security Instrument, (b) appearing in court, and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

DOC   # 323708

Initials ___

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance " Further

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds, Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value Any balance shall be paid to Borrower

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds

DOC # 323709

-6A(WA) (0012)          Page 9 of 15          Initials ___          Form 3048  1/01

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer") (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument, (b) is not personally obligated to pay the sums secured by this Security Instrument, and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit, and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note) Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means Notice to any one Borrower shall constitute notice to all Borrowers unless

DOC # 323710

-6A(WA) (0012)                    Page 10 of 15                    Initials ____    Form 3048 1/01



Applicable Law expressly requires otherwise The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender Borrower shall promptly notify Lender of Borrower's change of address If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure There may be only one designated notice address under this Security Instrument at any one time Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument

16. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision

As used in this Security Instrument (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender, (b) words in the singular shall mean and include the plural and vice versa, and (c) the word "may" gives sole discretion without any obligation to take any action

17. Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument

18. Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law

If Lender exercises this option, Lender shall give Borrower notice of acceleration The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower

19. Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument, (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate, or (c) entry of a judgment enforcing this Security Instrument Those conditions are that Borrower (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred, (b) cures any default of any other covenants or agreements, (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender (a) cash, (b) money order, (c) certified check, bank check, treasurer's check

DOC  # 323711

Initials _____

-6A(WA) (0012)                     Page 11 of 15                     Form 3048  1/01

or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity, or (d) Electronic Funds Transfer Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred However, this right to reinstate shall not apply in the case of acceleration under Section 18

20. Sale of Note; Change of Loan Servicer, Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20

21. Hazardous Substances. As used in this Section 21 (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials, (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection, (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law, and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products)

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of

DOC # 323712

release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law Nothing herein shall create any obligation on Lender for an Environmental Cleanup

NON-UNIFORM COVENANTS Borrower and Lender further covenant and agree as follows

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify. (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property at public auction at a date not less than 120 days in the future. The notice shall further inform Borrower of the right to reinstate after acceleration, the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale, and any other matters required to be included in the notice by Applicable Law. If the default is not cured on or before the date specified in the notice, Lender at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and/or any other remedies permitted by Applicable Law Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to; reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee and Lender shall take such action regarding notice of sale and shall give such notices to Borrower and to other persons as Applicable Law may require. After the time required by Applicable Law and after publication of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of the Property for a period or periods permitted by Applicable Law by public announcement at the time and place fixed in the notice of sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it or to the clerk of the superior court of the county in which the sale took place.

23. Reconveyance Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it Such person or persons shall pay any recordation costs and the Trustee's fee for preparing the reconveyance

24. Substitute Trustee. In accordance with Applicable Law, Lender may from time to time appoint a successor trustee to any Trustee appointed hereunder who has ceased to act Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law

DOC # 323713

-6A(WA) (0012)                           Page 13 of 15                           Initials _____         Form 3048  1/01

**25. Use of Property** The Property is not used principally for agricultural purposes

**26. Attorneys' Fees.** Lender shall be entitled to recover its reasonable attorneys' fees and costs in any action or proceeding to construe or enforce any term of this Security Instrument The term "attorneys' fees," whenever used in this Security Instrument, shall include without limitation attorneys' fees incurred by Lender in any bankruptcy proceeding or on appeal

**ORAL AGREEMENTS OR ORAL COMMITMENTS TO LOAN MONEY, EXTEND CREDIT, OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT ARE NOT ENFORCEABLE UNDER WASHINGTON LAW.**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it

Witnesses

_____ (Seal)
Douglas Walker                    -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

DOC # 323714

-6A(WA) (0012)                Page 14 of 15                Form 3048   1/01

**STATE OF WASHINGTON**                                         } ss:
County of    Snohomish
On this day personally appeared before me    Douglas Walker

to me known to be the individual(s) described in and who executed the within and foregoing instrument, and
acknowledged that he/she/they signed the same as his/her/their free and voluntary act and deed, for the uses
and purposes therein mentioned.
GIVEN under my hand and official seal this    10TH    day of April, 2007

_____
Notary Public in and for the State of Washington, residing at
Lynnwood
My Appointment Expires on   03/09/10

DOC  # 323715

(lender) -6A(WA) (0012)                    Page 15 of 15                    Form 3048  1/01

Initials _____

# EXHIBIT "K"

# HomEq Servicing

**March 18, 2009**
DF770

**DOUGLAS WALKER**

**23207 LAPIERRE DR**
**MOUNTLAKE TERRACE, WA 98043**

**Property Address:**
**23207 LAPIERRE DR**
**MOUNTLAKE TERRACE, WA 98043**

RE: Account Number:                              0326701182

Dear DOUGLAS WALKER:

This letter is in reference to the above-referenced account (the  Account ), serviced by HomEq Servicing
( HomEq ), on behalf of the following current creditor:

Name of current creditor/owner:                    Barclays Bank PLC
Time and place of the creation of the debt:         04/10/2007
                                                    MOUNTLAKE TERRACE, WA

Merchandise, services or other things of value:    Mortgage/Deed of Trust

You are hereby provided with notice that you are in default under the terms and conditions of your
Note/Retail Installment Sale Contract and Mortgage/Deed of Trust secured by the above-referenced
property (the  Property ) for failure to pay the required installments when due.  If your Account is not
brought current within thirty-five (35) days of the date of this letter, which is 04/22/2009, HomEq will,
without further demand, accelerate the maturity date of the Account and declare the total balance
immediately due and payable.  As a consequence, HomEq may refer your Account to an attorney for
foreclosure and all fees associated with foreclosure and Property preservation may be added to the total
amount required to bring the Account current.  In order to avoid further action, your full and timely
payment in an amount sufficient to bring the Account current must be received by HomEq via **certified
funds, cashier s check or money order(s)** on or before 04/22/2009.  Your remittance must be made
payable and mailed to HomEq Servicing at P.O. Box 79230 City of Industry, CA 91716-9230.

As of the date of this letter, the amount required to bring the Account current and avoid foreclosure is the
sum of payments that have come due on or after the date of default, 02/01/2009, plus late charges,
periodic adjustments to the monthly payment amount (if applicable) and other expenses associated with
collection, all of which total $2,199.42.  Because interest accruals, late charges and other expenses may
be additionally incurred, the amount required to bring the Account current on the day you actually deliver
your payment to HomEq may be greater than the amount provided above.  Accordingly, you should
contact HomEq at 1-800-795-5125, Monday - Thursday 5:00AM-9:00PM, Friday  5:00AM-6:00PM,
Saturday 5:00AM-1:30PM, Sunday 8:00AM-5:00PM, Pacific Time to obtain the exact amount needed to
bring the Account current prior to remitting payment.

**THIS NOTICE CONTINUES ON THE NEXT PAGE**
**SEE LAST PAGE FOR IMPORTANT DISCLOSURES**

- 1 -

**000400**

You are hereby informed that you have the right to cure or reinstate the Account after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense you may have to acceleration.

Although you are not required to pay the total debt (or balance) of the Account prior to its maturity or acceleration, federal law requires HomEq to provide you with the total debt (or balance) due to HomEq as of the date of this letter, which is $266,463.51. The total estimated debt amount provided herein is for informational purposes only and this letter is not intended to act as a payoff statement or demand for you to pay the Account in full. If you want to obtain a written payoff statement, please submit your request to HomEq Servicing, Attention: Payoff Quotes, Mail Code CA3344, P.O. Box 13716, Sacramento, CA 95853 or otherwise contact HomEq at (877) 867-7378, Monday through Friday between 5:00 a.m. and 5:30 p.m., Pacific Time.

HomEq is acting as the Mortgage Loan Servicer for Barclays Bank PLC, which is the current creditor/owner of the Note and deed of Trust associated with your account. HomEq, as Mortgage Loan Servicer, is representing Barclays Bank PLC whose address is 200 Park Avenue, 5th Floor, New York, NY 10166. The Mortgage Loan Servicer is authorized to represent Barclays Bank PLC by virtue of a servicing agreement. The Mortgage Loan Servicer is authorized to collect the debt and to administer any resulting foreclosure of the property securing the above referenced account. **All notices, payments, correspondence, and other communications regarding your account should continue to be directed to HomEq**.

**IMPORTANT:** You are hereby notified that we may report information about your account to credit reporting agencies..Late payments, missed payments, or other defaults on your account may also be reflected on your credit report.

**Except as otherwise contained herein, all communication concerning this matter must be made to HomEq via telephone at 1-800-795-5125, Monday - Thursday 5:00AM-9:00PM, Friday 5:00AM-6:00PM, Saturday 5:00AM-1:30PM, Sunday 8:00AM-5:00PM, Pacific Time or in writing to: HomEq Servicing, Attn: Account Research, Mail Code CA3345, P.O. Box 13716, Sacramento, CA 95853.**

Please take appropriate action with respect to the important matters discussed herein.

Sincerely,

HomEq Servicing

**HomEq Servicing is a debt collector. HomEq is attempting to collect a debt and any information obtained will be used for that purpose.**

-2-

000401

# EXHIBIT "L"

## NOTICE OF DEFAULT

*Pursuant to R.C.W. Chapter 61.24, et seq. and 62A.9A-604(a)(2) et seq.*

*Trustee Sale No.: 01-FMS-76720*

|||||||||||||||||||||||||||||||||||||||

### 1.    DEFAULT

**YOU ARE HEREBY NOTIFIED** that the Beneficiary has declared you, the borrower or grantor, in default on the obligations secured by a Deed of Trust recorded under Auditor's/Recorder's No. 200704120622, records of SNOHOMISH County, Washington; originally granted for the benefit of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR ITS SUCCESSORS AND ASSIGNS, *as beneficiary. The beneficial interest under said Deed of Trust and the obligations secured thereby are* presently held by or will be assigned to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR ITS SUCCESSORS AND ASSIGNS. Said Deed of Trust encumbers the following described real property in SNOHOMISH County:

> LOT(S) 16, BLOCK 4, MOUNTLAKE TERRACE DIVISION NUMBER 10, ACCORDING TO THE PLAT THEREOF RECORDED IN VOLUME 13 OF PLATS, PAGE(S) 52, IN SNOHOMISH COUNTY, WASHINGTON, EXCEPT THE NORTHEASTERLY 70 FEET THEREOF.

The postal address of the Property is purported to be: 23207 LAPIERRE DRIVE, MOUNTLAKE TERRACE, WA 98043.

### 2.    STATEMENT OF DEFAULT AND ITEMIZED ACCOUNT OF AMOUNTS IN ARREARS:

The beneficiary alleges that you are in default for failure to pay the following past due amounts, which are in arrears:

|  | Amount due as of June 8, 2009 |
|---|---|
| Delinquent Payments from February 01, 2009 5 payments at $ 1,049.96 each (02-01-09 through 06-08-09) | $    5,249.80 |
| Late Charges: | $      181.62 |
| Beneficiary Advances: | $      112.98 |
| Suspense Credit: | $        0.00 |
| TOTAL: | $    5,544.40 |

If you have failed to pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust, the beneficiary may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums. These requirements for reinstatement should be confirmed by contacting the undersigned Trustee.

### 3.    OTHER CHARGES, COSTS AND FEES:

WA NOD

000252

In addition to the amounts in arrears specified above, you, the borrower, grantor, or any guarantor, are or may be obligated to pay the following charges, costs and fees to reinstate the Deed of Trust if reinstatement is made before recording of the Notice of Trustee's Sale.

| | | |
|---|---|---|
| Trustee Fee | $ | 405.00 |
| Airbill | $ | 13.25 |
| Certified Mailing Cost | $ | 25.00 |
| Posting Cost | $ | 55.00 |
| TSG Guarantee Policy | $ | 1,094.00 |
| TOTAL CHARGES, COSTS AND FEES: | $ | 1,592.25 |

## 4. REINSTATEMENT: IMPORTANT! PLEASE READ!

THE ESTIMATED AMOUNT NECESSARY TO REINSTATE YOUR NOTE AND DEED OF TRUST BEFORE THE RECORDING OF THE NOTICE OF TRUSTEE'S SALE IS THE SUM OF PARAGRAPHS 2 AND 3 ABOVE IN THE AMOUNT OF $7,136.65, PLUS the amount of any monthly payments and late charges which may fall due after the date of this Notice of Default. However, because some of the items can only be estimated at this time and because the amount needed to reinstate your loan may include presently unknown expenditures required to preserve the property or to comply with state or local laws, it will be necessary for you to contact the undersigned prior to the time you tender funds so that you may be advised of the exact amount you will be required to pay.

Reinstatement monies may be tendered to (CERTIFIED OR CASHIER'S CHECK REQUIRED)

REGIONAL TRUSTEE SERVICES CORPORATION
616 1st Avenue, Suite 500
Seattle, WA 98104

If your default includes a default other than failure to pay monthly payments and/or late charges when due, then in order to reinstate the Note and Deed of Trust before the Notice of Trustee's Sale is recorded, you must cure such other default(s).

## 5. CONSEQUENCES OF DEFAULT:

a. Failure to cure the alleged default within thirty days of the mailing of this notice, or if personally served, within thirty days of the date of personal service thereof, may lead to recordation, transmittal and publication of a Notice of Trustee's Sale, and the Property described in paragraph 1 above may be sold at public auction at a date no less than 120 days in the future.

b. The effect of the recordation, transmittal and publication of a Notice of Trustee's Sale will be to (i) increase the costs and fees and (ii) publicize the default and advertise the Property described herein for sale.

c. If the default(s) described above is (are) not cured within thirty days of the mailing of this notice, the lender hereby gives notice that the entire principal balance owing on the note secured by the Deed of Trust described in paragraph 1 above, and all accrued and unpaid interest, as well as costs of foreclosure, shall immediately become due and payable. Notwithstanding acceleration, the grantor or the holder of any junior lien or encumbrance shall have the right after acceleration to reinstate by curing all defaults and paying all costs, fees and advances, if any, made pursuant to the terms of the obligation and/or deed of trust on or before 11 days prior to a Trustee's sale.

-2- WA NOD

d.   The effect of a Trustee's Sale of the grantor's Property by the trustee will be to deprive the grantor of all of their interest in the Property described in paragraph 1 above.

6.   RECOURSE TO COURTS:

The borrower, grantor and any guarantor has recourse to the courts pursuant to RCW 61.24.130 to contest the alleged default on any proper ground.

DATED: 6/8/2009

REGIONAL TRUSTEE SERVICES CORPORATION
Trustee and/or Agent for the Beneficiary

By_____
ANNA EGDORF, AUTHORIZED AGENT
616 1st Avenue, Suite 500, Seattle, WA 98104
Telephone: (206) 340-2550

- 3 -                                        WA NOD

**NOTICE REQUIRED BY THE
FAIR DEBT COLLECTION PRACTICE ACT
15 U.S.C. Section 1692**

TS#    01-FMS-76720

6/8/2009

ATTENTION TRUSTORS:

1. You are hereby notified that REGIONAL TRUSTEE SERVICES CORPORATION is attempting to collect a debt.

2. As of the date of this letter, you owe $272,309.41. Because of interest, late charges, and other charges that may vary from day to day, or may apply only upon payoff, the amount due on the day you pay may be greater. Hence if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection.

3. The original creditor to whom the debt is/was owed is MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR ITS SUCCESSORS AND ASSIGNS. The current creditor is MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR ITS SUCCESSORS AND ASSIGNS.

4. The debt will be assumed to be valid by REGIONAL TRUSTEE SERVICES CORPORATION unless WITHIN THIRTY DAYS AFTER THE RECEIPT OF THIS NOTICE, you dispute the validity of the debt or some portion thereof.

5. If you notify REGIONAL TRUSTEE SERVICES CORPORATION within thirty days after the receipt of this Notice that the debt or any portion thereof is disputed, REGIONAL TRUSTEE SERVICES CORPORATION will provide a verification of the debt, and a copy of the verification will be mailed to you by REGIONAL TRUSTEE SERVICES CORPORATION. In attempting to collect the debt, any information obtained will be used for that purpose.

6. If the current creditor is not the original creditor, and if you make a request to REGIONAL TRUSTEE SERVICES CORPORATION within thirty days after the receipt of this Notice, the name and address of the original creditor will be mailed to you by REGIONAL TRUSTEE SERVICES CORPORATION.

7. Where notice or that requests may be made to and further information can be obtained from:

REGIONAL TRUSTEE SERVICES CORPORATION
616 1st Avenue, Suite 500
Seattle  WA  98104
(206) 340-2550

000255

# EXHIBIT "M"



200907090703          2    PGS
07/09/2009 3:06pm $15.00
SNOHOMISH COUNTY, WASHINGTON

When recorded, mail to:

**REGIONAL TRUSTEE SERVICES CORPORATION**
616 1st Avenue, Suite 500
Seattle, WA 98104

Trustee's Sale No: 01-FMS-76720

**FIDELITY NATIONAL TITLE**

*FMS76720001000000*  CF0404135   2/6

### APPOINTMENT OF SUCCESSOR TRUSTEE

KNOW ALL MEN BY THESE PRESENTS that, DOUGLAS WALKER, AN UNMARRIED MAN is the Grantor, and TICOR TITLE COMPANY is the Trustee, and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR ITS SUCCESSORS AND ASSIGNS is the Beneficiary under that certain trust deed dated 4/10/2007, under Auditor s/Recorder s No. 200704120622, records of SNOHOMISH County, WASHINGTON.

the undersigned

NOW, THEREFORE, in view of the premises, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR ITS SUCCESSORS AND ASSIGNS, who is the present beneficiary, hereby appoints REGIONAL TRUSTEE SERVICES CORPORATION, whose address is 616 1st Avenue, Suite 500, Seattle, WA 98104, as Successor Trustee under said trust deed, to have all the powers of said original trustee, effective as of the date of execution of this document.

IN WITNESS WHEREOF, the undersigned beneficiary has hereunto set his hand; if the undersigned is a corporation, it has caused its corporate name to be signed and affixed hereunto by its duly authorized officers.

1

WA-Sub

Trustee's Sale No: 01-FMS-76720

DATED: 7-4-09

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC. AS NOMINEE FOR ITS SUCCESSORS
AND ASSIGNS

By_____

**Noriko Colston   Vice President**
(Name     Title)

STATE OF ___California____ )
COUNTY OF ___Sacramento___ ) ss.

On ___JUN 0 9 2009___, before me, ___Jane Quick___
personally appeared ___Noriko Colston___, personally known to me (or proved
to me on the basis of satisfactory evidence) to be the person(s) whose name is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s), or the
entity upon behalf of which the person(s) acted executed the instrument.

WITNESS my hand and official seal.

_____   ___Jane Quick___
NOTARY PUBLIC in and for the State of
California, residing at ___Sacramento___
My commission expires:_____

JANE QUICK
COMM. # 1793292
NOTARY PUBLIC·CALIFORNIA
SACRAMENTO CO.
EXP. MAR 9, 2012

2

WA-9bb

# EXHIBIT "N"



200907090704    4    PGS
07/09/2009 3:06pm $45.00
SNOHOMISH COUNTY, WASHINGTON

When recorded, mail to:

REGIONAL TRUSTEE SERVICES CORPORATION
616 1st Avenue, Suite 500
Seattle, WA 98104

Trustee's Sale No: 01-FMS-78720

FIDELITY NATIONAL TITLE
09040413S    4146

## NOTICE OF TRUSTEE'S SALE
*Pursuant to R.C.W. Chapter 61.24, et seq. and 62A.9A-604(e)(2) et seq.*

NOTICE IS HEREBY GIVEN that the undersigned Trustee, REGIONAL TRUSTEE SERVICES CORPORATION, will on October 9, 2009, at the hour of 10:00 AM, at ON THE STEPS IN FRONT OF THE NORTH ENTRANCE TO THE SNOHOMISH COUNTY COURTHOUSE, 3000 ROCKEFELLER AVENUE, EVERETT, WA, sell at public auction to the highest and best bidder, payable at the time of sale, the following described real and personal property (hereafter referred to collectively as the "Property"), situated in the County of SNOHOMISH, State of Washington:

LOT(S) 16, BLOCK 4, MOUNTLAKE TERRACE DIVISION NUMBER 10, ACCORDING TO THE PLAT THEREOF RECORDED IN VOLUME 13 OF PLATS, PAGE(S) 52, IN SNOHOMISH COUNTY, WASHINGTON, EXCEPT THE NORTHEASTERLY 70 FEET THEREOF.

Tax Parcel No: 005214-004-016-01, commonly known as 23207 LAPIERRE DRIVE , MOUNTLAKE TERRACE, WA.

The Property is subject to that certain Deed of Trust dated 4/10/2007 , recorded 4/12/2007 , under Auditor's/Recorder's No. 200704120622, records of SNOHOMISH County, Washington, from DOUGLAS WALKER, AN UNMARRIED MAN, as Grantor, to TICOR TITLE COMPANY, as Trustee, in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR ITS SUCCESSORS AND ASSIGNS, as Beneficiary, the beneficial interest in which is presently held by MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR ITS SUCCESSORS AND ASSIGNS.

II

No action commenced by the Beneficiary of the Deed of Trust is now pending to seek satisfaction of the obligation in any court by reason of the Borrower's or Grantor's default on the obligation secured by the Deed of Trust.

III

The default(s) for which this foreclosure is/are made are as follows:

1

NOTS

FAILURE TO PAY THE MONTHLY PAYMENT WHICH BECAME DUE ON 2/1/2009, AND ALL SUBSEQUENT MONTHLY PAYMENTS, PLUS LATE CHARGES AND OTHER COSTS AND FEES AS SET FORTH.

Failure to pay when due the following amounts which are now in arrears:

|  | Amount due as of July 10, 2009 |
|---|---|
| Delinquent Payments from February 01, 2009 6 payments at $ 1,049.96 each (02-01-09 through 07-10-09) | $    6,299.76 |
| Late Charges: | $      222.68 |
| Beneficiary Advances: | $      112.98 |
| Suspense Credit: | $        0.00 |
| TOTAL: | $    6,635.42 |

## IV

The sum owing on the obligation secured by the Deed of Trust is: Principal $262,694.63, together with interest as provided in the note or other instrument secured, and such other costs and fees as are due under the note or other instrument secured, and as are provided by statute.

## V

The above described real property will be sold to satisfy the expenses of sale and the obligation secured by the Deed of Trust as provided by statute. The sale will be made without warranty, express or implied regarding title, possession, or encumbrances on October 9, 2009. The default(s) referred to in paragraph III must be cured by September 28, 2009 (11 days before the sale date) to cause a discontinuance of the sale. The sale will be discontinued and terminated if at any time on or before September 28, 2009, (11 days before the sale date) the default(s) as set forth in paragraph III is/are cured and the Trustee's fees and costs are paid. The sale may be terminated at any time after September 28, 2009, (11 days before the sale date) and before the sale, by the Borrower, Grantor, any Guarantor or the holder of any recorded junior lien or encumbrance paying the entire principal and interest secured by the Deed of Trust, plus costs, fees, and advances, if any, made pursuant to the terms of the obligation and/or Deed of Trust, and curing all other defaults.

## VI

A written Notice of Default was transmitted by the Beneficiary or Trustee to the Borrower and Grantor at the following addresses:

DOUGLAS WALKER, 23207 LAPIERRE DRIVE, MOUNTLAKE TERRACE, WA, 98043
DOUGLAS WALKER, 22306 56TH AVENUE WEST, MOUNTLAKE TERRACE, WA, 98043
SPOUSE OF DOUGLAS WALKER, 22306 56TH AVENUE WEST, MOUNTLAKE TERRACE, WA, 98043
SPOUSE OF DOUGLAS WALKER, 23207 LAPIERRE DRIVE, MOUNTLAKE TERRACE, WA, 98043

NOTS

by both first class and certified mail on 6/8/2009, proof of which is in the possession of the Trustee; and on 6/8/2009, the Borrower and Grantor were personally served with said written notice of default or the written Notice of Default was posted in a conspicuous place on the real property described in paragraph I above; and the Trustee has possession of proof of such service or posting.

VII

The Trustee's Sale will be held in accordance with Ch. 61.24 RCW and anyone wishing to bid at the sale will be required to have in his/her possession at the time the bidding commences, cash, cashier's check, or certified check in the amount of at least one dollar over the Beneficiary's opening bid. In addition, the successful bidder will be required to pay the full amount of his/her bid in cash, cashier's check, or certified check within one hour of the making of the bid. The Trustee whose name and address are set forth below will provide in writing to anyone requesting it, a statement of all costs and fees due at any time prior to the sale.

VIII

The effect of the sale will be to deprive the Grantor and all those who hold by, through or under the Grantor of all of their interest in the above described property.

IX

Anyone having any objection to the sale on any grounds whatsoever will be afforded an opportunity to be heard as to those objections if they bring a lawsuit to restrain the same pursuant to RCW 61.24.130. Failure to bring such a lawsuit may result in a waiver of any proper grounds for invalidating the Trustee's Sale.

X

### NOTICE TO OCCUPANTS OR TENANTS

The purchaser at the Trustee's Sale is entitled to possession of the property on the 20th day following the sale, as against the Grantor under the Deed of Trust (the owner) and anyone having an interest junior to the Deed of Trust, including occupants and tenants. After the 20th day following the sale the purchaser has the right to evict occupants and tenants by summary proceeding under the Unlawful Detainer Act, Chapter 59.12 RCW.

DATED:           July 8, 2009.
EffectiveDate:   July 9, 2009

REGIONAL TRUSTEE SERVICES CORPORATION
Trustee

By
MELISSA HJORTEN, ASSISTANT VICE PRESIDENT.
Address:        616 1st Avenue, Suite 500
                Seattle, WA 98104
Phone:          (206) 340-2550
Sale Information: www.rtrustee.com

3

NOTS

STATE OF WASHINGTON )
) ss.
COUNTY OF KING )

On July 8, 2009, before me, the undersigned, a Notary Public in and for the State of Washington, duly commissioned and sworn, personally MELISSA HJORTEN, to me known to be the ASSISTANT VICE PRESIDENT of REGIONAL TRUSTEE SERVICES CORPORATION, the corporation that executed the foregoing instrument, and acknowledged the said instrument to be the free and voluntary act and deed of said corporation, for the uses and purposes therein mentioned, and on oath stated that he/she is authorized to execute the said instrument and that the seal affixed is the corporate seal of said corporation.

WITNESS my hand and official seal hereto affixed the day and year first above written.

_____
NOTARY PUBLIC in and for the State of
Washington, residing at: _King County_
My commission expires: _11-6-11_

MARILEE HAKKINEN
STATE OF WASHINGTON
NOTARY PUBLIC
MY COMMISSION EXPIRES
11-06-11

4

NOTS

# EXHIBIT "O"

**NOTICE TO BORROWER: YOU SHOULD BE AWARE THAT THE UNDERSIGNED IS ATTEMPTING TO COLLECT A DEBT AND THAT ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

**NOTICE OF FORECLOSURE**
*Pursuant to the R.C.W.Chapter 61.24, et seq. and 62A.9A-604(a)(2) et seq.*

Trustee No.: 01-FMS-76720

The attached Notice of Trustee's Sale is a consequence of defaults in the obligation to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR ITS SUCCESSORS AND ASSIGNS, the current Beneficiary of your Deed of Trust and owner of the obligation secured thereby. Unless the default(s) is/are cured, your property will be sold at public auction on October 9, 2009.

To cure the default(s), you must bring the payments current, cure any other defaults and pay accrued late charges, and other costs, advances and attorney's fees as set forth below by September 28, 2009 [11 days before sale date]. To date, these arrears and costs are as follows:

|  | Currently due to reinstate on 07/10/09 | Estimated Amount due to reinstate on 09/28/09 |
|---|---|---|
| Delinquent Payments from 02/01/09: |  |  |
| 6 payments at $ 1,049.96 each | $ 6,299.76 | $ 6,299.76 |
| 2 payments at $ 1,049.96 each | $ 0.00 | $ 2,099.92 |
| (02-01-09 through 07-10-09) |  |  |
| Late Charges | $ 222.68 | $ 345.86 |
| Beneficiary Advances | $ 112.98 | $ 112.98 |
| Suspense Credit | $ 0.00 | $ 0.00 |
|  | Estimated Amounts: |  |
| Trustee Fee | $ 607.50 | $ 607.50 |
| Statutory Mailings | $ 26.50 | $ 26.50 |
| Statutory Mailings | $ 58.75 | $ 58.75 |
| Posting Cost (NOD) | $ 55.00 | $ 55.00 |
| Posting Cost (NOTS) | $ 75.00 | $ 75.00 |
| Publication Cost | $ 0.00 | $ 1,200.00 |
| Publication Set-Up | $ 25.00 | $ 0.00 |
| Recording Cost (Assn) | $ 15.00 | $ 15.00 |
| Recording Cost (Discontinuance) | $ 44.00 | $ 44.00 |
| Recording Cost (NOTS) | $ 44.00 | $ 44.00 |
| Recording Cost (Sub) | $ 15.00 | $ 15.00 |
| TSG Guarantee Policy | $ 1,094.00 | $ 1,094.00 |
| TOTAL: | $ 8,695.17 | $ 12,093.27 |

WA NOF

1

000219

To pay off the entire obligation secured by your Deed of Trust as of July 8, 2009 you must pay a total of $262,694.63 in principal, $10,486.64 in interest, plus other costs and advances estimated to date in the amount of $2,829.23.    From and after the date of this notice you must submit a written request to the Trustee to obtain the total amount to pay off the entire obligation secured by your Deed of Trust as of the payoff date.

As to the defaults which do not involve payment of money to the Beneficiary of your Deed of Trust, you must cure each such default.  Listed below are the defaults which do not involve payment of money to the Beneficiary of your Deed of Trust.  Opposite each such listed default is a brief description of the action necessary to cure the default and a description of the documentation necessary to show that the default has been cured.

| Default | Description of Action Required to Cure Default and Documentation Necessary to Show Cure |
|---|---|
| FAILURE TO PAY THE MONTHLY PAYMENT WHICH BECAME DUE ON 2/1/2009, AND ALL SUBSEQUENT MONTHLY PAYMENTS, PLUS LATE CHARGES AND OTHER COSTS AND FEES AS SET FORTH. | Payment and/or proof of payment. |

You may reinstate your Deed of Trust and the obligation secured thereby at any time up to and including September 28, 2009 [11 days before the sale date] by paying the amounts set forth or estimated above and by curing any other defaults described above.  Of course, as time passes other payments may become due, and any further payments coming due and any additional late charges must be added to your reinstating payment.  Any new defaults not involving payment of money that occurs after the date of this notice must also be cured in order to effect reinstatement.  In addition, because some of the charges can only be estimated at this time, and because the amount necessary to reinstate or to pay off the entire indebtedness may include presently unknown expenditures required to preserve the property or to comply with state or local law, it will be necessary for you to contact the Trustee before the time you tender reinstatement or the pay off amount so that you may be advised of the exact amount you will be required to pay.  Tender of payment or performance must be made to REGIONAL TRUSTEE SERVICES CORPORATION, whose address is 616 1st Avenue, Suite 500, Seattle, WA 98104, telephone (206) 340-2550.  PAYMENT OF FUNDS MUST BE IN THE FORM OF A CERTIFIED OR CASHIER'S CHECK.

AFTER September 28, 2009, YOU MAY NOT REINSTATE YOUR DEED OF TRUST BY PAYING THE BACK PAYMENTS AND COSTS AND FEES AND CURING THE OTHER DEFAULTS AS OUTLINED ABOVE.  The Trustee will respond to any written request for current payoff or reinstatement amounts within ten days of receipt of your written request.  In such case, you will only be able to stop the sale by paying, before the sale, the total principal balance (262694.63) plus accrued interest, costs and advances, if any, made pursuant to the terms of the documents and by curing the other defaults as outlined above.

You may contest this default by initiating court action in the Superior Court of the county in which the sale is to be held.  In such action, you may raise any legitimate defenses you have to this default.  A copy of your Deed of Trust and documents evidencing the obligation secured thereby are enclosed.  You may wish to consult a lawyer.  Legal action on your part may prevent or restrain the sale, but only if you persuade the court of the merits of your defense.

WA NOF

2

000220

The court may grant a restraining order or injunction to restrain a Trustee's Sale pursuant to RCW 61.24.130 upon five days' notice to the Trustee of the time when, place where, and the judge before whom the application for the restraining order or injunction is to be made. This notice shall include copies of all pleadings and related documents to be given to the judge. Notice and other process may be served on the Trustee at:

**REGIONAL TRUSTEE SERVICES CORPORATION**
**616 1st Avenue, Suite 500**
**Seattle, WA 98104**
**(206) 340-2550**

If you do not reinstate the secured obligation and your Deed of Trust in the manner set forth above or if you do not succeed in restraining the sale by court action, your property will be sold. The effect of such sale will be to deprive you and all those who hold by, through or under you of all interest in the property.

DATED:          July 8, 2009.
EffectiveDate:  July 9, 2009

                 **REGIONAL TRUSTEE SERVICES CORPORATION**
                 Trustee

                 By_____
                 MELISSA HJORTEN, ASSISTANT VICE PRESIDENT

WA NOF

3

000221

# EXHIBIT "P"

**NOTICE OF DEFAULT**
*Pursuant to R.C.W. Chapter 61.24, et seq. and 62A.9A-604(a)(2) et seq.*

*Trustee Sale No.: 01-OC-105450*

## 1.    DEFAULT

**YOU ARE HEREBY NOTIFIED** that the Beneficiary has declared you, the borrower or grantor, in default on the obligations secured by a Deed of Trust recorded under Auditor's/Recorder's No. 200704120622, records of SNOHOMISH County, Washington; originally granted for the benefit of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR AMERICAN BROKERS CONDUIT, as beneficiary.

The name and address of the owner of the promissory note(s) or other obligation(s) secured by said Deed of Trust The Bank of New York Mellon Trust Company, National Association, as Grantor Trustee of the Protium Master Grantor Trust, c/o AMS SERVICING, LLC, 190 LAWRENCE BELL DRIVE, BUFFALO, NEW YORK, 14221. As of the date of this notice, this loan is serviced by AMS SERVICING, LLC, and its address and phone number are:  190 LAWRENCE BELL DRIVE, BUFFALO, NEW YORK, 14221, 800-569-4287.

Said Deed of Trust encumbers the following described real property in SNOHOMISH County:

LOT(S) 16, BLOCK 4, MOUNTLAKE TERRACE DIVISION NUMBER 10, ACCORDING TO THE PLAT THEREOF RECORDED IN VOLUME 13 OF PLATS, PAGE(S) 52, IN SNOHOMISH COUNTY, WASHINGTON. EXCEPT THE NORTHEASTERLY 70 FEET THEREOF.

The postal address of the Property is purported to be: 23207 LAPIERRE DRIVE, MOUNTLAKE TERRACE, WA 98043.

You should take care to protect your interest in your home.  This notice of default (your failure to pay) is the first step in a process that could result in your losing your home.  You should carefully review your options. For example:

Can you pay and stop the foreclosure process?
Do you dispute the failure to pay?
Can you sell your property to preserve your equity?
Are you able to refinance this loan or obligation with a new loan or obligation from another lender with payments, terms, and fees that are more affordable?
Do you qualify for any government or private homeowner assistance programs?
Do you know if filing for bankruptcy is an option? What are the pros and cons of doing so?

Do not ignore this notice; because if you do nothing, you could lose your home at a foreclosure sale.  (No foreclosure sale can be held any sooner than ninety days after a notice of sale is issued and a notice of sale cannot be issued until thirty days after this notice.)  Also, if you do nothing to pay what you owe, be careful of people who claim they can help you.  There are many individuals and businesses that watch for the notices of sale in order to unfairly profit as a result of borrower's distress.

You may feel you need help understanding what to do.  There are a number of professional resources available, including home loan counselors and attorneys, who may assist you.  Many legal services are lower-cost or even free, depending on your ability to pay.  If you desire legal help in understanding your options or handling this default, you may obtain a referral (at no charge) by contacting the county bar association in the county where your home is located.  These legal referral services also provide information

WA NOD

00015

about lower-cost or free legal services for those who qualify. You may contact the Department of Financial Institutions or the statewide civil legal aid hotline for possible assistance or referrals.

## 2.    STATEMENT OF DEFAULT AND ITEMIZED ACCOUNT OF AMOUNTS IN ARREARS:

The beneficiary alleges that you are in default for failure to pay the following past due amounts, which are in arrears:

|  |  | Amount due as of March 1, 2011 |
|---|---|---|
| Delinquent Payments from February 01, 2009 | | |
| 26 payments at $ 1,049.96 each | $ | 27,298.96 |
| (02-01-09 through 03-01-11) | | |
| Late Charges: | $ | 386.92 |
| Beneficiary Advances: | $ | 10,581.63 |
| Suspense Credit: | $ | 0.00 |
| TOTAL: | $ | 38,267.51 |

If you have failed to pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust, the beneficiary may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums. These requirements for reinstatement should be confirmed by contacting the undersigned Trustee.

## 3.    OTHER CHARGES, COSTS AND FEES:

In addition to the amounts in arrears specified above, you, the borrower, grantor, or any guarantor, are or may be obligated to pay the following charges, costs and fees to reinstate the Deed of Trust if reinstatement is made before recording of the Notice of Trustee's Sale.

| | | |
|---|---|---|
| Trustee Fee | $ | 450.00 |
| Certified Mailing Cost | $ | 25.00 |
| Posting Cost | $ | 65.00 |
| TSG Guarantee Policy | $ | 766.00 |
| TOTAL CHARGES, COSTS AND FEES: | $ | 1,306.00 |

## 4.    REINSTATEMENT:    IMPORTANT! PLEASE READ!

THE ESTIMATED AMOUNT NECESSARY TO REINSTATE YOUR NOTE AND DEED OF TRUST BEFORE THE RECORDING OF THE NOTICE OF TRUSTEE'S SALE IS THE SUM OF PARAGRAPHS 2 AND 3 ABOVE IN THE AMOUNT OF $39,573.51, PLUS the amount of any monthly payments and late charges which may fall due after the date of this Notice of Default. However, because some of the items can only be estimated at this time and because the amount needed to reinstate your loan may include presently unknown expenditures required to preserve the property or to comply with state or local laws, it

000151

will be necessary for you to contact the undersigned prior to the time you tender funds so that you may be advised of the exact amount you will be required to pay.

Reinstatement monies may be tendered to (CERTIFIED OR CASHIER'S CHECK REQUIRED)

REGIONAL TRUSTEE SERVICES CORPORATION
616 1st Avenue, Suite 500
Seattle, WA 98104

If your default includes a default other than failure to pay monthly payments and/or late charges when due, then in order to reinstate the Note and Deed of Trust before the Notice of Trustee's Sale is recorded, you must cure such other default(s).

5.    CONSEQUENCES OF DEFAULT:

a.    Failure to cure the alleged default within thirty days of the mailing of this notice, or if personally served, within thirty days of the date of personal service thereof, may lead to recordation, transmittal and publication of a Notice of Trustee's Sale, and the Property described in paragraph 1 above may be sold at public auction at a date no less than 120 days in the future.

b.    The effect of the recordation, transmittal and publication of a Notice of Trustee's Sale will be to (i) increase the costs and fees and (ii) publicize the default and advertise the Property described herein for sale.

c.    If the default(s) described above is (are) not cured within thirty days of the mailing of this notice, the lender hereby gives notice that the entire principal balance owing on the note secured by the Deed of Trust described in paragraph 1 above, and all accrued and unpaid interest, as well as costs of foreclosure, shall immediately become due and payable. Notwithstanding acceleration, the grantor or the holder of any junior lien or encumbrance shall have the right after acceleration to reinstate by curing all defaults and paying all costs, fees and advances, if any, made pursuant to the terms of the obligation and/or deed of trust on or before 11 days prior to a Trustee's sale.

d.    The effect of a Trustee's Sale of the grantor's Property by the trustee will be to deprive the grantor of all of their interest in the Property described in paragraph 1 above.

6.    RECOURSE TO COURTS:

The borrower, grantor and any guarantor has recourse to the courts pursuant to RCW 61.24.130 to contest the alleged default on any proper ground.

DATED: 3/1/2011

REGIONAL TRUSTEE SERVICES CORPORATION
Trustee and/or Agent for the Beneficiary

By_____
KAREN JAMES, AUTHORIZED AGENT
616 1st Avenue, Suite 500, Seattle, WA 98104
Telephone: (206) 340-2550

- 3 -                                                    WA NOD

000152

NOTICE REQUIRED BY THE
FAIR DEBT COLLECTION PRACTICE ACT
15 U.S.C. Section 1692

TS#     01-OC-105450

3/1/2011

ATTENTION TRUSTORS:

1. You are hereby notified that REGIONAL TRUSTEE SERVICES CORPORATION is attempting to collect a debt and any information obtained will be used for that purpose.

2. As of the date of this letter, you owe $321,768.85. Because of interest, late charges, and other charges that may vary from day to day, or may apply only upon payoff, the amount due on the day you pay may be greater. Hence if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection.

3. The original creditor to whom the debt is/was owed is MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR AMERICAN BROKERS CONDUIT. The current creditor is The Bank of New York Mellon Trust Company, National Association, as Grantor Trustee of the Protium Master Grantor Trust.

4. The debt will be assumed to be valid by REGIONAL TRUSTEE SERVICES CORPORATION unless WITHIN THIRTY DAYS AFTER THE RECEIPT OF THIS NOTICE, in writing, you dispute the validity of the debt or some portion thereof.

5. If you notify REGIONAL TRUSTEE SERVICES CORPORATION in writing, within thirty days after the receipt of this Notice that the debt or any portion thereof is disputed, REGIONAL TRUSTEE SERVICES CORPORATION will provide a verification of the debt, and a copy of the verification will be mailed to you by REGIONAL TRUSTEE SERVICES CORPORATION. In attempting to collect the debt, any information obtained will be used for that purpose.

6. If the current creditor is not the original creditor, and if you make a request to REGIONAL TRUSTEE SERVICES CORPORATION within thirty days after the receipt of this Notice, the name and address of the original creditor will be mailed to you by REGIONAL TRUSTEE SERVICES CORPORATION.

7. Written and/or verbal requests may be made to and further information can be obtained from:

REGIONAL TRUSTEE SERVICES CORPORATION
616 1st Avenue, Suite 500
Seattle, WA 98104
(206) 340-2550

# EXHIBIT "Q"

Walker

ELECTRONICALLY RECORDED
201104080386                      4
04/08/2011 03:42 PM          65.00
SNOHOMISH COUNTY, WASHINGTON

201104080386

When recorded, mail to:

**REGIONAL TRUSTEE SERVICES CORPORATION**
616 1st Avenue, Suite 500
Seattle, WA 98104

Trustee's Sale No: 01-QC-105450

## NOTICE OF TRUSTEE'S SALE
Pursuant to R.C.W. Chapter 61.24, et seq. and 62A.9A-604(a)(2) et seq.

**NOTICE IS HEREBY GIVEN** that the undersigned Trustee, REGIONAL TRUSTEE SERVICES CORPORATION, will on July 8, 2011, at the hour of 10:00 AM, at **ON THE STEPS IN FRONT OF THE NORTH ENTRANCE TO THE SNOHOMISH COUNTY COURTHOUSE, 3000 ROCKEFELLER AVENUE, EVERETT, WA,** sell at public auction to the highest and best bidder, payable at the time of sale, the following described real and personal property (hereafter referred to collectively as the "Property"), situated in the County of SNOHOMISH, State of Washington:

> LOT(S) 16, BLOCK 4, MOUNTLAKE TERRACE DIVISION NUMBER 10, ACCORDING TO THE PLAT THEREOF RECORDED IN VOLUME 13 OF PLATS, PAGE(S) 52, IN SNOHOMISH COUNTY, WASHINGTON. EXCEPT THE NORTHEASTERLY 70 FEET THEREOF.
>
> Tax Parcel No: 005214-004-016-01, commonly known as 23207 LAPIERRE DRIVE , MOUNTLAKE TERRACE, WA.

The Property is subject to that certain Deed of Trust dated 4/10/2007, recorded 4/12/2007 , under Auditor's/Recorder's No. 200704120622, records of SNOHOMISH County, Washington, from DOUGLAS WALKER, UNMARRIED MAN, as Grantor, to TICOR TITLE COMPANY, as Trustee, in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR AMERICAN BROKERS CONDUIT, as Beneficiary, the beneficial interest in which is presently held by The Bank of New York Mellon Trust Company, National Association, as Grantor Trustee of the Protium Master Grantor Trust.

II

No action commenced by the Beneficiary of the Deed of Trust is now pending to seek satisfaction of the obligation in any court by reason of the Borrower's or Grantor's default on the obligation secured by the Deed of Trust.

III

- 1 -

000235

The default(s) for which this foreclosure is/are made are as follows:

**FAILURE TO PAY THE MONTHLY PAYMENT WHICH BECAME DUE ON 2/1/2009, AND ALL SUBSEQUENT MONTHLY PAYMENTS, PLUS LATE CHARGES AND OTHER COSTS AND FEES AS SET FORTH.**

Failure to pay when due the following amounts which are now in arrears:

|  | Amount due as of April 8, 2011 |
|---|---|
| Delinquent Payments from February 01, 2009 | |
| 27 payments at $ 1,049.96 each | |
| (02-01-09 through 04-08-11) | $ 28,348.92 |
| Late Charges: | $ 427.98 |
| Beneficiary Advances: | $ 10,581.63 |
| Suspense Credit: | $ 0.00 |
| TOTAL: | $ 39,358.53 |

The sum owing on the obligation secured by the Deed of Trust is: Principal $262,694.63, together with interest as provided in the note or other instrument secured, and such other costs and fees as are due under the note or other instrument secured; and as are provided by statute.

V

The above described real property will be sold to satisfy the expenses of sale and the obligation secured by the Deed of Trust as provided by statute. The sale will be made without warranty, express or implied regarding title, possession, or encumbrances on July 8, 2011. The default(s) referred to in paragraph III must be cured by June 27, 2011 (11 days before the sale date) to cause a discontinuance of the sale. The sale will be discontinued and terminated if at any time on or before June 27, 2011, (11 days before the sale date) the default(s) as set forth in paragraph III is/are cured and the Trustee's fees and costs are paid. The sale may be terminated at any time after June 27, 2011, (11 days before the sale date) and before the sale, by the Borrower, Grantor, any Guarantor or the holder of any recorded junior lien or encumbrance paying the entire principal and interest secured by the Deed of Trust, plus costs, fees, and advances, if any, made pursuant to the terms of the obligation and/or Deed of Trust, and curing all other defaults.

VI

A written Notice of Default was transmitted by the Beneficiary or Trustee to the Borrower and Grantor at the following addresses:

DOUGLAS WALKER, 23207 LAPIERRE DRIVE, MOUNTLAKE TERRACE, WA, 98043
DOUGLAS WALKER, 22306 56TH AVENUE WEST, MOUNTLAKE TERRACE, WA, 98043
SPOUSE OF DOUGLAS WALKER, 22306 56TH AVENUE WEST, MOUNTLAKE TERRACE, WA, 98043

- 2 -

000236

SPOUSE OF DOUGLAS WALKER, 23207 LAPIERRE DRIVE, MOUNTLAKE TERRACE, WA, 98043

by both first class and certified mail on 3/1/2011, proof of which is in the possession of the Trustee; and on 3/1/2011, the Borrower and Grantor were personally served with said written notice of default or the written Notice of Default was posted in a conspicuous place on the real property described in paragraph I above, and the Trustee has possession of proof of such service or posting.

VII

The Trustee's Sale will be held in accordance with Ch. 61.24 RCW and anyone wishing to bid at the sale will be required to have in his/her possession at the time the bidding commences, cash, cashier's check, or certified check in the amount of at least one dollar over the Beneficiary's opening bid. In addition, the successful bidder will be required to pay the full amount of his/her bid in cash, cashier's check, or certified check within one hour of the making of the bid. The Trustee whose name and address are set forth below will provide in writing to anyone requesting it, a statement of all costs and fees due at any time prior to the sale.

VIII

The effect of the sale will be to deprive the Grantor and all those who hold by, through or under the Grantor of all of their interest in the above described property.

IX

Anyone having any objection to the sale on any grounds whatsoever will be afforded an opportunity to be heard as to those objections if they bring a lawsuit to restrain the same pursuant to RCW 61.24.130. Failure to bring such a lawsuit may result in a waiver of any proper grounds for invalidating the Trustee's Sale.

X

## NOTICE TO OCCUPANTS OR TENANTS

The purchaser at the Trustee's Sale is entitled to possession of the property on the 20th day following the sale, as against the Grantor under the Deed of Trust (the owner) and anyone having an interest junior to the Deed of Trust, including occupants who are not tenants. After the 20th day following the sale the purchaser has the right to evict occupants who are not tenants by summary proceeding under Chapter 59.12 RCW. For tenant-occupied property, the purchaser shall provide a tenant with written notice in accordance with section 2 of this act.

- 3 -

000237

DATED:        . 4/8/2011
EffectiveDate:   4/8/2011

REGIONAL TRUSTEE SERVICES CORPORATION
Trustee

By
KAREN JAMES, AUTHORIZED AGENT
Address:     616 1st Avenue, Suite 500
             Seattle, WA 98104
Phone:       (206) 340-2550
Sale Information: www.rtrustee.com

STATE OF WASHINGTON

COUNTY OF KING                      ) ss.

On 4/8/2011, before me, the undersigned, a Notary Public in and for the State of Washington, duly commissioned and sworn, personally appeared KAREN JAMES , to me known to be the AUTHORIZED AGENT of the corporation that executed the foregoing instrument and acknowledged the said instrument to be the free and voluntary act of and deed of said corporation, for the uses and purposes therein mentioned, and on oath stated that he/she is authorized to execute the said instrument.

Witness my hand and seal the day and year first above written.

_Dorris  G. Lanthong_

Notary Public residing at  _Seattle_

Printed Name:  _Dorris  G. Lanthong_

My Commission Expires:  _07/09/2014_

- 4 -

000235

# EXHIBIT "R"

## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| DOUG WALKER, an individual, | ) | NO. 65975-8-I |
| | ) | |
| Appellant, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | ORDER CHANGING AND |
| QUALITY LOAN SERVICE CORP. | ) | REPLACING OPINION |
| OF WASHINGTON, a Washington | ) | |
| corporation; SELECT PORTFOLIO | ) | |
| SERVICING, INC., a Utah | ) | |
| corporation, | ) | |
| | ) | |
| Respondents, | ) | |
| | ) | |
| CREDIT SUISSE FINANCIAL | ) | |
| CORPORATION, a Delaware | ) | |
| corporation; TICOR TITLE COMPANY, | ) | |
| a Washington corporation; REGIONAL | ) | |
| TRUSTEE SERVICES | ) | |
| CORPORATION, a Washington | ) | |
| corporation; AMERICAN BROKERS | ) | |
| CONDUIT; and MORTGAGE | ) | |
| ELECTRONIC REGISTRATION | ) | |
| SYSTEMS, INC., a Delaware | ) | |
| corporation, | ) | |
| | ) | |
| Defendants. | ) | |

The court, having determined a need to modify its opinion filed August 5, 2013,

now, therefore, it is hereby

ORDERED that the opinion be changed as follows:

The final sentence at page 21 of the opinion shall be reworded to provide:

If Walker is able to prove these underlying DTA violations, he may also be able to show that Quality and Select violated § 1692f(6) by threatening nonjudicial foreclosure.

It is further ORDERED that the amended opinion shall replace the original opinion filed herein.

DATED this ___ day of _____, 2013.

_____
Leach, C. J.

_____
Cox, J.

## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| DOUG WALKER, an individual, | ) | NO. 65975-8-I |
| | ) | |
| Appellant, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | AMENDED PUBLISHED |
| QUALITY LOAN SERVICE CORP. | ) | OPINION |
| OF WASHINGTON, a Washington | ) | |
| corporation; SELECT PORTFOLIO | ) | |
| SERVICING, INC., a Utah | ) | |
| corporation, | ) | |
| | ) | |
| Respondents, | ) | FILED: August 26, 2013 |
| | ) | |
| CREDIT SUISSE FINANCIAL | ) | |
| CORPORATION, a Delaware | ) | |
| corporation; TICOR TITLE COMPANY, | ) | |
| a Washington corporation; REGIONAL | ) | |
| TRUSTEE SERVICES | ) | |
| CORPORATION, a Washington | ) | |
| corporation; AMERICAN BROKERS | ) | |
| CONDUIT; and MORTGAGE | ) | |
| ELECTRONIC REGISTRATION | ) | |
| SYSTEMS, INC., a Delaware | ) | |
| corporation, | ) | |
| | ) | |
| Defendants. | ) | |

LEACH, C.J. — In this case we consider whether a property owner's preforeclosure sale remedies for alleged violations of the deeds of trust act, chapter 61.24 RCW (DTA), the Consumer Protection Act, chapter 19.86 RCW (CPA), and the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692

NO. 65975-8-I / 2

(FDCPA), include recovery of monetary damages. We hold that a property owner may recover damages in this circumstance, depending upon the specific facts of the case.

Doug Walker appeals a trial court order granting the CR 12(c) dismissal motion of Quality Loan Service Corporation of Washington (Quality) and Select Portfolio Servicing Inc. (Select).[1] After Quality initiated nonjudicial proceedings to foreclose Walker's deed of trust, he sued to enjoin the trustee's sale and also sought damages for violations of the DTA, CPA, and FDCPA. Additionally, Walker sought to quiet title to his property. Because Walker's amended complaint alleges facts that, if proved, would entitle him to some relief, we reverse in part and remand for further proceedings.

## FACTS

In February 2007, Credit Suisse Financial Corporation (Credit Suisse) loaned Doug Walker $280,000. He signed a promissory note memorializing his debt and a deed of trust to secure the note. The deed of trust named Ticor Title Company as the trustee, Credit Suisse as the lender, and Mortgage Electronic Registration Systems Inc. (MERS) as "a separate corporation that is acting solely

---

[1] The trial court entered an order of default against defendants Credit Suisse Financial Corporation, Ticor Title Company, and American Brokers Conduit.

NO. 65975-8-I / 3

as a nominee for Lender and Lender's successors and assigns. MERS is the

beneficiary under this Security Instrument."

The deed of trust also contained a number of other statements about

MERS's status, including,

> The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note, and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property.

and

> Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property.

Walker defaulted on the note. On May 22, 2009, a notice of default was

mailed to Walker.[2]   On May 28, 2009, Select, acting as "the Beneficiary,"

recorded an instrument naming Quality as successor trustee under the deed of

trust.   Over a month later, on July 6, 2009, MERS executed a corporate

---

[2] The record does not contain a copy of this notice, and it is unclear from the record which party mailed the notice to Walker.

NO. 65975-8-I / 4

assignment of deed of trust "as nominee for Credit Suisse," assigning its interest in the deed of trust and the promissory note to Select.

On July 21, 2009, Quality recorded a notice of trustee's sale for Walker's property. The notice recited that Walker granted the deed of trust to "secure an obligation in favor of [MERS], as Beneficiary, the beneficial interest in which was assigned by [MERS], as nominee for [Credit Suisse] to [Select]." It also identified Quality as the successor trustee.

On October 28, 2009, Walker filed an amended complaint in Snohomish County Superior Court, seeking to enjoin the trustee's sale, to recover damages on a variety of theories, and to quiet title. The trial court entered a temporary restraining order enjoining the trustee's sale while the action was pending, conditioned on Walker making note payments into the court registry.

Later, the trial court granted Quality and Select's CR 12(c) motion for judgment on the pleadings. Walker appeals.

## STANDARD OF REVIEW

We review de novo a trial court's order for judgment on the pleadings.[3] "'[W]e examine the pleadings to determine whether the claimant can prove any set of facts, consistent with the complaint, which would entitle the claimant to

---

[3] Pasado's Safe Haven v. State, 162 Wn. App. 746, 752, 259 P.3d 280 (2011) (citing N. Coast Enters., Inc. v. Factoria P'ship, 94 Wn. App. 855, 858, 974 P.2d 1257 (1999)).

-4-

NO. 65975-8-I / 5

relief."[4]  In making this determination, we presume the plaintiff's allegations are true and may consider hypothetical facts not included in the record.[5]

## ANALYSIS

Walker alleges that Quality and Select violated the DTA, FDCPA, and CPA.  He also asserts a claim to quiet title to his property.  We reverse the trial court's order dismissing his complaint and remand for further proceedings on all claims except his request to quiet title.

### Deeds of Trust Act

We first consider Walker's DTA claim, based primarily upon the designation of MERS as beneficiary in the deed of trust.  Asserting that MERS could not be a lawful deed of trust beneficiary, Walker alleges "all subsequent actions taken by any party in reliance on MERS' actions is [sic] also unlawful." Stated more plainly, Walker claims that MERS was not a lawful beneficiary and therefore lacked the authority to assign the deed of trust and note to Select. Because the assignment to Select was ineffective, Select's designation of Quality as successor trustee was also ineffective, meaning that Quality lacked authority to initiate nonjudicial foreclosure proceedings.  Although no foreclosure sale

---

[4] Pasado's Safe Haven, 162 Wn. App. at 752 (quoting N. Coast Enters., 94 Wn. App. at 859).

[5] M.H. v. Corp. of Catholic Archbishop of Seattle, 162 Wn. App. 183, 189, 252 P.3d 914 (quoting Tenore v. AT&T Wireless Servs., 136 Wn.2d 322, 330, 962 P.2d 104 (1998)), review denied, 173 Wn.2d 1006 (2011).

-5-

occurred, Walker labels this a "wrongful foreclosure" claim. We consider it more accurate to characterize this as a claim for damages arising from DTA violations.

Select and Quality respond that Washington does not recognize a claim for "wrongful initiation of foreclosure when, as here, the foreclosure sale has been discontinued." We disagree.

The DTA regulates transactions in which a borrower secures a promissory note or other debt instrument with a deed of trust. Although a statutory deed of trust conveys title to a trustee, because the borrower does this to secure credit or a loan from the lender, it is essentially an equitable mortgage.[6] The beneficiary is "the holder of the instrument or document evidencing the obligations secured by the deed of trust, excluding persons holding the same as security for a different obligation."[7] The trustee is "the person designated as the trustee in the deed of trust or appointed under RCW 61.24.010(2)."[8] Former RCW 61.24.010(2) (2008) states,

> The trustee may resign at its own election or be replaced by the beneficiary . . . . [U]pon the resignation, . . . or the election of the beneficiary to replace the trustee, the beneficiary shall appoint a trustee or a successor trustee. Upon recording the appointment of a successor trustee . . . , the successor trustee shall be vested with all powers of an original trustee.

---

[6] 18 WILLIAM B. STOEBUCK & JOHN W. WEAVER, WASHINGTON PRACTICE: REAL ESTATE: TRANSACTIONS § 17.3, at 260 (2d ed. 2004).

[7] RCW 61.24.005(2).

[8] Former RCW 61.24.005(4) (1998).

-6-

NO. 65975-8-I / 7

Under the DTA, if a deed of trust contains the power of sale, the trustee
may usually foreclose the deed of trust and sell the property without judicial
supervision.[9]  Only a lawful beneficiary has the power to appoint a successor
trustee,[10] and only a lawfully appointed successor trustee has the authority to
issue a notice of trustee's sale.[11]  Accordingly, when an unlawful beneficiary
appoints a successor trustee, the putative trustee lacks the legal authority to
record and serve a notice of trustee's sale.

While the current version of RCW 61.24.030 requires that the trustee
"have proof that the beneficiary is the owner of any promissory note or other
obligation secured by the deed of trust" before issuing a notice of trustee's sale,[12]
the version in effect on July 21, 2009, when Quality filed a notice of trustee's sale
regarding Walker's property, did not include this requirement.[13]

Because the DTA "dispenses with many protections commonly enjoyed by
borrowers under judicial foreclosures, lenders must strictly comply with the
statutes, and courts must strictly construe the statutes in the borrower's favor."[14]

---

[9]Bain, 175 Wn.2d at 93 (citing 18 STOEBUCK & WEAVER, § 17.3, at 260-61);
RCW 61.24.020; RCW 61.12.090; RCW 7.28.230(1).

[10] Bain, 175 Wn.2d at 89; former RCW 61.24.010(2).

[11] Former RCW 61.24.010(2), .040 (2008).

[12] RCW 61.24.030(7)(a).

[13] See former RCW 61.24.030 (2008).

[14] Albice v. Premier Mortg. Servs. of Wash, Inc., 174 Wn.2d 560, 567, 276
P.3d 1277 (2012) (citing Udall v. T.D. Escrow Servs., Inc., 159 Wn.2d 903, 915-
16, 154 P.3d 882 (2007)).

The Washington Supreme Court "has frequently emphasized that the deed of
trust act 'must be construed in favor of borrowers because of the relative ease
with which lenders can forfeit borrowers' interests and the lack of judicial
oversight in conducting nonjudicial foreclosure sales.'"[15]   Courts also construe
the DTA to further three objectives:  "'First, the nonjudicial foreclosure process
should remain efficient and inexpensive.  Second, the process should provide an
adequate opportunity for interested parties to prevent wrongful foreclosure.
Third, the process should promote the stability of land titles.'"[16]

The DTA permits a borrower or grantor, among others, "to restrain, on any
proper legal or equitable ground, a trustee's sale."[17]   But, as Walker correctly
observes, the DTA includes "no specific remedies for violation of the statute in
the context of pre-sale actions meant to prevent the wrongful foreclosure from
occurring."   However, in response to a decision of this court,[18] in 2009 the
legislature explicitly recognized a cause of action for damages for failure to
comply with the DTA.[19]   It did so by amending the DTA to include RCW

---

[15] Klem v. Wash. Mut. Bank, 176 Wn.2d 771, 789, 295 P.3d 1179 (2013)
(emphasis added) (quoting Udall, 159 Wn.2d at 915-16).

[16] Bain, 175 Wn.2d at 94 (quoting Cox v. Helenius, 103 Wn.2d 383, 387,
693 P.2d 683 (1985)).

[17] RCW 61.24.130(1).

[18] Brown v. Household Realty Corp., 146 Wn. App. 157, 189 P.3d 233
(2008); see FINAL B. REP. on Engrossed S.B. 5810, at 3, 61st Leg., Reg. Sess.
(Wash. 2009); JUDICIARY COMM., H.B. ANALYSIS on Engrossed S.B. 5810, at 2-3,
61st Leg., Reg. Sess. (Wash. 2009).

[19] RCW 61.24.127; LAWS OF 2009, ch. 292, § 6.

NO. 65975-8-I / 9

61.24.127, which provides that a borrower or grantor does not waive certain claims for damages by failing to bring a civil action to enjoin a foreclosure sale. The claims not waived include the "[f]ailure of the trustee to materially comply with the provisions of this chapter."[20] Nothing in the 2009 amendment requires that the violation resulted in the wrongful sale of the property. This provision preserves a cause of action existing at the time a sale could be restrained—in other words, a claim existing before a foreclosure sale. It reflects the legislature's understanding of existing law—that a cause of action for damages existed based upon a trustee's presale failure to comply with the DTA, causing damage to the borrower.

Klem v. Washington Mutual Bank[21] supports our conclusion that the specific remedies provided in the DTA are not exclusive. There, the court considered whether the violations of the DTA that the legislature identified in RCW 61.24.135 as unfair or deceptive acts for purposes of the CPA were the only DTA violations that were unfair for CPA purposes. The Klem court held that the legislature's list was not exclusive, observing, "Given that there is 'no limit to human inventiveness,' courts, as well as legislatures, must be able to determine

---

[20] RCW 61.24.127(1)(c).
[21] 176 Wn.2d 771, 295 P.3d 1179 (2013).

-9-

NO. 65975-8-I / 10

whether an act or practice is unfair or deceptive to fulfill the protective purposes of the CPA."[22]

Walker alleges that MERS never held his note and, therefore, never had authority to act as beneficiary under the DTA. He further alleges that Select derived its authority to act from MERS's assignment and Quality derived its authority to foreclose from Select. Thus, he argues that Select had no authority to proceed with a nonjudicial foreclosure and violated the DTA by starting one. He also claims that Select violated the DTA by appointing Quality as successor trustee and by recording an appointment before MERS purported to assign his note to Select. For purposes of this appeal, we must accept Walker's factual allegations as true.     If proved, these allegations would establish material violations of the DTA.

In Bain v. Metropolitan Mortgage Group, Inc.,[23] our Supreme Court held that if MERS never held the promissory note or other debt instrument, it was not a lawful beneficiary and could not appoint a successor trustee. The court also found deed of trust language identifying MERS as "acting solely as a nominee for Lender and Lender's successors and assigns" insufficient to establish MERS as the note holder's agent.[24] The Supreme Court in Bain also rejected the argument

---

[22] Klem, 176 Wn.2d at 785-86.
[23] 175 Wn.2d 83, 110, 285 P.3d 34 (2012).
[24] Bain, 175 Wn.2d at 106-07.

that MERS could become a beneficiary by contract, explaining, "The legislature has set forth in great detail how nonjudicial foreclosures may proceed. We find no indication the legislature intended to allow the parties to vary these procedures by contract. We will not allow waiver of statutory protections lightly."[25] Thus, Walker has pleaded facts sufficient to show that MERS lacked the authority to assign his deed of trust and note to Select and, as a consequence, that Select similarly lacked authority to appoint Quality successor trustee. Additionally, Walker alleges Select did not hold the note before MERS purportedly appointed Select as the beneficiary in July 2009. As such, Select lacked authority to appoint Quality when it signed the appointment of successor trustee in May 2009. Thus, Walker pleads facts sufficient to show that Quality and Select violated RCW 61.24.005(2) and former RCW 61.24.010(2) because Select was not a lawful beneficiary at the time it appointed Quality. Walker also pleads facts sufficient to establish a violation of former RCW 61.24.040 because he alleges that an unlawful trustee recorded and transmitted the notice of sale.

In addition to these procedural violations, Walker alleges that Quality breached its statutory duty of good faith to him imposed by the DTA.[26] He contends, "If [Quality] intends to foreclose a property non-judicially it is obligated to have evidence that it is doing so on a legitimate and legal basis and not simply

[25] Bain, 175 Wn.2d at 108.
[26] RCW 61.24.010(4).

-11-

NO. 65975-8-I / 12

acting at the behest of a party that may or may not have the legal right to conduct such an action." He asserts that a "cursory investigation" would have revealed that Quality did not have proper authority to act and that Quality "recorded and relied upon documents it knew, or should have known, to be false and misleading." These allegations, if proved, would show that Quality failed to act in good faith by failing to adequately inform itself about its authority to foreclose. Therefore, Walker pleads facts entitling him to relief for Quality's violations of its duties under RCW 61.24.010(4).

We recognize our disagreement with Vawter v. Quality Loan Service Corp. of Washington,[27] where the United States District Court for the Western District of Washington reached a contrary result, holding that "the DTA does not authorize a cause of action for damages for the wrongful institution of nonjudicial foreclosure proceedings where no trustee's sale occurs." To reach this conclusion, the court relied upon Pfau v. Washington Mutual, Inc.[28] and Krienke v. Chase Home Finance, LLC,[29] which were decided before the legislature enacted RCW 61.24.127. Further, the court decided Vawter before our Supreme Court decided Bain. We also disagree with the reasons that the court identified to support its decision.

---

[27] 707 F. Supp. 2d 1115, 1123 (W.D. Wash 2010).
[28] No. CV-08-00142, 2009 WL 484448 (E.D. Wash. Feb. 24, 2009).
[29] Noted at 140 Wn. App. 1032 (2007).

-12-

The court in Vawter stated four reasons for its holding. First, it explained, "The Vawters have not identified any statutory provision of the DTA that permits a cause of action for wrongful institution of foreclosure proceedings."[30] The court did not address the effect of the 2009 amendments to RCW 61.24.127 because the savings clause did not apply in the case before it.[31] But, construing RCW 61.24.127(1)(c) in a borrower's favor, this statute demonstrates that the legislature recognized a cause of action for damages for DTA violations. As previously noted, nothing in the statute requires that the violation resulted in the wrongful sale of the property.

Second, the court in Vawter explained that the legislature "established a comprehensive scheme for the nonjudicial foreclosure process" and that "to the extent the legislature intended to permit a cause of action for damages, it could have said so."[32] But, the legislature has spoken and, with RCW 61.24.127(1)(c), recognized a cause of action for damages caused by violations of the DTA.

---

[30] Vawter, 707 F. Supp. 2d at 1123.

[31] Although the court recognized that "the Washington legislature amended the DTA to add a handful of new protections and safeguards for borrowers and grantors," the homeowners acknowledged that the amendments did not govern the nonjudicial foreclosure proceedings at issue in their case. Accordingly, the court determined that it "need not consider the effect of these amendments for purposes of the present motion." Vawter, 707 F. Supp. 2d at 1122 n.9.

[32] Vawter, 707 F. Supp. 2d at 1123.

NO. 65975-8-I / 14

Third, the court reasoned that allowing a presale cause of action for damages would "spawn litigation under the DTA for damages, thereby interfering with the efficient and inexpensive nature of the nonjudicial foreclosure process, while at the same time failing to address directly the propriety of foreclosure or advancing the opportunity of interested parties to prevent wrongful foreclosure."[33] Bain observed that the lending industry has institutionalized a series of deceptive practices,[34] that MERS has been involved with "an enormous number of mortgages in the country (and our state), perhaps as many as half nationwide,"[35] and that MERS "often issue[s] assignments without verifying the underlying information."[36] Thus, the lending industry and MERS have already spawned the feared litigation with their institutionalized practices. Holding the lending industry liable for damages caused by its DTA violations should produce greater compliance and a reduction in future litigation. Thus, the availability of a presale cause of action for damages could significantly reduce the long-term system-wide expenses of nonjudicial foreclosures under the DTA.

Finally, the court in Vawter stated that even if it were to recognize a presale cause of action for damages under the DTA, "the court is not persuaded

---

[33] Vawter, 707 F. Supp. 2d at 1124.

[34] Bain, 175 Wn.2d at 117.

[35] Bain, 175 Wn.2d at 118.

[36] Bain, 175 Wn.2d at 118 n.18.

-14-

NO. 65975-8-I / 15

that it could be maintained without a showing of prejudice."[37] There, the plaintiffs could not show prejudice because they conceded that the trustee's sale was discontinued and that one of the defendants possessed the note.[38] Additionally, the court determined that prematurely appointing a successor trustee, before authority to make such an appointment, was a "non-prejudicial timing mistake" because the trustee reappointed the successor after it was assigned a beneficial interest in the deed of trust.[39] Further, pre-Bain, the court explained, "Even accepting the Vawters' factual allegation that MERS exists to maintain records regarding the ownership of mortgages, this does not mean that MERS cannot hold a beneficial interest under the Deed of Trust."[40]

Here, Walker alleges that MERS never had a beneficial interest because it never held the note. Under Bain, it could never be a lawful beneficiary. Walker also alleges damages caused by Select's and Quality's unlawful actions taken in violation of the DTA. Walker's allegations strongly support recognizing a presale cause of action for damages under the DTA because he pleads facts showing he has suffered prejudice from Select's and Quality's unlawful conduct.

---

[37] Vawter, 707 F. Supp. 2d at 1124.
[38] Vawter, 707 F. Supp. 2d at 1122-23, 1124.
[39] Vawter, 707 F. Supp. 2d at 1127.
[40] Vawter, 707 F. Supp. 2d at 1126.

NO. 65975-8-I / 16

Quality and Select cite <u>Massey v. BAC Home Loans Servicing LP</u>[41] to support their argument that there is "no cause of action for damages for violation of the DTA where the trustee's sale is discontinued." But, in <u>Massey</u>, as in <u>Vawter</u>, the court followed <u>Pfau</u> and <u>Krienke</u> and did not consider the 2009 amendments to the DTA.[42]

MERS never held the note and, based on Walker's amended complaint, we can hypothesize that MERS never had independent authority to appoint a beneficiary. We can further hypothesize that Select did not hold Walker's note at the time it appointed Quality. No Washington case law relieves from liability a party causing damage by purporting to act under the DTA without lawful authority to act or failing to comply with the DTA's requirements.

Notably, the language of RCW 61.24.127(1)(c) refers only to "[f]ailure of the <u>trustee</u> to materially comply with the provisions of this chapter." (Emphasis added.) We need not decide if this may prevent a borrower from suing a beneficiary under some circumstances. Our Supreme Court has recognized, in the context of a CPA claim, "Where the beneficiary so controls the trustee so as to make the trustee a mere agent of the beneficiary, then as principle [sic], the

---

[41] No. C12-1314, 2012 WL 5295146 (W.D. Wash. Oct. 26, 2012).

[42] <u>Massey</u>, 2012 WL 5295146, at *4.

-16-

beneficiary may be liable for the acts of its agent."[43]  Here, we can plausibly hypothesize Select controlling Quality's actions violating the DTA.

Because the legislature recognized a presale cause of action for damages in RCW 61.24.127(1)(c), we hold that a borrower has an actionable claim against a trustee who, by acting without lawful authority or in material violation of the DTA, injures the borrower, even if no foreclosure sale occurred.  Additionally, where a beneficiary, lawful or otherwise, so controls the trustee so as to make the trustee a mere agent of the beneficiary, then, as principal, it may have vicarious liability.

Fair Debt Collection Practices Act

Walker also asserts that Quality and Select violated the FDCPA.  He alleges that Select meets the "debt collector" definition of 15 U.S.C. § 1692a(6)(F)(iii) because he defaulted on his debt before MERS purported to assign it to Select. Additionally, "if SELECT was a 'debt collector' within the terms of the FDCPA at the time of its assignment of the debt, its agent, [Quality], would certainly be one."  Walker argues that Quality violated 15 U.S.C. § 1692e "through the use of false and misleading representations" and violated 15 U.S.C. § 1692f with a "threat to take nonjudicial action to dispossess the Plaintiff of his residence without a present right to possession."  He claims

_____

[43] Klem, 176 Wn.2d at 791 n.12.

that Select violated these provisions of the FDCPA with its "representations" and

"actions" "made in connection with the purported collection of a debt," as well as

its "misstatements of fact regarding a debt owed to SELECT."

The FDCPA "applies only to 'debt collectors,' which are entities who

regularly collect debts for others, not to 'creditors,' who are collecting on their

own behalf."[44] The statute defines a "debt collector" as

> any person who uses any instrumentality of interstate commerce or
> the mails in any business the principal purpose of which is the
> collection of any debts, or who regularly collects or attempts to
> collect, directly or indirectly, debts owed or due or asserted to be
> owed or due another . . . . For the purpose of section 1692f(6) of
> this title, such term also includes any person who uses any
> instrumentality of interstate commerce or the mails in any business
> the principal purpose of which is the enforcement of security
> interests.[45]

A debt is "any obligation or alleged obligation of a consumer to pay money

arising out of a transaction in which the money, property, insurance, or services

which are the subject of the transaction are primarily for personal, family, or

household purposes, whether or not such obligation has been reduced to

judgment."[46]

---

[44] Am. Express Centurion Bank v. Stratman, 172 Wn. App. 667, 676, 292
P.3d 128 (2012) (citing 15 U.S.C. § 1692a(6); Discover Bank v. Ray, 139 Wn.
App. 723, 727, 162 P.3d 1131 (2007)).

[45] 15 U.S.C. § 1692a(6).

[46] 15 U.S.C. § 1692a(5).

Section 1692e of the FDCPA prohibits a debt collector from using a "false, deceptive, or misleading representation or means in connection with the collection of any debt." Section 1692f prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt." A debt collector violates that section by "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if there is no present right to possession of the property claimed as collateral through an enforceable security interest."[47]

Here, Quality makes no claim that it is a creditor collecting on its own behalf. Instead, Quality argues that it is not a statutory debt collector because it does not regularly collect consumer debts owed to another. Quality also states that pursuing nonjudicial foreclosure under a deed of trust does not constitute debt collection.

"'[M]ortgage servicer companies and others who service outstanding debts for others, [are not debt collectors] so long as the debts were not in default when taken for servicing.'"[48] Thus, "'[a]lthough there is no statutory definition of 'loan servicer' under the Act, a loan servicer will become a debt collector under

---

[47] 15 U.S.C. § 1692f(6)(A).

[48] Oliver v. Ocwen Loan Servs., LLC, No. C12-5374, 2013 WL 210619, at *3 (W.D. Wash. Jan. 18, 2013) (second alteration in original) (quoting Mansour v. Cal-Western Reconveyance Corp., 618 F. Supp. 2d 1178, 1182 (D. Ariz. 2009)).

-19-

NO. 65975-8-I / 20

§ 1692a(6)(F)(iii) if the debt was in default or treated as such when it was acquired.'"[49]

In <u>Jara v. Aurora Loan Services, LLC</u>,[50] the United States District Court for the Northern District of California recognized that most district courts within the Ninth Circuit Court of Appeals have concluded that foreclosure proceedings do not constitute "debt collection" within the meaning of the FDCPA. The court noted, however, that "acts taken in furtherance of a foreclosure proceeding can be the basis of a FDCPA claim, but only if they are alleged as violations of 15 U.S.C. § 1692f(6)."[51] The court adopted the District of Idaho's reasoning:

> [I]f "debt collection" generally included the enforcement of a security interest, the language specifying so for the purposes of § 1692f(6) would be surplusage, and such a construction would violate a "long standing canon of statutory construction that terms in a statute should not be construed so as to render any provision of that statute meaningless or superfluous."[52]

Although the Ninth Circuit has not ruled on this issue, "[t]he current trend among district courts in the Ninth Circuit is to find that, at least insofar as defendant confines itself to actions necessary to effectuate a nonjudicial foreclosure, only

---

[49] <u>Oliver</u>, 2013 WL 210619, at *4 (quoting <u>Bridge v. Ocwen Fed. Bank, FSB</u>, 681 F.3d 355, 360 n.4 (6th Cir. 2012)).
[50] No. C 11-00419, 2011 WL 6217308, at *4 (N.D. Cal. Dec. 14, 2011).
[51] <u>Jara</u>, 2011 WL 6217308, at *5.
[52] <u>Jara</u>, 2011 WL 6217308, at *5 (quoting <u>Armacost v. HSBC Bank USA</u>, No. 10-CV-274, 2011 WL 825151, at *5 (D. Idaho Feb. 9, 2011)).

NO. 65975-8-I / 21

§ 1692f(6) of the FDCPA applies."[53] We join this trend in recognizing a claim under § 1692f, which is consistent with the statutory language.

Here, the trial court properly dismissed Walker's claims under 15 U.S.C. § 1692e. Nothing in the record indicates that Quality or Select engaged in any activities beyond those necessary to institute foreclosure proceedings. "Acts required to institute foreclosure proceedings, such as the recording of a notice of default, alone, are not debt collection activities for purposes of the FDCPA unless alleged in relation to a claim for violation of 15 U.S.C. § 1692f(6)."[54] Therefore, Walker's claim under 15 U.S.C. § 1692e fails.

The trial court erred, however, by dismissing Walker's claim under 15 U.S.C. § 1692f. Because his arguments concern Quality's and Select's actions to enforce a security interest, these parties may constitute "debt collectors" within the statute's meaning. Assuming that Walker's allegations are true, neither Quality nor Select had a present right to possess the property through nonjudicial foreclosure because they never held the note or the underlying debt and were not lawfully appointed under the DTA. If Walker is able to prove these underlying DTA violations, he may also be able to show that Quality and Select violated § 1692f(6) by threatening nonjudicial foreclosure.

---

[53] McDonald v. OneWest Bank, FSB, No. C10-1952, 2012 WL 555147, at *4 n.6 (W.D. Wash. Feb. 21, 2012).

[54] Jara, 2011 WL 6217308, at *5.

NO. 65975-8-I / 22

Presuming that the facts stated in Walker's amended complaint are true, the trial court could potentially grant relief under 15 U.S.C. § 1692f. Accordingly, the trial court erred by dismissing his FDCPA claim.

Consumer Protection Act

Walker next claims that Quality and Select violated the CPA. The CPA declares unlawful unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.[55] Generally, to prevail in a private CPA claim, the plaintiff must prove (1) an unfair or deceptive act or practice (2) occurring in trade or commerce (3) affecting the public interest, (4) injury to a person's business or property, and (5) causation.[56] The failure to establish any of these elements is fatal to a CPA claim.[57] Here, in light of our Supreme Court's recent decisions in Bain[58] and Klem,[59] Quality and Select contend only that Walker fails to meet the fourth and fifth elements.

---

[55] RCW 19.86.020.

[56] Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 784-85, 719 P.2d 531 (1986).

[57] Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., 162 Wn.2d 59, 74, 170 P.3d 10 (2007).

[58] In Bain, a case against MERS, the court recognized that the plaintiff presumptively met the first element because "characterizing MERS as the beneficiary has the capacity to deceive." 175 Wn.2d at 117. The plaintiff also presumptively met the second element based upon "considerable evidence that MERS is involved with an enormous number of mortgages in the country (and our state), perhaps as many as half nationwide." 175 Wn.2d at 118. Third, the court opined that "there certainly could be injury under the CPA" if the homeowner borrower could not determine the noteholder, if there were incorrect or fraudulent transfers of the note, or if concealing loan transfers deprived the

NO. 65975-8-I / 23

The CPA does not define an "unfair or deceptive act or practice." Whether an alleged act is unfair or deceptive presents a question of law.[60]  A consumer may establish an unfair or deceptive act by showing "either that an act or practice 'has a capacity to deceive a substantial portion of the public,' or that 'the alleged act constitutes a per se unfair trade practice.'"[61]  "Implicit in the definition of 'deceptive' under the CPA is the understanding that the practice misleads or misrepresents something of material importance."[62]  Whether an unfair act has the capacity to deceive a substantial portion of the public is a question of fact.[63] To establish a per se violation, a plaintiff must show "that a statute has been violated which contains a specific legislative declaration of public interest impact."[64]

---

homeowner of rights that require the homeowner to sue or to negotiate with the actual noteholder.  175 Wn.2d at 118-19.

[59] In Klem, the court held that "a claim under the Washington CPA may be predicated upon a per se violation of statute, an act or practice that has the capacity to deceive substantial portions of the public, or an unfair or deceptive act or practice not regulated by statute but in violation of public interest."  176 Wn.2d at 787.  The court determined that a trustee's failure to fulfill its duty to the borrower constituted a "deceptive act" under the CPA.  176 Wn.2d at 787.

[60] Holiday Resort Cmty. Ass'n v. Echo Lake Assocs., LLC, 134 Wn. App. 210, 226, 135 P.3d 499 (2006).

[61] Saunders v. Lloyd's of London, 113 Wn.2d 330, 344, 779 P.2d 249 (1989) (quoting Hangman Ridge, 105 Wn.2d at 785-86).

[62] Holiday Resort, 134 Wn. App. at 226.

[63] Holiday Resort, 134 Wn. App. at 226-27.

[64] Hangman Ridge, 105 Wn.2d at 791.

Walker asserts that his allegations describe a per se violation of the CPA, thereby satisfying the first two elements,[65] because Quality and Select violated "statutes related to the collection of a debt."[66] Alternatively, Walker lists four acts that he contends were deceptive: (1) Quality sent a notice of default to Walker "despite not meeting the requirements of a successor trustee under RCW 61.24.010(2) which [Quality] and SELECT knew or should have known at the time the Notice of Default was issued"; (2) Quality and Select "facilitated a deceptive and misleading effort to wrongfully execute and record documents [Quality] and SELECT knew or should have known contained false statements related to the Appointment of Successor Trustee and Assignment of Deed of Trust"; (3) Quality and Select sent, executed, and recorded a notice of trustee's sale that they "knew contained false statements in that no obligation of the Plaintiff was ever owed to SELECT, the purported 'beneficiary'"; and (4) "that as a result of this conduct, [Quality] and SELECT knew that its conduct amounted to wrongful foreclosure and was further in violation of the FDCPA."

To meet the fourth and fifth elements, Walker must allege facts demonstrating that Quality's and Select's deceptive acts caused him harm. To

---

[65] Hangman Ridge, 105 Wn.2d at 786.

[66] See Panag v. Farmers Ins. Co. of Wash., 166 Wn.2d 27, 53, 204 P.3d 885 (2009) ("When a violation of debt collection regulations occurs, it constitutes a per se violation of the CPA . . . under state and federal law, reflecting the public policy significance of this industry.").

prove causation, the "plaintiff must establish that, but for the defendant's unfair or deceptive practice, the plaintiff would not have suffered an injury."[67]

Walker alleges as his injuries "the distraction and loss of time to pursue business and personal activities due to the necessity of addressing the wrongful conduct through this and other actions" and "the necessity for investigation and consulting with professionals to address Respondents' wrongful foreclosure and collection practices and violation of RCW 61.24, et seq." Additionally, he "had to take time off from work and incurred travel expenses to consult with an attorney to address the misconduct of the Defendants."

In Panag v. Farmers Insurance Co. of Washington,[68] our Supreme Court held, "[T]he injury requirement is met upon proof the plaintiff's 'property interest or money is diminished because of the unlawful conduct even if the expenses caused by the statutory violation are minimal.'" Investigative expenses, taking time off from work, travel expenses, and attorney fees are sufficient to establish injury under the CPA.[69]

Walker also alleges that but for Quality's and Select's deceptive acts, he would not have suffered these same injuries. Walker asserts that the deceptive documents induced him to incur expenses to investigate whether Select and

---

[67] Indoor Billboard, 162 Wn.2d at 84.

[68] 166 Wn.2d 27, 57, 204 P.3d 885 (2009) (quoting Mason v. Mortg. Am., Inc., 114 Wn.2d 842, 854, 792 P.2d 142 (1990)).

[69] See Panag, 166 Wn.2d at 62.

Quality had authority to act against him and to address their allegedly improper deceptive acts. Thus, he pleads facts sufficient to establish causation. Because Walker pleads facts that, if proved, could satisfy all five elements, we conclude that the trial court erred by dismissing his CPA claim.

## Quiet Title

Finally, Walker claims that the court erred by dismissing his action to quiet title to his property. He alleges, "As MERS was never a legitimate beneficiary under RCW 61.24.005 and the interest in the Deed of Trust has been effectively segregated from the interest in the Note, the Deed of Trust is no longer a valid lien upon Mr. Walker's property."

To support his argument, Walker cites the Restatement (Third) of Property: Mortgages, which states, in a comment, that "in general a mortgage is unenforceable if it is held by one who has no right to enforce the secured obligation."[70] He also cites numerous cases outside this jurisdiction for the notion that "the segregation of the Note from the Deed of Trust through the assignment of the Deed of Trust from MERS to SELECT without a valid assignment of the Note renders the subject Deed of Trust a nullity and an improper lien against Mr. Walker's property." He requests that the court clear the "improper cloud" on his

---

[70] RESTATEMENT (THIRD) OF PROP.: MORTGAGES § 5.4 cmt. e (1997).

NO. 65975-8-I / 27

property and quiet his title, although he cites no authority recognizing such a cause of action based upon the facts in this case.

In response, Quality and Select assert that Walker has not alleged any facts demonstrating that he holds title superior to the deed of trust. They also claim that he must allege payment of his loan to sufficiently plead a claim to quiet title. For this proposition they cite Evans v. BAC Home Loans Servicing LP,[71] holding that a plaintiff seeking to quiet title against a purported lender or other holder of a debt secured by a deed of trust must allege satisfaction of the secured obligation.

> The logic of such a rule is overwhelming. Under a deed of trust, a borrower's lender is entitled to invoke a power of sale if the borrower defaults on its loan obligations. As a result, the borrower's right to the subject property is contingent upon the borrower's satisfaction of loan obligations. Under these circumstances, it would be unreasonable to allow a borrower to bring an action to quiet title against its lender without alleging satisfaction of those loan obligations. Plaintiffs have not provided any rationale that would support an alternate rule.[72]

An action to quiet title is an equitable proceeding "designed to resolve competing claims of ownership."[73] RCW 7.28.010 requires Walker to bring an action to quiet title against "the person claiming the title or some interest" in real property in which he has a valid interest. "A 'plaintiff in an action to quiet title

---

[71] No. C10-0656, 2010 WL 5138394 (W.D. Wash. 2010).

[72] Evans, 2010 WL 5138394, at *4.

[73] Kobza v. Tripp, 105 Wn. App. 90, 95, 18 P.3d 621 (2001).

NO. 65975-8-I / 28

must prevail, if he prevails at all, on the strength of his own title, and not on the weakness of the title of his adversary.'"[74]

In Bain, the Supreme Court declined to decide the legal effect of MERS acting as an unlawful beneficiary under the DTA. However, the court stated its inclination to agree with MERS's assertion that any violation of the DTA "'should not result in a void deed of trust, both legally and from a public policy standpoint.'"[75] The court also noted, "[I]f in fact MERS is not the beneficiary, then the equities of the situation would likely (though not necessarily in every case) require the court to deem that the real beneficiary is the lender whose interests were secured by the deed of trust or that lender's successors."[76] While dicta, these statements identify critical problems with Walker's argument.

Here Walker does not allege a claim to quiet title based upon the strength of his own title. Instead, he asks the court to void a consensual lien against his property because of a defect in the instrument creating that lien, the designation of an ineligible entity as beneficiary of the deed of trust. As previously noted, he cites no authority recognizing this defect as a basis to void a deed of trust and offers no equitable reason why a court should recognize his claim. As a matter of

---

[74] Wash. State Grange v. Brandt, 136 Wn. App. 138, 153, 148 P.3d 1069 (2006) (quoting City of Centralia v. Miller, 31 Wn.2d 417, 422, 197 P.2d 244 (1948)).

[75] Bain, 175 Wn.2d at 114.

[76] Bain, 175 Wn.2d at 111.

first impression, we decline to do so. We reject the argument that this defect in a deed of trust, standing alone, renders it void and note that Washington courts have repeatedly enforced between the parties a deed or mortgage that failed to comply with the statutory requirement of an acknowledgement.[77] The trial court properly dismissed Walker's action to quiet title.

Attorney Fees

Walker requests costs and reasonable attorney fees incurred on this appeal under RAP 18.1 and the deed of trust. RAP 18.1 permits a prevailing party to recover fees incurred on appeal if the party can recover such fees at trial.[78] "A party must prevail on the merits before being considered a prevailing party."[79] Because Walker, at least at this point, does not prevail on the merits, he is not entitled to costs and attorney fees incurred on appeal.

CONCLUSION

Because Walker alleges facts that, if proved, would entitle him to relief, we reverse the trial court's order dismissing his claims under CR 12(c) for violations

---

[77] Bremner v. Shafer, 181 Wash. 376, 384, 43 P.2d 27 (1935).

[78] Landberg v. Carlson, 108 Wn. App. 749, 758, 33 P.3d 406 (2001).

[79] Ryan v. Dep't of Soc. & Health Servs., 171 Wn. App. 454, 476, 287 P.3d 629 (2012).

NO. 65975-8-I / 30

of the DTA, the FDCPA, and the CPA and remand for further proceedings
consistent with this opinion. We affirm the court's dismissal of his action to quiet
title.

_Leach, C. J._

WE CONCUR:

_Cox, J._